# EXHIBIT A

EXHIBIT A

1 | J. Ronald Ignatuk - Bar No. 150737
Franklin J. Contreras, Jr. - Bar No. 235932
2 | Shane M. Biornstad - Bar No. 250202
**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
3 | 100 Spectrum Center Drive, Suite 600
Irvine, California 92618
4 | Telephone:    (949) 340-3400
Facsimile:    (949) 340-3000
5 | Email:    RIgnatuk@shulmanbastian.com
FContreras@shulmanbastian.com
6 | SBiornstad@shulmanbastian.com

7 | Attorneys for Cachet Financial Services

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

10 |

11 | In re | Case No. 2:20-bk-10654-VZ

12 | CACHET    FINANCIAL    SERVICES,    a
California corporation, | Chapter 11

13 | Reorganized Debtor. | Bankruptcy Adv. No. 2:21-ap-01187-VZ

14 | | **FIRST AMENDED COMPLAINT FOR:**

15 | CACHET    FINANCIAL    SERVICES,    a
California corporation, | 1.  **FRAUD**
16 | | 2.  **FRAUD**
Plaintiff, | 3.  **CONVERSION**
17 | | 4.  **AIDING AND ABETTING FRAUD**
vs. | **AND CONVERSION**
18 | | 5.  **MONEY HAD AND RECEIVED**
THE BANCORP BANK, a Delaware-chartered | 6.  **UNJUST ENRICHMENT**
19 | banking institution; HENRY KAUFTHEIL, an | 7.  **AIDING AND ABETTING FRAUD**
individual;  JOSHUA   ROTHENBERG,   an | **AND CONVERSION**
20 | individual; DD CARE MANAGEMENT LLC, | 8.  **BREACH OF CONTRACT**
a New York limited liability company; DD | 9.  **CIVIL RICO (18 U.S.C. 1962(c))**
21 | CARE   MANAGEMENT   LLC,   a   Florida | 10. **CIVIL RICO CONSPIRACY (18**
limited liability company; H3 ENERGY LLC, | **U.S.C. 1962(d))**
22 | a New York limited liability company; H3 | 11. **BREACH OF CONTRACT**
ADVISORY LLC, a New York limited liability | 12. **NEGLIGENCE**
23 | company; RKMA LLC, a New York limited | 13. **INTENTIONAL INTERFERENCE**
liability company; H3 HEALTH GROUP LLC, | **WITH CONTRACT**
24 | a New York limited liability company; H3 | 14. **CONVERSION**
FOOD   GROUP   LLC,   a   New   York limited | 15. **EXPRESS INDEMNITY**
25 | liability company; ACCESS MANAGEMENT | 16. **ACCOUNTING**
LLC, a New York limited liability company; | 17. **VIOLATION OF CAL. PENAL**
26 | KG  KOSHER  LLC,  a  New  York  limited | **CODE § 496(a)**
liability   company;   DIALYZE   MANAGER | 18. **OBJECTION TO PROOFS OF**
27 | LLC, a New York limited liability company; | **CLAIM**
H3 CAPITAL LLC, a New York limited | 19. **AVOIDANCE AND RECOVERY**
28 | liability  company;  ACG  EQUITIES LLC, a | **OF CONSTRUCTIVE**
**FRAUDULENT TRANSFER**

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

New York limited liability company; MOSHE HOROWITZ, an individual; IGREEN PAYROLL SERVICE INC., a New York corporation; DIME COMMUNITY BANK, a New York entity; YURIY RUBINOV, an individual; JOHN ROMANO, an individual; and DOES 1 through 10, inclusive,

Defendants.

**[DEMAND FOR JURY TRIAL]**

**COMES NOW** Plaintiff Cachet Financial Services *fka* Cachet Banq, a California corporation, the reorganized debtor ("Cachet"), and hereby brings this Complaint against Defendants The Bancorp Bank ("Bancorp"), Henry Kauftheil, an individual ("Kauftheil"), Joshua Rothenberg, an individual ("Rothenberg"), DD Care Management LLC, a New York limited liability company ("DD Care NY"), DD Care Management LLC, a Florida limited liability company ("DD Care FL"), H3 Energy LLC, a New York limited liability company ("H3 Energy"), H3 Advisory LLC, a New York limited liability company ("H3 Advisory"), RKMA LLC, a New York limited liability company ("RKMA"), H3 Health Group LLC, a New York limited liability company ("H3 Health"), H3 Food Group LLC, a New York limited liability company ("H3 Food"), Access Management LLC, a New York limited liability company ("Access"), KG Kosher LLC, a New York limited liability company ("KG Kosher"), Dialyze Manager LLC, a New York limited liability company ("Dialyze"), H3 Capital LLC, a New York limited liability company ("H3 Capital"), ACG Equities LLC, a New York limited liability company ("ACG"), Moshe Horowitz, an individual ("Horowitz"), iGreen Payroll Service Inc., a New York corporation ("iGreen"), Dime Community Bank, a New York entity ("Dime Bank"), Yuriy Rubinov, an individual ("Rubinov"), John Romano, an individual ("Romano"), and Does 1 through 10, inclusive, as follows:

## STATEMENT OF JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(c)(1) and 1334 in that this proceeding arises in and is related to the Chapter 11 bankruptcy case pending in the United States Bankruptcy Court of the Central District of California, Western Division ("Bankruptcy Court"), entitled *In re Cachet Financial Services, a California corporation*

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

2

1   *aka Cachet fka Cachet Banq, Inc., Debtor*, Case No. 2:20-bk-10654-VZ on the Bankruptcy Court's

2   docket (the "Bankruptcy Case"). Cachet consents to an entry of final judgment and orders by the

3   Bankruptcy Court.

4       2.      This adversary proceeding is filed pursuant to Federal Rule of Bankruptcy Procedure

5   7001(1) (a proceeding to recover money or property).

6       3.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a), as this adversary

7   proceeding arises under Title 11, or arises under or relates to a case under Title 11, which is pending

8   in this district.

9       4.      On January 21, 2020 ("Petition Date"), Cachet commenced this case under Chapter

10  11 of the Bankruptcy Code. On July 1, 2021, the Bankruptcy Court entered an order confirming

11  Cachet's Chapter 11 Plan of Reorganization ("Plan"). Cachet continues to operate and manage its

12  business as a reorganized debtor under the Plan.

13                                    **THE PARTIES**

14      5.      Cachet is a corporation duly organized and existing under the laws of the State of

15  California with its principal place of business in Pasadena, California. Cachet was a national

16  financial services company focused on processing Automated Clearing House ("ACH") transactions

17  and providing related services to the payroll industry.

18      6.      Bancorp is a Delaware-chartered banking institution and an Originating Depository

19  Financial Institution ("ODFI") pursuant to the Automated Clearing House ("ACH") Rules of

20  National Automated Clearing House Association ("NACHA").

21      7.      Cachet is informed and believes and thereon alleges that Kauftheil is an individual

22  who resides in the Borough of Brooklyn, State of New York. Cachet is informed and believes and

23  thereon alleges that at all times relevant to this Complaint Kauftheil was a principal of the "Kauftheil

24  Entities" identified hereinafter and in committing the acts and omissions alleged herein was acting

25  in such capacity.

26      8.      Cachet is informed and believes and thereon alleges that at all times relevant to this

27  Complaint that Rothenberg is an individual who resides in the Borough of Brooklyn, State of New

28  York.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                          3

9.      Cachet is informed and believes and thereon alleges that Defendant DD Care NY is a limited liability company organized and existing under the laws of the State of New York with its principal place of business in Neptune City, New Jersey.

10.     Cachet is informed and believes and thereon alleges that DD Care FL is a limited liability company organized and administratively dissolved under the laws of the State of Florida with its principal place of business in Neptune City, New Jersey.

11.     DD Care NY and DD Care FL are collectively referred to herein as "DD Care."

12.     H3 Energy is a limited liability company organized and existing under the laws of the State of New York with its principal place of business in the Borough of Brooklyn, State of New York.

13.     Cachet is informed and believes and thereon alleges that H3 Advisory is a limited liability company organized and existing under the laws of the State of New York with its principal place of business in the Borough of Brooklyn, State of New York.

14.     H3 Energy and H3 Advisory are collectively referred to herein as the "Fraudulently Credited Entities."

15.     Cachet is informed and believes and thereon alleges that RKMA is a limited liability company organized and existing under the laws of the State of New York with its principal place of business in the Borough of Brooklyn, State of New York.

16.     Cachet is informed and believes and thereon alleges that Defendant H3 Health is a New York limited liability company with its principal place of business in the Borough of Brooklyn, State of New York.

17.     Cachet is informed and believes and thereon alleges that H3 Food is a limited liability company organized and existing under the laws of the State of New York with its principal place of business in the Borough of Brooklyn, State of New York.

18.     Cachet is informed and believes and thereon alleges that Access is a limited liability company organized and existing under the laws of the State of New York with its principal place of business in the Borough of Brooklyn, State of New York.

19.     RKMA, H3 Health, H3 Food and Access are collectively referred to herein as the

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1  "Kiting Entities."

2      20.     Cachet is informed and believes and thereon alleges that KG Kosher is a limited

3  liability company organized and existing under the laws of the State of New York with its principal

4  place of business in the Borough of Brooklyn, State of New York.

5      21.     Cachet is informed and believes and thereon alleges that Dialyze is a limited liability

6  company organized and existing under the laws of the State of New York with its principal place of

7  business in the Borough of Brooklyn, State of New York.

8      22.     Cachet is informed and believes and thereon alleges that H3 Capital is a limited

9  liability company organized and existing under the laws of the State of New York with its principal

10  place of business in the Borough of Brooklyn, State of New York.

11      23.     Cachet is informed and believes and thereon alleges that ACG is a limited liability

12  company organized and existing under the laws of the State of New York with its principal place of

13  business in the Borough of Brooklyn, State of New York.

14      24.     KG Kosher, Dialyze, H3 Capital and ACG are collectively referred to herein as the

15  "Intermediary Entities."

16      25.     DD Care, the Fraudulently Credited Entities, the Kiting Entities and the Intermediary

17  Entities are hereinafter collectively referred to as the "Kauftheil Entities."

18      26.     Cachet is informed and believes and thereon alleges that at all times relevant to this

19  Complaint Kauftheil was and is a member and CEO of each of the Kauftheil Entities. Cachet is

20  informed and believes that each and every one of the Kauftheil Entities held bank accounts at Dime

21  Bank and that Kauftheil was the only signatory on the Kauftheil Entities' bank accounts at Dime

22  Bank.

23      27.     At all times relevant to this Complaint Kauftheil so dominated and controlled the

24  Kauftheil Entities that there was such a unity of interest between Kauftheil, on the one hand, and

25  the Kauftheil Entities, on the other hand, that the Kauftheil Entities ceased to exist as separate

26  entities and that the Kauftheil Entities were the alter egos of Kauftheil and vice versa. Cachet is

27  informed and believes and thereon alleges that the Kauftheil Entities were sham entities without any

28  separate existence independent of Kauftheil and that Kauftheil used them to perpetrate the acts and

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                              5

1   omissions alleged herein.

2        28.    Kauftheil used the Kauftheil Entities to perpetrate the acts and omissions hereinafter

3   alleged such that an inequitable result will occur if any one of the Kauftheil Entities is recognized

4   as a legal entity separate and distinct from Kauftheil because Kauftheil would be permitted to

5   perpetrate the acts and omissions alleged herein, including fraud, with impunity.

6        29.    The Kauftheil Entities, by and through Kauftheil, participated in the acts and

7   omissions alleged herein and profited thereby such that they are liable for Kauftheil's acts and

8   omissions.

9        30.    Cachet is informed and believes and thereon alleges that Horowitz is an individual

10   who resides in the Borough of Brooklyn, State of New York.

11        31.    iGreen is a corporation organized and existing under the laws of the State of New

12   York. iGreen is an employer-outsource payroll processing company that contracts with employers

13   to manage the employers' payroll. iGreen was a client of Cachet (*i.e.*, one of the "remarketers" as

14   defined below).

15        32.    Cachet is informed and believes and thereon alleges that at all times relevant to this

16   Complaint Horowitz was and is an officer and shareholder of iGreen. Cachet is informed and

17   believes and thereon alleges that at all times relevant to this Complaint Horowitz so dominated and

18   controlled iGreen that there was such a unity of interest between Horowitz and iGreen that iGreen

19   ceased to exist as a separate entity and that iGreen was the alter ego of Horowitz and vice versa.

20   Cachet is informed and believes and thereon alleges that iGreen was a sham entity without any

21   separate existence independent of Horowitz and that Horowitz used it to perpetrate the acts and

22   omissions alleged herein.

23        33.    Horowitz used iGreen to perpetrate the acts and omissions hereinafter alleged such

24   that an inequitable result will occur if iGreen is recognized as a legal entity separate and distinct

25   from Horowitz because Horowitz would be permitted to perpetrate the acts and omissions alleged

26   herein, including fraud, with impunity.

27        34.    Dime Bank is a bank organized and existing under the laws of the State of New York

28   with its principal place of business in the City of Hauppauge, State of New York.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                  6

35.     Cachet is informed and believes and thereon alleges that Rubinov is an individual who resides in the State of New York, who was employed by and the agent of Dime Bank.

36.     Cachet is informed and believes and thereon alleges that Romano is an individual who resides in the State of New York, who was employed by and the agent of Dime Bank.

37.     Cachet is unaware of the true names or capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 through 10, inclusive, and therefore sues said Defendants by such fictitious names. Cachet is informed and believes and thereon alleges that each of the Defendants designated herein as a fictitiously named Defendant is in some manner responsible for the events and happenings herein referred to, either contractually or tortiously, and that they caused the damage to Cachet as alleged herein. When Cachet ascertains the true names and capacities of Does 1 through 10, inclusive, it will amend this Complaint by setting forth the same.

38.     Cachet is informed and believes and thereon alleges that with the exception of Bancorp, each of the named Defendants, including all of the Kauftheil Entities acting by and through Kauftheil and Rothenberg, Dime Bank, Rubinov, Romano, and the Doe Defendants, were aware that Kauftheil and Rothenberg were engaged in the ACH Kiting Scheme hereinafter alleged, that those named Defendants conspired and agreed with Kauftheil and Rothenberg to commit the ACH Kiting Scheme and the theft alleged herein, and that they each took an overt step in furtherance of the conspiracy to engage in the ACH Kiting Scheme, wire fraud and money laundering alleged herein.

39.     As used hereinafter within each claim for relief, the terms "Defendant" and "Defendants" shall mean and refer to the persons and/or entities identified in the heading of each claim for relief, including the Doe Defendants identified in the heading of each claim for relief.

## FACTS

**A.    Cachet's Business**

40.     Prior to the Petition Date, Cachet contracted with hundreds of payroll processing companies (called "remarketers") pursuant to remarketer agreements ("Remarketer Agreements") to provide payroll ACH transaction services to the remarketers. Remarketers contracted with employers to provide services to meet those employers' payroll needs.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

41.     Cachet's patented ACH transaction process worked as follows: An employer provided payroll information to the remarketer. Based on the information the employer provided, the remarketer created ACH batch files identifying how much should be debited from the employers' bank accounts and credited to Cachet's settlement account, and how much should be debited from Cachet's settlement account and credited to the employers' employees' bank accounts. The batch files were then uploaded to Cachet's server for processing.

42.     The batch files also included the bank information for Cachet's settlement account (albeit through the use of a fictitious account number to protect Cachet), so that funds from the remarketer's employer-clients transferred directly from their bank accounts to Cachet's settlement account. At all times relevant to this Complaint, all funds in Cachet's settlement account were Cachet's funds.

43.     Once Cachet's server received the batch file from a remarketer, and the file was "balanced" (that is, the amounts to be withdrawn from the remarketers' employer-clients' bank accounts equaled the amounts to be deposited into the employees' bank accounts), Cachet's automated system automatically initiated the transfer of funds from the remarketers' employer-clients' bank accounts to Cachet's settlement account, as delineated in the batch file specifications, on the date indicated in the batch file. Cachet's automated system also initiated the disbursement of funds from its settlement account into the bank accounts of the employees, as provided in the batch file specifications uploaded by the remarketer, on the date indicated in the batch files uploaded to Cachet's server by the remarketer.

44.     Cachet had been in business for over 20 years and had processed approximately $150 billion in payroll transactions per year for approximately 100,000 employers.

**B.     Cachet's Relationship with Bancorp**

45.     On or about August 4, 2010, Cachet entered into a Payroll Processing ODFI Agreement ("Agreement") with Bancorp whereby Bancorp agreed to act as Cachet's ODFI and to facilitate Cachet's business of originating ACH transactions for Cachet's remarketer clients. Cachet maintained numerous accounts at Bancorp, including its settlement account (which was the account that was used to collect and disburse funds), and its operating account.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

8

46.     Pursuant to paragraph 5.1 of the Agreement, either party could terminate the Agreement for any reason upon 180 days' notice.

47.     Pursuant to paragraph 5.2 of the Agreement, either party could terminate the Agreement because of a material breach of the Agreement if the breach was not cured after 30 days' written notice.

48.     Pursuant to paragraph 5.2 of the Agreement, Bancorp could terminate the Agreement immediately and without notice, but only in order to ensure compliance with law and/or to assure its regulators of the safety and soundness of Bancorp's operations relative to Cachet.

49.     Pursuant to paragraph 8.1 of the Agreement, Cachet and Bancorp agreed to indemnify the other against any and all loss, liability, cost or expenses (including attorneys' fees, court costs and expenses) resulting from any claim of any person that Bancorp or Cachet is responsible for any act or omission or any alleged act or omission of Cachet or Bancorp.

50.     Paragraph 8.5 of the Agreement includes an indemnification provision in favor of Cachet (which is referred to as "Processor" in the Agreement) and provides:

> Bancorp shall (a) indemnify and hold Processor, its employees, officers, directors, agents and representatives harmless of and from any and all losses suffered or incurred by Processor in connection with any Client or completed, failed or misdirected Client Transaction caused by Processor; (b) use or alleged misuse by Bancorp of the ACH system and/or fines assessed against Bancorp or Processor in connection therewith; (c) losses resulting out of the breach or alleged breach by a Client under its agreement with Bancorp, including the failure of a Client to pay any reversed or failed Transaction(s) that are returned to Client by Bancorp or that, pursuant to applicable NACHA ACH Rules or Federal Reserve requirements, should have been returned by Bancorp to a Client; (d) breach by Bancorp of any of its representations, warranties or agreements under this Agreement or arising from an act or omission by Bancorp that violates any NACHA ACH Rule, Federal Reserve requirement or applicable law; (e) or arising out of or relating to any error or mistake by Bancorp or any third party involved in processing Client Transactions. Bancorp shall not be obligated to indemnify, hold harmless or reimburse Processor for any such losses, claims, damages, expenses or liabilities to the extent that the same are the direct result of the negligence or willful misconduct of Processor.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    9

51.     Paragraph 8.7 of the Agreement includes an indemnification provision in favor of Cachet (which is referred to as "Processor" in the Agreement) and provides, in pertinent part, "In addition other remedies available to Processor pursuant to this Agreement or available under law or in equity, Bancorp shall defend and indemnify the Processor from and against, and hold it harmless from all allegations, suits, claims, actions, legal proceedings, counterclaims, and demand of any kind or nature and all reasonable costs incurred by Processor in connection therewith (individually a "Claim" and collectively "Claims") which Claims arise from or result by reasons of . . . . (iv) any Claim asserted against or suffered by Processor arising out of Bancorp's misconduct or violation of any obligation herein.

**C.     Michael Mann Defrauded and Stole $26 Million from Cachet**

52.     MyPayrollHR LLC ("MyPayrollHR") was a remarketer client of Cachet. Michael Mann ("Mann") was the principal of and controlled MyPayrollHR.

53.     In or about late August and/or early September 2019, MyPayrollHR and Mann manipulated Cachet's batch file specifications to steal more than $26 million from Cachet by using Cachet to process non-payroll related transactions in violation of MyPayrollHR's Remarketer Agreement with Cachet. This occurred by way of two separate sets of transactions and two different means of theft – one for $19,199,175.74 (the "$19 Million") and another for $7,219,341.34 (the "$7 Million") for a total of $26,418,517.08.

54.     On August 30, 2019, in violation of MyPayrollHR's Remarketer Agreement with Cachet, Mann stole the $19 Million by uploading batch files to Cachet's server that, if carried out, would effectuate (1) the collection of $19,199,175.74 from accounts of entities controlled by Mann at Pioneer Bank and the deposit of $19,199,175.74 into Cachet's settlement account; and (2) the disbursement of the $19,199,175.74 from Cachet's settlement account to accounts at Pioneer Bank of entities controlled by Mann and to accounts of entities to which entities controlled by Mann were indebted. While the disbursement of the $19 Million from Cachet's settlement account occurred, Cachet did not receive the $19 Million collection because Pioneer Bank had frozen the Mann controlled accounts. Therefore, Cachet disbursed the $19 Million from its settlement account

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1   without receiving the corresponding $19 Million collection from the Mann controlled accounts at

2   Pioneer Bank.

3     55.  Mann stole the $7 Million by altering the ACH batch file specifications so that the

4   $7 Million, which was automatically debited from MyPayrollHR's employer-clients' accounts, was

5   diverted from those accounts and automatically deposited in a bank account controlled by

6   MyPayrollHR and Mann at Pioneer Bank, instead of being deposited in Cachet's settlement account,

7   as required by the Remarketer Agreement. However, the MyPayrollHR account at Pioneer Bank

8   was frozen. Therefore, Pioneer Bank rejected and returned the debits to the MyPayrollHR account

9   that were intended to fund the employees' accounts. Since Cachet was the ACH Processor, its

10  account was automatically debited for the $7 Million even though it did not receive the $7 Million

11  from the employers.

12    56.  To summarize regarding the August 30, 2019, MyPayrollHR batch files, no funds

13  were ever transferred to or collected by Cachet from any account controlled by Mann or from

14  employers' accounts. However, these fraudulent transactions caused $26,418,517.08 to be stolen

15  from Cachet.

16    57.  Mann plead guilty to various federal crimes, including crimes against Cachet as a

17  result of the batch files that were uploaded on August 30, 2019.

18  **D.**  **Cachet's Contractual Relationship with iGreen**

19    58.  iGreen was a remarketer client of Cachet. Horowitz is a principal of iGreen.

20    59.  The business relationship between Cachet and iGreen began approximately six years

21  ago and was governed by two written agreements dated January 14, 2016, which are referred to

22  herein as the "iGreen Remarketer Agreement" and the "iGreen Remarketer Addendum"

23  (collectively, the "iGreen Remarketer Agreements"). iGreen was only permitted to utilize Cachet's

24  services for payroll transactions.

25    60.  Pursuant to the iGreen Remarketer Agreements, iGreen agreed, among other things:

26      •  to assume total liability for client transactions of any nature or kind, including

27       non-sufficient funds ("NSF") transactions;

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

- to make every reasonable effort in the collection of outstanding returned electronic funds transfer ("EFT") transactions as a result of NSF or other funding problems to include, but not be limited to fraudulent transactions;

- in the event of any client unfunded NSF or other returned item, to cause funds to be forwarded to Cachet to reimburse and cover for said NSF items within the same day as the notice is received from the Federal Reserve Bank; and

- to reimburse Cachet for all such NSF items, plus associated costs, including but not limited to, interest and attorney fees.

**E.** **Regulations to which Bancorp and Dime Bank are Subject**

61. Bancorp and Dime Bank are required to abide by federal and state banking laws, regulations, and guidelines, including the USA Patriot Act, the Bank Secrecy Act ("BSA") and related anti-money laundering regulations ("AML").

62. BSA/AML provisions require financial institutions, among other things, to develop: (a) effective compliance programs to detect and prevent money laundering and kiting activity, (b) effective customer due diligence systems and monitoring programs, and (c) an effective suspicious activity monitoring and reporting process. If suspicious activity that might signal criminal activity is detected, financial institutions are obligated to file suspicious activity reports ("SARS") with the U.S. Treasury's Office of Financial Crimes Enforcement Network ("FinCEN").

63. A purpose of these regulations is to ensure that banks, which are often in the best position to identify potentially illegal activity, will closely observe the transactions taking place in their clients' accounts. BSA/AML guidance instructs banks and other financial institutions regarding how best to achieve that goal, and what actions to take once suspicious activity is identified. Moreover, under federal and state law, Bancorp and Dime Bank had a duty to operate in a manner that protects the public interest, maintains public confidence in its business, and maintains the safe and sound conduct of its business.

64. Banks, including Bancorp and Dime Bank, are required to understand the business in which their customers are engaged and who the beneficial owners of those companies are. This "Know Your Customer" ("KYC") duty, is imperative to determining what activity is suspicious.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

12

1   The information required to be obtained during account opening KYC due diligence is crucial as it

2   serves as a baseline to distinguish account activity that may be normal for a particular industry from

3   account activity that might suggest illegal activity and guides a financial institution in BSA/AML

4   areas such as alert management, investigation, and suspicious activity reporting.

5         65.    Banks, including Bancorp and Dime Bank, are required to have in place systems and

6   processes that trigger alerts when suspicious activity or "red flags" exist. Standard "red flags" in the

7   banking industry include, but are not limited to, unexplainable, repetitive and unusual transactions

8   in bank accounts, high-volume payments without logical explanation, transfers sent and received by

9   the same person using different accounts, immediate withdrawal of deposited funds, and payments

10  from accounts with insufficient funds.

11        66.    When such systems and processes are triggered, banks, including Bancorp and Dime

12  Bank, are required to investigate the account activity and determine whether the information should

13  be reported to FinCEN. Activity that should be reported includes, but is not limited to, transactions

14  in which the Bank has a substantial basis for believing a criminal violation is occurring, transactions

15  involving money laundering and transactions for which no business or lawful purpose exists or are

16  not the sort in which the particular customer would normally be engaging.

17  **F.**    <u>**Dime Bank's Knowledge of and Participation in the ACH Kiting Scheme**</u>

18        67.    In or about 2018 Kauftheil presented himself to Dime Bank as a businessman of

19  significant wealth who controlled multiple lucrative businesses. In 2018 Kauftheil opened multiple

20  personal and business bank accounts at Dime Bank, for each of which he was the only signatory.

21  Kauftheil ultimately opened 41 bank accounts at Dime Bank, including the accounts for the

22  Kauftheil Entities.

23        68.    Almost from the inception of his relationship with Dime Bank Kauftheil engaged in

24  a pattern and practice of issuing checks and initiating ACH transactions against accounts with

25  insufficient funds. This practice is known as "kiting." Dime Bank employees assisted Kauftheil with

26  his kiting activities because Dime Bank believed that its relationship with Kauftheil would be

27  lucrative.

28        69.    Dime Bank's relationship manager, Rubinov, and Dime Bank's senior vice president,

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                    13

1   Romano, and others, specifically authorized Kauftheil to cause the Kauftheil Entities to kite ACH

2   transactions when these entities had insufficient funds to cover the amounts of the ACH transactions,

3   as long as Kauftheil's continued kiting activities resulted in the accounts being credited by noon on

4   the following day with sufficient kited credits to cover the previous overdrafts. This practice is

5   referred to herein as the "ACH Kiting Scheme." Following are specific examples of Dime Bank's

6   knowledge of and participation in the ACH Kiting Scheme.

7         70.   On June 11, 2018, Dime Bank's Business Banking Product Specialist, David

8   Santimays ("Santimays"), informed Romano, the Vice President of Business Banking, Steve

9   Korman ("Korman"), and the Relationship Manager/Commercial Lending at Dime Bank, Eirit

10   Tzubary ("Tzubary"), that "ck#1343 in the amount of $150,000 is coming in for payment in account

11   ending in 8306. There is currently only $2.34 in the account." Kauftheil transferred funds into the

12   account and Romano approved the kited transaction. Santimays responded stating, "**it would be in**

13   **their [*i.e.*, Kauftheil's] best interest to deposit funds prior to issuing checks or ACH's** so no fee

14   is incurred." Tzubary confirmed, "These accounts should not be charged a fee." Despite Kauftheil's

15   clear pattern of issuing checks or effectuating ACH transactions from accounts with insufficient

16   funds, Dime Bank continued to participate in the kiting by processing the transactions and waiving

17   fees for the illegal transactions on a daily basis.

18         71.   On June 6, 2018, Santimays sounded the alarm. Santimays wrote to Tzubary,

19   Korman, Romano, Dime Bank's Vice President, Kalil Tavarez ("Tavarez"), and Dime Bank's

20   Assistant Operations Specialist – Business Banking, Mikil Harnarain ("Harnarain"), and explained,

21   "The following accounts are on the **ACH exception list again today.**" The list included seven ACH

22   kited transactions from five Kauftheil Entities' Accounts. Santimays stated, "**I'm confused as to**

23   **why the customer isn't making a deposit or transfer before processing the ACH payments.**"

24   Despite the alarm, with Dime Bank's daily assistance, the pattern continued.

25         72.   At 11:52 on June 6, 2018, as result of the accounts from which the kiting occurred

26   not having sufficient funds to cover the kited transaction, Santimays wrote to Tzubary, Korman,

27   Romano, Tavarez and Harnarain and reported, "Don't want to be a pain … but I have 10 minutes to

28   let OSD know whether to pay these items or not." The email was forwarded to Rubinov, who wrote

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1       14

to Romano stating, "I think we spoke about this situation yesterday. He [*i.e.*, Kauftheil] is in the process of moving a very big ship so it will take him some time to arrange proper order. **So this may continue for some time . . . he is heavy with ACH and doesn't necessarily know where its coming from and when.**" Despite Dime Bank's understanding that Kauftheil was "heavy with ACH" and "[didn't] necessarily know where [the funds were] coming from and when," Dime Bank continued to provide Kauftheil with a daily list of his kiting activities and assist him in moving funds so that his kited transactions would be covered.

73.     On September 21, 2018, as the Kauftheil Entities' daily pattern and practice of issuing checks or ACH transactions from accounts with insufficient funds had become common knowledge at Dime Bank, Santimays wrote to Tavarez and Harnarain, stating, "Here are HENRY ACH NSF'S ...... HERE ARE HENRY CK NSF'S." As the noon deadline approached to cover the kited transactions, at 11:08 a.m., Santimays reached out to Romano and stated, "Henry is waiting for a wire to come in so he can make the transfers. We don't see it yet and the transfer [sic] have not been made yet." In other words, Kauftheil was waiting for funds to arrive to cover his prior day's kites. Romano's approval was provided.

74.     On October 15, 2018, Santimays explained the assistance and vital role that Dime Bank played in the ACH Kiting Scheme. Santimays wrote to Tzubary, Harnarain, Tavarez and Jessica Jagnarine ("Jagnarine"), explaining, "The column states Total amount is what is coming in for payment. You will also see the current and available balances so he [Kauftheil] knows what he needs to deposit." Dime Bank continued to provide Kauftheil with the information he needed to cover his kites on a daily basis, thereby participating in the kiting and effectuating the transactions.

75.     On January 14, 2019, at 11:14 a.m., as a result of Kauftheil initiated ACH and check transactions from accounts with insufficient funds, Tzubary instructed Kauftheil where to transfer funds so that the kites could be covered, stating "Direct NJ needs $3200, Dialyze direct needs $700 Dialyze NY needs $300, Ohio needs $400 Please cover ASAP!!!" As confirmed by the sworn testimony of Dime Bank, by and through its BSA/AML officer, Holly Kimball, this was the daily procedure at Dime Bank. Dime Bank determined from which accounts with insufficient funds Kauftheil had initiated transactions (kited), informed Kauftheil of the same, and then waited for

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                          15

1  funds from "outside sources," which were then transferred by Kauftheil into the accounts with

2  insufficient funds to cover the kites. Finally, Dime Bank provided approval to complete the kited

3  transactions.

4       76.     On April 2, 2019, at 9:07 a.m., Tzubary wrote to Kauftheil identifying ten accounts

5  with insufficient funds for which Kauftheil had initiated transactions, stating that the "Transaction

6  Total that needs to be covered" was approximately $800,000. By 10:16 a.m. Kauftheil confirmed

7  that he had transferred funds to cover the kited transactions and that Dime Bank could now approve

8  the kited transactions to continue the pattern of kiting.

9       77.     Dime Bank routinely refrained from rejecting and returning debits from accounts

10  with insufficient funds. For example, on April 4, 2019, Tzubary instructed Harnarain, "I know we

11  are pending a wire from Henry please do not return any items." In other words, Tzubary instructed

12  Harnarain to not reject debits to Kauftheil's accounts that were overdrawn because of Kauftheil's

13  kiting activities.

14       78.     On April 17, 2019, Kauftheil gave Dime Bank direction to cover his initiation of

15  check and ACH transactions from accounts with insufficient funds, stating "I give permission to

16  Dime to transfer available funds from my account to any of my accounts that are negative or

17  uncollected during the Jewish Holidays." Upon information and belief Dime Bank followed

18  Kauftheil's directions and instructions and moved funds so that Kauftheil's kited transactions were

19  covered.

20       79.     On May 8, 2019, Kauftheil wrote to Tzubary and Rubinov, stating "Please clear for

21  me . . . I need this in the accounts!" Kauftheil needed checks cleared by Dime Bank immediately in

22  order to cover the transactions initiated the day before from accounts with insufficient funds. Dime

23  Bank complied with Kauftheil's orders, cleared the checks and provided the necessary approvals.

24       80.     On August 1, 2019, Kauftheil requested and received the same participation from

25  Dime Bank when he wrote to Rubinov, "IMPORTANT! I need these cleared." Again, Kauftheil

26  needed checks cleared by Dime Bank immediately in order to cover transactions initiated the day

27  before from accounts with insufficient funds. Again, Dime Bank complied with Kauftheil's orders,

28  cleared the checks and provided the necessary approvals.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                 16

81.     On August 19, 2019, Tzubary wrote to Kauftheil and copied Rubinov asking them to review a chart of Kauftheil's transactions. The chart revealed **seven withdrawals on August 2, 2019, allegedly for payroll,** "External Withdrawal DD CARE MANAGEMENT 4606 – Payroll [REDACTED]." The chart revealed six withdrawals on August 6, 2019, allegedly for payroll, **"External Withdrawal DD CARE MANAGEMENT 4606 – Payroll [REDACTED]."** In the same email Tzubary indicated to Kauftheil and Rubinov that the transactions had been initiated from accounts with insufficient funds, "Transaction total that needs to be covered," in order to move funds and continuing the pattern of and ACH Kiting Scheme. The transactions totaled over $7 million.

82.     As of September 6, 2019, Dime Bank was aware that Kauftheil was initiating kiting transactions in excess of $10 million per day. Kauftheil had over $10 million in transactions that were "pending" because he had initiated transactions from accounts with insufficient funds. Jagnarine informed Romano of this extraordinary amount, stating "I thought I would inform you all that Henry's pending items now total over 10 MM. Have we spoken to the boro park team or henry?" Romano responded, "Yes he (Yuriy) sent me documentation that I need to go through and then schedule a call with BSA." Upon information and belief, despite their clear knowledge of Kauftheil's kiting activity the employees of Dime Bank continued to participate in the illegal activity of effectuating the ACH Kiting Scheme and providing Kauftheil a daily report of his kited transactions, and then providing the necessary approvals for the scheme to continue.

83.     On October 7, 2019, just ten days before the theft at issue, Jagnarine wrote to Tzubary highlighting "Transaction Total that needs to be covered," which included more than $18,000,000 in transactions. Tzubary wrote to Romano, Rubinov and Jagnarine explaining, "Online banking is down and Henry cannot do his transfers." In other words, because Kauftheil could not access his online accounts he could not transfer funds to cover the transactions he had initiated from accounts with insufficient funds—kiting.

84.     Dime Bank also reached out to Kauftheil to assure checks he had written were not going to bounce, providing him protection from his own kiting activity. By way of example, on October 19, 2019, VaShawn Simmons of Dime Bank reached out to Kauftheil to request his permission to negotiate a check that Kauftheil had written against an account with insufficient funds,

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

17

1 stating "Henry I called your cell and left a voicemail. Can you advise if this is a good check for us

2 to pay?"

3       85.    As shown above, from June 2018 forward Kauftheil routinely caused ACH kiting

4 transactions on a daily basis, and Dime Bank was monitoring the Kauftheil Entities' accounts and

5 assisting the kiting on a daily basis. By August 2019, with Dime Bank's knowledge, consent and

6 assistance, Kauftheil caused ACH kiting transactions between accounts at Dime Bank and Bancorp

7 that involved millions of dollars in debits and credits, and ultimately involved as much as $21

8 million per day. The daily kited amounts were often in the same amounts, which in addition to the

9 foregoing, placed Dime Bank on actual notice that these transactions involved kiting. Nevertheless,

10 Dime Bank assisted Kauftheil in kiting ACH transactions and checks from accounts with insufficient

11 funds by approving such transactions on a daily basis beginning in at least June of 2018 and

12 providing Kauftheil the infrastructure and information to do so.

13       86.    Dime Bank not only gave Kauftheil carte blanche to do virtually whatever he wanted

14 regardless of illegality, but it also knowingly assisted the ACH Kiting Scheme described herein.

15 Dime Bank disregarded its BSA/AML compliance obligations and failed to adhere to any of its

16 KYC responsibilities regarding the Kauftheil Entities. Dime Bank's assisting and participating in

17 the ACH Kiting Scheme set forth herein was unique to Kauftheil. Dime Bank permitted this ACH

18 Kiting because, according to Dime Bank's testimony under oath, "[Kauftheil had assured the bank

19 that these companies were going to be profitable and that by year end, he would have multi-million

20 dollars on deposit with the bank. So the relationship managers who are in charge of the relationship

21 [*i.e.*, Rubinov and Romano] took him for his word and considered this to be a potentially profitable

22 customer relationship where we could grow along with Mr. Kauftheil and provide him assistance in

23 growing his business." In other words, despite daily ACH transactions in excess of $20 million,

24 Dime Bank admits that it knew that Kauftheil did not have this level of cash, and that they were

25 hoping that multi-millions of dollars would be on deposit in the future. According to Dime Bank's

26 sworn testimony, after Kauftheil's accounts were closed, Dime Bank no longer had any customer

27 or account holder who transacted business in the manner that Kauftheil transacted business, *i.e.*,

28 ACH kiting. Further, Ms. Kimball testified on behalf of Dime Bank that she hopes that Dime Bank

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1         18

1  will not have any such customer in the future.

2      87.    Had Dime Bank acted appropriately and complied with its BSA/AML and regulatory

3  obligations, it would not have permitted and assisted the Kauftheil Entities' bank fraud, money

4  laundering and ACH Kiting Scheme described herein. Dime Bank would have reported these

5  activities to FinCEN long before October 18, 2019. Dime Bank's failure to do so was a proximate

6  cause of Cachet's damages.

7      88.    Ultimately, Holly Kimball and Dime Bank's director of security, David Panetta,

8  became concerned that having allowed the ACH Kiting Scheme to continue for so long might result

9  in a significant loss to Dime Bank. Accordingly, after banking hours on October 18, 2019, Dime

10  Bank froze the accounts controlled by Kauftheil, including the Kauftheil Entities' accounts. As

11  described below, in so doing Dime Bank protected itself from its own malfeasance by causing a

12  catastrophic loss to Cachet.

13  **G.**    **The $21,459,180.97 Theft by Kauftheil and Rothenberg Aided and Abetted by Dime**

14      **Bank, iGreen, Horowitz and the Kauftheil Entities.**

15      89.    On or before October 17, 2019, Kauftheil and/or Rothenberg contacted Horowitz and

16  plotted with Horowitz to effectuate ACH transactions through Cachet's ACH system that were not

17  payroll related and were intended to steal $21,459,180.97 from Cachet.

18      90.    On or before October 17, 2019, Kauftheil and/or Rothenberg provided information

19  to Horowitz and iGreen to include in batch files to be uploaded to Cachet's server to initiate the

20  collection of funds from the Kiting Entities' bank accounts in six separate non-payroll related ACH

21  transactions for a total amount of $21,459,180.97 that were to purportedly credit Cachet's settlement

22  account in this same amount. However, as was Kauftheil's routine practice, there were insufficient

23  funds in the Kiting Entities' bank accounts at the time that the batch files were uploaded. This type

24  of transaction, kiting, was specifically authorized by Dime Bank, as aforementioned, and had

25  occurred on many occasions before with Dime Bank's knowledge and consent. Furthermore, the

26  specific ACH kiting transactions described in this and in subsequent paragraphs were specifically

27  authorized by Dime Bank.

28      91.    On or about October 17, 2019, Horowitz and iGreen fraudulently uploaded batch

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

1    files ("Fraudulent Batch Files") disguised as payroll transactions to Cachet's server that, if carried

2    out, would have effectuated the collection of $21,459,180.97 from the Kiting Entities' bank accounts

3    at Dime Bank and transferred the same into Cachet's settlement account as follows:

| Kiting Entities | Amount |
|---|---|
| a. RKMA | $3,675,909.19; |
| b. H3 Health | $3,192,062.04; |
| c. H3 Health | $4,159,140.43; |
| d. Access | $2,891,191.52; |
| e. Access | $4,154,192.08; and |
| f. H3 Food | $3,386,685.71 |
| **Total:** | **$21,459,180.97** |

12       92.     As the sole signatory on the Kiting Entities' accounts that Kauftheil used to effectuate

13    transactions on a daily basis, and because of Dime Bank's daily monitoring of the Kauftheil Entities'

14    accounts, both Kauftheil and Dime Bank knew that none of the Kiting Entities' accounts had

15    sufficient funds to cover the aforementioned collection transfers. Nevertheless, pursuant to Dime

16    Bank's express authorization to effectuate millions of dollars in ACH transfers from accounts with

17    insufficient funds, Kauftheil and/or Rothenberg instructed Horowitz to effectuate these transactions.

18       93.     On or about October 17, 2019, Horowitz and iGreen uploaded the Fraudulent Batch

19    Files to Cachet's server that effectuated the disbursement of $21,459,180.97 from Cachet's

20    settlement account to the Fraudulently Credited Entities' bank accounts as follows:

| Fraudulently Credited Entity | Amount |
|---|---|
| a. H3 Energy | $3,675,909.19; |
| b. H3 Energy | $3,192,062.04; |
| c. H3 Energy | $2,891,191.52; |
| d. H3 Advisory | $4,159,140.43; |
| e. H3 Advisory | $3,386,685.71; and |
| f. H3 Advisory | $4,154,192.08 |
| **Total:** | **$21,459,180.97** |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

94.     Kauftheil then caused the $21,459,180.97 to be transferred from the Fraudulently Credited Entities to other Kauftheil Entities' bank accounts at Dime Bank, including between bank accounts held by the Intermediary Entities. Then, on October 18, 2019, Kauftheil caused the Intermediary Entities to transfer Cachet's $21,459,180.97 from Dime Bank to a bank account or accounts at another banking institution. The following are the specific transactions on October 18, 2019, whereby the Intermediary Entities transferred the funds out of Dime Bank:

| Intermediary Entity | Amount |
| --- | --- |
| a. Dialyze | $3,386,685.71; |
| b. H3 Capital | $2,891,191.52; |
| c. H3 Capital | $4,154,192.08; |
| d. KG Kosher | $3,675,909.19; |
| e. ACG | $3,192,062.04; and |
| f. ACG | $4,159,140.43 |
| **Total:** | **$21,459,180.97** |

95.     Dime Bank knew of and approved all of the above-described transactions.

96.     On this same day, October 18, 2019, at 11:37 a.m., Pacific time, Shekera Johnson from Bancorp called Cachet's Director of Operations, Hanan Succar, and informed Ms. Succar that she was contacted by Dime Bank about possible suspicious activity involving the Kauftheil Entities' accounts. The transactions that Ms. Johnson identified appeared to be suspicious because funds were being drawn from Dime Bank Accounts, being processed by Cachet's system, and then being deposited back into Dime Bank Accounts. Furthermore, multi-million-dollar transactions are inconsistent with payroll amounts. Ms. Succar traced the transactions and identified iGreen as the remarketer that submitted the Fraudulent Batch Files for these transactions.

97.     Ms. Succar then called Horowitz. Horowitz confessed to Ms. Succar that the transactions were not payroll related. He stated that Rothenberg was an investor in iGreen, and that Rothenberg asked him to effectuate the transactions. Horowitz stated that he agreed to effectuate these transactions in violation of the terms of iGreen's Remarketer Agreements with Cachet because he felt pressured by Rothenberg. Even worse, Horowitz also told Ms. Succar that a company that

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                21

was affiliated with Rothenberg and Kauftheil was in the process of going public and that they needed to move funds between accounts to show balances in other accounts. Thus, without Cachet's knowledge, authorization, or consent, iGreen uploaded the Fraudulent Batch Files based upon information obtained from Rothenberg and/or Kauftheil.

98. Ms. Succar contacted Ms. Johnson and informed her of her discussion with Horowitz. Ms. Succar asked if there was a way to reverse the transactions. Ms. Johnson contacted Dime Bank and then informed Ms. Succar that she was advised that Cachet's funds had already been moved out of Dime Bank. Ms. Johnson also informed Ms. Succar that Dime Bank told her that Dime Bank would not reject and return the debits from the Kiting Entities' accounts at Dime Bank.

**H.** **Dime Bank Closed the Kauftheil Entities' Accounts**

99. In the evening of October 18, 2019, Dime Bank froze and closed all of the Kauftheil Entities' accounts. Even though by October 2019, Kauftheil was effectuating ACH transactions in excess of $20 million per day, after Kauftheil had moved Cachet's $21,459,180.97 out of Dime Bank a total of only $571,766.02 remained in the Kauftheil Entities' accounts.

**I.** **Dime Bank Rejected and Returned the Debits but Refused to Reject the Credits**

100. Based upon the above-described October 18, 2019, conversations between Ms. Succar and Ms. Johnson, and the above-described conversations between Ms. Johnson and representatives of Dime Bank, Dime Bank was on actual notice that:

    a. iGreen uploaded the Fraudulent Batch Files to Cachet's server causing it to initiate the collection of $21,459,180.97 from the Kiting Entities' accounts when those accounts lacked sufficient funds, as Dime Bank had permitted Kauftheil to do on a daily basis for well over a year;

    b. Cachet's Settlement account had been debited in the amount of $21,459,180.97;

    c. the Fraudulently Credited Entities' accounts had been credited in the amount of $21,459,180.97; and

    d. Kauftheil had moved Cachet's funds out of Dime Bank.

In other words, Dime Bank was aware that permitting Kauftheil to kite ACH transactions had resulted in Kauftheil absconding with a multi-million-dollar theft.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

22

1        101.   Notwithstanding this extensive and specific knowledge, Mr. Panetta and Ms.

2 Kimball were concerned that Dime Bank may become the victim of its own willing participation in

3 Kauftheil's illegal behavior. Therefore, notwithstanding Dime Bank's, Rubinov's and Romano's

4 permission and participation in the $21,459,180.97 ACH kiting transactions from the Kiting

5 Entities' accounts, and even though Dime Bank knew that the $21,459,180.97 had already been

6 deposited into the Fraudulently Credited Entities' accounts at Dime Bank and thereafter transferred

7 out of Dime Bank by Kauftheil, on October 21, 2019, Dime Bank rejected and returned the October

8 18, 2018 debits to the Kiting Entities' bank accounts, but did not reject and return the credits to the

9 Fraudulently Credited Entities' accounts, thereby attempting to protect Dime Bank from its own

10 illegal conduct and participation in the theft of $21,459,180.97. Accordingly, Cachet's settlement

11 account did not receive the $21,459,180.97 from the Kiting Entities' accounts.

12        102.   Thus, without Cachet's knowledge or consent, at Kauftheil's and Rothenberg's

13 specific request, and with Dime Bank's consent, substantial assistance and participation, Horowitz

14 and iGreen uploaded the Fraudulent Batch Files to Cachet's server based upon information obtained

15 from Kauftheil and/or Rothenberg, which caused Cachet to disburse $21,459,180.97 to the

16 Fraudulently Credited Entities without receiving any funds from the Kiting Entities.

17 **J.**    **Dime Bank Allowed Kauftheil to Obtain the Balances in the Kauftheil Entities'**

18      **Accounts**

19        103.   After assisting Kauftheil to kite ACH transactions resulting in the theft of

20 $21,459,180.97 from Cachet, and after it knew that Kauftheil transferred Cachet's $21,459,180.97

21 out of Dime Bank, Dime Bank thereafter allowed Kauftheil to obtain the balances in the Kauftheil

22 Entities' frozen accounts in the amount of $571,766.02. Consequently, those funds were no longer

23 available to provide restitution to Cachet.

24 **K.**    **Bancorp's Failure to Prevent the Mann and Kauftheil Thefts**

25        104.   Like Dime Bank, Bancorp had a duty to execute its BSA/AML programs, systems

26 and obligations. Bancorp had an obligation to scrutinize transactions for anomalies. Further, given

27 the history of Bancorp's relationship with Cachet, Bancorp was on actual notice of the amounts of

28 payroll transactions effectuated through Cachet's system. In light of Bancorp's KYC/AML duties it

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    23

was on actual notice that multiple multi-million-dollar transactions would be an anomaly for Cachet, remarketers and employers. Yet, Bancorp failed to implement procedures to detect identical multi-million-dollar transactions between it and Dime Bank that were going on daily for months. In light of its actual notice of the typical amounts of Cachet's transactions Bancorp could and should have placed barriers on transactions that were unusually large or, at a minimum, implemented procedures to detect unusually large transactions.

105.    Upon information and belief Bancorp had no procedures in place to detect anomalies or unusual transactions.

106.    Had Bancorp acted appropriately and complied with its BSA/AML and regulatory obligations, the Mann theft and the ACH Kiting Scheme described herein would have been detected and reported to FinCEN and/or Cachet prior to October 18, 2019. Bancorp's failure to do so was a proximate cause of Cachet's damages.

**L.    Bancorp Improperly Terminated the Agreement**

107.    Cachet attempted to work with Bancorp to resolve the issues created by the above-described fraud and kiting. Cachet was capable of continuing its business regardless of the stolen funds. Nevertheless, without any prior notice, on October 23, 2019, Bancorp informed Cachet that it unilaterally terminated the Agreement. Bancorp froze the funds in Cachet's accounts.

108.    Bancorp's termination of the Agreement and termination of Cachet's ability to originate ACH transactions was improper, wrongful, unnecessary, a result of Bancorp's own failures, commercially unreasonable and was a breach of the Agreement.

**M.    Bancorp's Tortious Conduct After It Terminated the Agreement**

109.    After Bancorp terminated the Agreement, it engaged in numerous acts that caused significant and irreparable damage to Cachet, including:

a.    Freezing all of Cachet's bank accounts at Bancorp, including its settlement account which contained in excess of $100 million, and Cachet's operating account which contained in excess of $5 million;

b.    Sweeping all of Cachet's bank accounts at Bancorp without any statutory or contractual authority; and

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    24

1              c.      Blocking Cachet's access to its bank and client (remarketer) account

2  information.

3        110.   The foregoing acts by Bancorp assured that Cachet would be prevented from

4  continuing its business.

5        111.   Bancorp's termination of Cachet's ability to originate ACH transactions caused

6  chaos throughout the payroll industry. Hundreds of thousands of employees did not timely receive

7  their pay. Because Bancorp froze funds in Cachet's settlement account, employers and remarketers

8  were required to fund payroll for a second time through an ACH processor other than Cachet or

9  fund payroll manually.

10       112.   Bancorp made improper and unauthorized disbursements of funds from Cachet's

11  bank accounts at Bancorp. Following its termination of the Agreement, Bancorp transferred millions

12  of dollars to or for the alleged benefit of Cachet's remarketers and downstream employers and

13  employees without the benefit of Cachet's software programs and personnel, thereby resulting in

14  overpayments to some parties and not paying or underpaying others. Bancorp has not accounted for

15  its actions or the dozens if not hundreds of transactions it effectuated after termination of the

16  Agreement without the permission or authorization of the account holder, Cachet.

17       113.   On November 5, 2019, Bancorp initiated an unnecessary interpleader action in the

18  United States District Court for the District of Delaware (the "Delaware District Court"), Case No.

19  1:19-cv-02088-MN (the "Interpleader Action") wherein it named hundreds of defendants, including

20  Cachet, and alleged that it would deposit with the Delaware District Court the amount taken from

21  Cachet's bank accounts at Bancorp.

22       114.   At the time Bancorp filed the Interpleader Action, Bancorp held approximately $31.1

23  million in Cachet's accounts, after disbursing over $70 million of Cachet's funds. On November 18,

24  2019, Bancorp's counsel wrote a letter to the Delaware District Court stating that while the amount

25  to be interplead at the time Bancorp filed the Interpleader Action was $31.1 million, the amount

26  Bancorp now sought to interplead was $15,799,963.27 (which, with interest accrued thereon and

27  any subsequent deposits thereto, shall be referred to herein as the "Stake"). Bancorp alleged that the

28  reason for the loss of over one-half of the amount to be interplead was certain transactions having

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1               25

1 been initiated prior to the filing of the Interpleader Action that did not post until after the filing of

2 the Interpleader Action, and posting controls implemented by Bancorp.

3       115. On November 19, 2019, the Delaware District Court ordered Bancorp to deposit the

4 remaining $15,799,963.27 into the Delaware District Court's registry.

5       116. On November 20, 2019, Bancorp deposited $15,799,963.27 into the Delaware

6 District Court's registry. On November 25, 2019, Bancorp filed an amended complaint in the

7 Interpleader Action, alleging it interplead $15,799,963.27.

8       117. Later, and pursuant to stipulations and orders entered in the Bankruptcy Case and the

9 Interpleader Action, the Delaware District Court disbursed the entire Stake pro rata to stakeholders

10 with an interest in the Stake.

11       118. As a result of Bancorp's freeze on Cachet's accounts and Cachet's inability to

12 process any ACH transactions, Cachet was forced out of the ACH payroll processing business and

13 is no longer operating in such capacity. Bancorp's actions were unjustified and were commercially

14 unreasonable.

15 **N.**     **One of the Kauftheil Entities Allegedly Repaid $7 Million**

16       119. Cachet is informed and believes and thereon alleges that in October and November

17 2019, Bancorp entered into negotiations with Kauftheil and/or one of the Kauftheil Entities which

18 resulted in a purported settlement or some agreement to which Cachet was not a party. Cachet has

19 been advised by Bancorp that such agreement either does not exist or its terms are confidential.

20 Also, in October and November 2019, in a series of three transactions, which Cachet is informed

21 and believes and thereon alleges were related to or in fulfillment of this secret agreement between

22 Bancorp and DD Care and/or Kauftheil, one of the Kauftheil Entities wired $7 million to Cachet's

23 bank accounts at Bancorp. Cachet is also informed and believes and thereon alleges that this $7

24 million was included in the funds deposited by Bancorp in the Interpleader Action.

25 **O.**     **Actions Against Cachet**

26       120. Because of Cachet's inability to process any ACH transactions, caused by the

27 Defendants named herein, remarketers, employers and employees filed a total of four class action

28 lawsuits for damages against Cachet. A separate lawsuit was also filed by a single remarketer.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1              26

**P.    Cachet's Bankruptcy**

121.    As a result of the above, on January 21, 2020, Cachet filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Case. 192 proofs of claim, seeking a total of $31,584,585.11 from Cachet, were filed in the Bankruptcy Case, including the above-described lawsuits against Cachet.

**Q.    Bancorp's Proof of Claim**

122.    On September 10, 2020, Bancorp filed a proof of claim in the Bankruptcy Case asserting a general unsecured claim in the amount of $2,583,023.24 which is designated on the claims register for the Bankruptcy Case as Claim 170 ("Claim 170"). A true and correct copy of Claim 170 is attached hereto as Exhibit 1.

123.    Also on September 10, 2020, Bancorp filed a proof of claim in the Bankruptcy Case asserting a general unsecured claim in the amount of $2,583,023.24 which is designated on the claims register for the Bankruptcy Case as Claim 174. A true and correct copy of the original filed Claim 174 is attached hereto as Exhibit 2. Claim 170 and Claim 174 are duplicates of one another. Claim 170 and Claim 174 (defined below) will be collectively referred to herein as the "Bancorp Claims."

124.    On August 2, 2021, Bancorp filed an amended Claim 174 ("Claim 174") to reduce the claim amount to $927,806.82. Claim 174 alleges the basis of Claim 174 to be attorneys' fees covered by an indemnification provision which is part of the Agreement in paragraph 8.4. A true and correct copy of Claim 174 is attached hereto as Exhibit 3.

125.    The indemnification provision included in paragraph 8.4 of the Agreement provides that Cachet would:

(a) indemnify and hold Bancorp, its employees, officers, directors, agents and representatives harmless of and from any and all losses suffered or incurred by Bancorp in connection with any Client or completed failed or misdirected Client Transaction caused by Processor; (b) use or alleged misuse by Processor of the ACH system and/or fines assessed against Bancorp or Processor in connection therewith; (c) losses resulting out of the breach or alleged breach by a Client under its agreement with Processor, including the failure of a Client to pay any reversed or failed Transaction(s) that are returned to Client by Processor or that, pursuant to applicable NACHA ACH Rules or Federal Reserve requirements, should have been returned by Processor to a Client; (d) breach by Processor of any of its representations, warranties or agreement under this Agreement or

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                          27

1    arising from an act or omission by Processor that violates an NACHA Rule,
     Federal Reserve requirement or applicable law; (e) or arising out of or relating
2    to any error mistake by Processor or any third party involved in processing
     Client Transactions. Processor shall not be obligated to indemnify, hold
3    harmless or reimburse Bancorp for any such losses, claims, damages, expenses
     or liabilities to the extent that the same are the direct result of the negligence or
4    willful misconduct of Bancorp.

5        126.    Bancorp is not entitled to indemnification as a result of, *inter alia,* its negligence

6    and willful misconduct described herein.

7                            **FIRST CLAIM FOR RELIEF**

8                    **(Fraud by Misrepresentation of Material Fact**

9    **Against Kauftheil, the Kauftheil Entities, Rothenberg, Horowitz, iGreen and Does 1 through**

10                                    **4)**

11       127.    Cachet realleges and incorporates paragraphs 1 through 126 as though set forth in

12   this paragraph in full.

13       128.    18 U.S.C. § 1344 states: "Whoever knowingly executes, or attempts to execute, a

14   scheme or artifice (1) to defraud a financial institution or (2) to obtain any of the moneys, funds,

15   credits, assets, securities, or other property owned by, or under the custody or control of, a financial

16   institution, by means of false or fraudulent pretenses, representations, or promises shall be fined not

17   more than $1,000,000 or imprisoned not more than 30 years, or both."

18       129.    The Fraudulent Batch Files uploaded to Cachet's server by Horowitz and iGreen, as

19   part of its scheme with the Kauftheil Entities, on October 17, 2019, contained ACH specifications

20   which were purportedly intended to cause the Kiting Entities' bank accounts to transfer

21   $21,459,180.97 to Cachet's settlement account, and for this same amount to be transferred from

22   Cachet's settlement account to the Fraudulently Credited Entities' bank accounts.

23       130.    Cachet is informed and believes that Kauftheil devised the scheme to defraud Cachet,

24   provided instructions for the implementation of the scheme and used the Kauftheil Entities in

25   perpetrating the fraudulent scheme.

26       131.    The Kauftheil Entities assisted in perpetrating the fraud by serving as the Kiting

27   Entities, the Fraudulently Credited Entities, the Intermediary Entities and/or the entities that

28   received the funds when they were transferred out of Dime Bank.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                              28

1    132.    Rothenberg assisted in the fraud by providing necessary instructions to Horowitz to

2    create the Fraudulent Batch Files.

3    133.    Horowitz created and caused iGreen to upload the Fraudulent Batch Files to Cachet's

4    server.

5    134.    By causing the Fraudulent Batch Files to be uploaded to Cachet's server on or about

6    October 17, 2019, Defendants represented to Cachet that the Kiting Entities' bank accounts

7    contained sufficient funds such that the $21,459,180.97 would be transferred to Cachet's settlement

8    account. This representation was false. The Kiting Entities' bank accounts had insufficient funds.

9    This constituted obtaining the $21,459,180.97 by means of false or fraudulent pretenses in violation

10   of 18 U.S.C. § 1344. In addition, the Fraudulent Batch files falsely stated that the transactions

11   involved payroll, which was the only permitted purpose for utilizing Cachet's system.

12   135.    Defendants' representations in the Fraudulent Batch Files were false. None of the

13   Kiting Entities' bank accounts had sufficient funds to transfer the $21,459,180.97 to Cachet's

14   settlement account as set forth in the Fraudulent Batch Files. Further, none of the transactions

15   involved payroll.

16   136.    Defendants knew that the representations were false when they made them.

17   137.    Defendants intended that Cachet rely on the representations.

18   138.    Cachet did not know that Defendants' representations were false.

19   139.    Cachet reasonably relied on Defendants' representations by transferring

20   $21,459,180.97 to the Fraudulently Credited Entities' bank accounts without receiving a

21   corresponding amount from the Kiting Entities' bank accounts.

22   140.    As a proximate result of Defendants' fraud by misrepresentation Cachet was the

23   victim of a $21,459,180.97 theft. Defendants subsequently allegedly repaid $7 million such that the

24   unpaid amount may total $14,459,180.97.

25   141.    As a further proximate result of Defendants' fraud by misrepresentation Cachet's

26   business was destroyed. Cachet's value as a going concern was in excess of $150 million.

27   142.    As a further proximate result of Defendants' fraud by misrepresentation Cachet was

28   forced to seek protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192 proofs

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                29

1   of claim have been filed in the Bankruptcy Case. Cachet paid approximately $8 million to resolve

2   all claims in the Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in excess

3   of $3.0 million in the Bankruptcy Case.

4   143.   As a further proximate result of Defendants' fraud by misrepresentation Cachet has

5   been involved in extensive litigation, in addition to the bankruptcy matter, regarding these matters

6   for which Cachet has incurred attorney's fees and costs in excess of $500,000.

7   144.   Cachet's reliance on Defendants' false representations was a substantial factor in

8   causing Cachet's harm.

9   145.   The above-described false representations by Defendants were committed

10  maliciously, fraudulently and oppressively, in bad faith, and in conscious disregard of Cachet's

11  rights. Thus, Cachet is entitled to recover punitive damages against Defendants in an amount

12  sufficient to punish and make an example of Defendants.

13  146.   Each of the Defendants conspired and agreed among themselves to commit the fraud

14  alleged herein by perpetration of the ACH Kiting Scheme, and each took an overt step in furtherance

15  of said conspiracy. As such, each Defendant is liable for the fraud alleged herein.

16  147.   Wherefore, Cachet requests judgment as set forth below.

17  **SECOND CLAIM FOR RELIEF**

18  **(Fraud by Promise Without Intent to Perform**

19  **Against Kauftheil, the Kauftheil Entities, Horowitz, iGreen and Does 1 through 4)**

20  148.   Cachet realleges and incorporates paragraphs 1 through 147 as though set forth in

21  this paragraph in full.

22  149.   The Fraudulent Batch Files uploaded on October 17, 2019, to Cachet's server by

23  Horowitz and iGreen, acting as the agent for Kauftheil and the Kauftheil Entities, contained ACH

24  specifications which constituted a promise that the Kiting Entities' bank accounts had sufficient

25  funds to transfer the amount of the debits set forth in the uploaded batch files to Cachet's settlement

26  account and that the funds would be transferred to Cachet's settlement account.

27  150.   At the time that the Fraudulent Batch Files were uploaded to Cachet's server on

28  October 17, 2019, the Kiting Entities accounts had insufficient funds to cover the debits to their

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

accounts and funds were not transferred to the Kiting Entities' accounts in order to fund the debits. Defendants did not intend to perform their promise to transfer $21,459,180.97 to Cachet's settlement account.

151.    Defendants intended that Cachet rely on their false promise.

152.    Cachet did not know that Defendants' promise was false.

153.    Cachet reasonably relied on Defendants' false promise by transferring $21,459,180.97 to the Fraudulently Credited Entities' bank accounts without a corresponding credit to Cachet's settlement account via transfer from the Kiting Entities' bank accounts.

154.    As a proximate result of Defendants' fraud by promise without intent to perform Cachet was the victim of a $21,459,180.97 theft. Defendants subsequently allegedly repaid $7 million such that the unpaid amount may total $14,459,180.97.

155.    As a further proximate result of Defendants' fraud by promise without intent to perform Cachet's business was destroyed. Cachet's value as a going concern was in excess of $150 million.

156.    As a further proximate result of Defendants' fraud by promise without intent to perform Cachet was forced to seek protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192 proofs of claim have been filed in the Bankruptcy Case. Cachet paid approximately $8 million to resolve all claims in the Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in excess of $3.0 million in the Bankruptcy Case.

157.    As a further proximate result of Defendants' fraud by promise without intent to perform Cachet has been involved in extensive litigation, in addition to the bankruptcy matter, regarding these matters for which Cachet has incurred attorney's fees and costs in excess of $500,000.

158.    Cachet's reliance on Defendants' false promise was a substantial factor in causing Cachet's harm.

159.    The above-described false promise by Defendants was committed maliciously, fraudulently and oppressively, in bad faith, and in conscious disregard of Cachet's rights. Thus,

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                31

1  Cachet is entitled to recover punitive damages against Defendants in an amount sufficient to punish

2  and make an example of Defendants.

3      160.    Each of Defendants conspired and agreed among themselves to commit the fraud

4  alleged herein by perpetration of the ACH Kiting Scheme, and each took an overt step in furtherance

5  of said conspiracy. As such, each Defendant is liable for the fraud alleged herein.

6      161.    Wherefore, Cachet requests judgment as set forth below.

7  **THIRD CLAIM FOR RELIEF**

8  **(Conversion Against Kauftheil, the Kauftheil Entities, Rothenberg, Horowitz, iGreen and**

9  **Does 1 through 4)**

10      162.    Cachet realleges and incorporates paragraphs 1 through 161 as though set forth in

11  this paragraph in full.

12      163.    Cachet possessed and had the right to possess the $21,459,180.97.

13      164.    Defendants knowingly and intentionally took possession or interfered with Cachet's

14  right to possess or have access to the $21,459,180.97.

15      165.    Cachet demanded return of the $21,459,180.97, but Defendants have only allegedly

16  returned $7 million.

17      166.    Cachet did not consent to Defendants converting the $21,459,180.97 to their own

18  use.

19      167.    As a proximate result of Defendants' conversion Cachet was harmed in the amount

20  of $21,459,180.97. Defendants subsequently allegedly repaid $7 million such that the unpaid

21  amount may total $14,459,180.97.

22      168.    As a further proximate result of Defendants' conversion Cachet's business was

23  destroyed. Cachet's value as a going concern was in excess of $150 million.

24      169.    As a further proximate result of Defendants' conversion Cachet was forced to seek

25  protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192 proofs of claim have

26  been filed in the Bankruptcy Case. Cachet paid approximately $8 million to resolve all claims in the

27  Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in excess of $3.0 million in

28  the Bankruptcy Case.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

170.   As a further proximate result of Defendants' conversion Cachet has been involved in extensive litigation, in addition to the bankruptcy matter, regarding these matters for which Cachet has incurred attorney's fees and costs in excess of $500,000.

171.   Defendants' conduct was a substantial factor in causing Cachet's harm.

172.   Defendants' conversion was committed maliciously, fraudulently and oppressively, in bad faith, and in conscious disregard of Cachet's rights. Thus, Cachet is entitled to recover punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants.

173.   Each of Defendants conspired and agreed among themselves to commit the conversion alleged herein by perpetration of the ACH Kiting Scheme, and each took an overt step in furtherance of said conspiracy. As such, each Defendant is liable for the fraud alleged herein.

174.   Wherefore, Cachet requests judgment as set forth below.

## FOURTH CLAIM FOR RELIEF

**(Aiding and Abetting Fraud and Conversion Against Kauftheil, the Kauftheil Entities, Rothenberg, iGreen, Horowitz, and Does 1 through 4)**

175.   Cachet realleges and incorporates paragraphs 1 through 174 as though set forth in this paragraph in full.

176.   If it is determined that any of Defendants named in claims for relief 1 through 3, above, are not liable for the acts alleged in those claims for relief, then Kauftheil, the Kauftheil Entities, Rothenberg, Horowitz, iGreen and/or Does 1 and 2 aided and abetted others in perpetrating fraud and conversion against Cachet, as alleged above, and converting $21,459,180.97 to which Cachet had a possessory interest.

177.   Defendants had actual knowledge of the ACH Kiting Scheme that resulted in the fraud and conversion alleged herein.

178.   Defendants knowingly and intentionally materially assisted Kauftheil and others in perpetrating the fraud and conversion against Cachet, as alleged above, and specifically:

a.   Kauftheil devised and implemented the ACH Kiting Scheme and caused the Kauftheil Entities to participate in the ACH Kiting Scheme.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                        33

        b.      Rothenberg pressured Horowitz into participating in the fraud and conversions and thereafter provided information to Horowitz, including the identity of the entities and the amounts of the transactions to be placed in the Fraudulent Batch Files when he knew that the Kiting Entities had insufficient funds and when he knew that iGreen was not permitted to initiate non-payroll ACH transactions through Cachet's system;

        c.      iGreen and Horowitz created and uploaded the Fraudulent Batch Files to Cachet's server, fraudulently designating them as payroll transactions when they knew they were not, thereby causing Cachet's server to credit the Fraudulently Credited Entities' accounts as alleged above when they knew that the Kiting Entities' accounts had insufficient funds; and

        d.      the Kauftheil Entities, by and through Kauftheil, fraudulently materially assisted the fraud and conversion as follows:

        i.      the Kiting Entities were used to mislead Cachet into believing that Cachet's settlement account was to receive funds from the Kiting Entities when the Kiting Entities accounts had insufficient funds to effectuate the transfer to Cachet's settlement account;

        ii.      the Fraudulently Credited Entities received the funds fraudulently obtained from Cachet's settlement account and thereafter transferred the funds to the Intermediary Entities;

        iii.      The Intermediary Entities transferred the stolen funds between themselves in an effort to obfuscate the fraud and conversion and thereafter transferred the stolen funds to an account or accounts outside of Dime Bank; and

        iv.      Cachet is informed and believes and thereon alleges that DD Care may have received the stolen funds at another financial institution from the Intermediary Entities.

179. As a proximate cause of Defendants' aiding and abetting Kauftheil's and others in perpetrating the fraud and conversion Cachet was the victim of a 21,459,180.97 theft. Defendants subsequently alleged repaid $7 million such that the unpaid amount may total $14,459,180.97.

180. As a further proximate result of Defendants' aiding and abetting fraud and conversion Cachet's business was destroyed. Cachet's value as a going concern was in excess of $150 million.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

1    181.   As a further proximate result of Defendants' aiding and abetting fraud and

2  conversion Cachet was forced to seek protection pursuant to Chapter 11 of the United States

3  Bankruptcy Code. 192 proofs of claim have been filed in the Bankruptcy Case. Cachet paid

4  approximately $8 million to resolve all claims in the Bankruptcy Case. In addition, Cachet incurred

5  attorney's fees and costs in excess of $3.0 million in the Bankruptcy Case.

6    182.   As a further proximate result of Defendants' aiding and abetting fraud and

7  conversion Cachet has been involved in extensive litigation, in addition to the bankruptcy filing,

8  regarding these matters for which Cachet has incurred attorney's fees and costs in excess of

9  $500,000.

10    183.   Defendants' aiding and abetting fraud and conversion was committed maliciously,

11  fraudulently and oppressively, in bad faith, and in conscious disregard of Cachet's rights. Cachet is

12  entitled to recover punitive damages against Defendants in an amount sufficient to punish and make

13  an example of Defendants.

14    184.   Wherefore, Cachet requests judgment as set forth below.

15                    **FIFTH CLAIM FOR RELIEF**

16    **(Money Had and Received Against Kauftheil, the Kauftheil Entities and Does 1 through 4)**

17    185.   Cachet realleges and incorporates paragraphs 1 through 184 as though set forth in

18  this paragraph in full.

19    186.   Defendants received $21,459,180.97 that was intended to be used for the benefit of

20  Cachet.

21    187.   The $21,459,180.97 was not used for the benefit of Cachet.

22    188.   Defendants allegedly returned $7 million of the $21,459,180.97 but have not returned

23  the balance of $14,459,180.97 to Cachet despite Cachet's demand that they do so.

24    189.   Wherefore, Cachet requests judgment as set forth below.

25                    **SIXTH CLAIM FOR RELIEF**

26    **(Unjust Enrichment Against Kauftheil, the Kauftheil Entities and Does 1 and 4)**

27    190.   Cachet realleges and incorporates paragraphs 1 through 189 as though set forth in

28  this paragraph in full.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                          35

191.    Defendants received $21,459,180.97 that was intended to be used for the benefit of Cachet.

192.    Defendants allegedly returned $7 million of the $21,459,180.97 but have not returned the balance of $14,459,180.97 to Cachet despite Cachet's demand that they do so.

193.    It would be unjust for Defendants to retain the $21,459,180.97.

194.    Wherefore, Cachet requests judgment as set forth below.

## SEVENTH CLAIM FOR RELIEF

### (Aiding and Abetting Fraud and Conversion

### Against Dime Bank, Rubinov, Romano and Does 5 and 6)

195.    Cachet realleges and incorporates paragraphs 1 through 194 as though set forth in this paragraph in full.

196.    From at least June 2018, Dime Bank knew that the Kauftheil Entities were kiting ACH transactions.

197.    Kauftheil, the Kauftheil Entities, Rothenberg, Horowitz, iGreen and/or Does 1 through 4 perpetrated fraud and conversion against Cachet, as alleged above.

198.    Dime Bank's assisting Kauftheil in kiting millions of dollars of ACH transactions on a daily basis was commercially unreasonable and illegal.

199.    Prior to October 18, 2019, Defendants were monitoring the Kauftheil Entities' accounts on a daily basis and therefore had actual knowledge that Kauftheil and the Kauftheil Entities were illegally kiting millions of dollars in ACH transactions on a daily basis. Defendants specifically authorized and assisted Kauftheil in his illegal ACH kiting, as alleged above. As such, Defendants knew of, permitted and materially assisted Kauftheil to engage in activities that only had one purpose—to perpetrate fraud in violation of 18 U.S.C. §§ 1341, 1343 and 1344.

200.    By materially assisting Kauftheil in effectuating millions of dollars of ACH kites from accounts with insufficient funds Defendants caused Cachet to rely to its detriment upon the transfers from the Kiting Entities' accounts when Cachet transferred funds to the Fraudulently Credited Entities' accounts.

201.    Defendants materially assisted the ACH Kiting Scheme by:

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                                36

     a.   knowingly permitting the ACH transactions from accounts with insufficient funds;

     b.   monitoring the Kauftheil Entities' accounts on a daily basis to determine which kiting transactions needed to be covered by the Kauftheil Entities and approved by Dime Bank, and so advising Kauftheil;

     c.   approving payment from accounts that did not have sufficient funds;

     d.   waiving overdraft fees, thereby encouraging the kiting activity;

     e.   failing to close the Kauftheil Entities' accounts when kiting was first discovered; and

     f.   failing to report the ACH Kiting Scheme to FinCEN sooner.

202.　Furthermore, Dime Bank materially assisted the fraud by allowing the release of funds from the Fraudulently Credited Entities' accounts before the Kiting Entities' accounts were credited in an amount to cover the debits on October 18, 2019.

203.　Dime Bank materially assisted the fraud by rejecting and returning the debits to (collection from) the Kiting Entities' accounts, thereby assuring that Dime Bank would "end up at a zero position or not in a loss position," and that Cachet would end up on a "loss position," as Holly Kimball testified.

204.　Defendants materially assisted Kauftheil in kiting ACH transactions because of the financial benefit that they believed they would realize from their relationship with Kauftheil.

205.　Defendants' material assistance to the Kauftheil Entities in kiting ACH transactions was of substantial assistance to Kauftheil's, Rothenberg's, Horowitz's, iGreen's and/or Does 1 through 4's fraud and conversion in the amount of $21,459,180.97. Without Defendants specifically authorizing and assisting Kauftheil to effectuate ACH transactions from accounts that had insufficient funds the theft of Cachet's funds could not have occurred.

206.　In addition to the aforementioned, Defendants knew that the ACH transactions caused by the Fraudulent Batch Files had been initiated on October 18, 2019, and so informed Bancorp. Nevertheless, Defendants did not freeze any of the Kauftheil Entities' accounts until after Kauftheil caused the stolen funds to be transferred out of Dime Bank, thereby further assisting and participating in the fraud and conversion.

207.　Furthermore, after freezing all of the Kauftheil Entities accounts and with full

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1    knowledge that Kauftheil had stolen $21,459,180.97 from Cachet, Dime Bank remitted to Kauftheil

2    the $571,766.02 that remained in the accounts.

3        208.    As a proximate cause of Defendants' aiding and abetting Kauftheil, the Kauftheil

4    Entities, Rothenberg, Horowitz, iGreen and/or Does 1 through 4 in perpetrating the fraud and

5    conversion Cachet was the victim of a $21,459,180.97 theft. Defendants subsequently allegedly

6    repaid $7 million such that the unpaid amount may total $14,459,180.97.

7        209.    As a further proximate result of Defendants' aiding and abetting Kauftheil,

8    Rothenberg, Horowitz, iGreen and/or Does 1 and 2 in perpetrating the fraud and conversion

9    Cachet's business was destroyed. Cachet's value as a going concern was in excess of $150 million.

10        210.    As a further proximate result of Defendants' aiding and abetting Kauftheil,

11    Rothenberg, Horowitz, iGreen and/or Does 1 and 2 in perpetrating the fraud and conversion Cachet

12    was forced to seek protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192

13    proofs of claim have been filed in the Bankruptcy Case. Cachet paid approximately $8 million to

14    resolve all claims in the Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in

15    excess of $3.0 million in the Bankruptcy Case.

16        211.    As a further proximate result of Defendants' aiding and abetting Kauftheil,

17    Rothenberg, Horowitz, iGreen and/or Does 1 and 2 in perpetrating the fraud and conversion Cachet

18    has been involved in extensive litigation, in addition to the bankruptcy filing, regarding these matters

19    for which Cachet has incurred attorney's fees and costs in excess of $500,000.

20        212.    Defendants' aiding and abetting Kauftheil's, Rothenberg's, Horowitz's, iGreen's

21    and/or Does 1 and 2's fraud and conversion was committed maliciously, fraudulently and

22    oppressively, in bad faith, and in conscious disregard of Cachet's rights. Cachet is entitled to recover

23    punitive damages against Defendants in an amount sufficient to punish and make an example of

24    Defendants.

25        213.    Wherefore, Cachet requests judgment as set forth below.

26

27

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

## EIGHTH CLAIM FOR RELIEF

**(Breach of Contract Against iGreen and Horowitz and Does 7 and 8 as Alter Egos of iGreen)**

214.    Cachet realleges and incorporates paragraphs 1 through 213 as though set forth in this paragraph in full.

215.    The contract between Cachet and iGreen only permitted iGreen to effectuate payroll ACH transactions.

216.    Defendants owe a contractual duty to indemnify Cachet for all losses caused by a non-sufficient funds transaction. The iGreen Remarketer Agreements contain the following provisions:

a.    **INSTALLATION:** . . . REMARKETER shall assume total liability for Client transactions of any nature or kind, including NSF transactions; and

b.    **CUSTOMER SERVICE:** . . . REMARKETER shall assume total liability for All NSF transactions.

217.    Cachet performed all of its duties owed to iGreen under the iGreen Remarketer Agreements.

218.    iGreen breached its duty to Cachet by effectuating ACH transactions that were not related to payroll.

219.    iGreen breached the iGreen Remarketer Agreements to Cachet by failing to reimburse Cachet for the $14,459,180.97.

220.    iGreen breached the iGreen Remarketer Agreements when it used Cachet's system to effectuate non-payroll related transactions.

221.    As a foreseeable proximate result of Defendants' breach of contract Cachet was harmed in the amount of $21,459,180.97. Certain other Defendants subsequently allegedly repaid $7 million such that the unpaid amount may total $14,459,180.97.

222.    As a further foreseeable proximate result of Defendants' breach of contract Cachet's business was destroyed. Cachet's value as a going concern was in excess of $150 million.

223.    As a further foreseeable proximate result of Defendants' breach of contract Cachet was forced to seek protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                              39

proofs of claim have been filed in the Bankruptcy Case. Cachet paid approximately $8 million to resolve all claims in the Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in excess of $3.0 million in the Bankruptcy Case.

224. As a further foreseeable proximate result of Defendants' breach of contract Cachet has been involved in extensive litigation, in addition to the bankruptcy matter, regarding these matters for which Cachet has incurred attorney's fees and costs in excess of $500,000.

225. Wherefore, Cachet requests judgment as set forth below.

## NINTH CLAIM FOR RELIEF

### (Violation of 18 U.S.C. 1962(c) (RICO)

### Against All Defendants Except Bancorp, but Including Doe Defendants 1 through 10)

226. Cachet realleges and incorporates paragraphs 1 through 225 as though set forth in this paragraph in full.

227. Cachet brings this claim alleging violation of Organized Crime Control Act of 1970, 18 U.S.C. §§ 1962 *et seq.*, Racketeer Influenced and Corrupt Organizations Act. ("RICO").

228. Cachet is a "person" damaged in their "business or property" by reason of Defendants' violations of RICO, within the meaning of 18. U.S.C. § 1964(c). As such, it has standing to bring this claim.

229. Each of Defendants is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

230. RICO provides that "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1964(c).

231. Defendants violated 18 U.S.C. § 1964(c), by participating in or conducting the ACH Kiting Scheme alleged herein, hereinafter referred to as the "Dime Bank-Kauftheil ACH Kiting Enterprise," through a pattern of racketeering activity, by daily committing bank fraud, wire fraud, money laundering, and executing the ACH Kiting Scheme. The methodology of their scheme is set forth in this Complaint and is described in this claim.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

40

232.    Defendants each violated RICO, in connection with a scheme devised, conducted and/or participated in by these Defendants; each of whom is associated with an unlawful enterprise dealing in interstate commerce; and each of whom conducted or participated, directly or indirectly, in that enterprise through a pattern of racketeering activity by committing wire fraud, bank fraud, transportation of stolen money and money laundering as described herein.

233.    For the purposes of this RICO claim, the Dime Bank-Kauftheil ACH Kiting Enterprise undertook a fraudulent scheme to commit bank and wire fraud and to kite ACH transactions. As described by Ms. Kimball under oath, **"That's how Henry Kauftheil, you know, created these ACH transfer transactions between Dime Community Bank and The Bancorp and moved money back and forth every day in essence creating false balances and creating a kite via the ACH payment network,"** (emphasis added) through the use of interstate wire facilities.

234.    The Dime Bank-Kauftheil ACH Kiting Enterprise created false balances and ultimately stole approximately $21 million by moving that $21 million between accounts within Dime Bank and in and out of Dime Bank and Bancorp daily. The Kauftheil Entities' accounts at Dime Bank would be overdrawn by the $21 million daily, scheduled by Kauftheil, and then covered by credits received from Bancorp – the same funds that the Dime Bank-Kauftheil ACH Kiting Enterprise had kited. Ms. Kimball explained under oath the daily fraud and kiting: **"The ACH payroll transactions were scheduled as debits from Dime Community Bank on a daily basis. Those debits would overdraw the DD Care account and other related accounts each evening. The next day, we would receive a credit from The Bancorp bank that would cover overdrawn funds and that's how it would continue on a daily basis."** It was simply a merry go round of the same funds, all to further the Dime Bank-Kauftheil ACH Kiting Enterprise's bank and wire fraud, money laundering, the ACH Kiting Scheme and the ultimate theft of $21 million.

235.    Dime Bank and its employees, Romano and Rubinov, participated in the wire/bank fraud and ACH Kiting Scheme. Ms. Kimball explained under oath, **"They [Romano and Rubinov] would receive a daily report of the ACH debits that were drawing the account. They would ensure that the credits were received the next morning to cover the overdraft."**

236.    The daily bank/wire fraud and ACH Kiting Scheme began no later than June of 2018

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                              41

and continued until October 18, 2019, and Dime Bank, Romano and Rubinov participated, because as explained by Kimball, they were "informed that Mr. Kauftheil was an entrepreneur with many different business interests and that he oftentimes needed to transfer money. He had a startup business called Dialyze and often needed to transfer monies to cover expenses related to that startup business. He had assured the bank that these companies were going to be profitable and that by year end, he would have multi-million dollars on deposit with the bank. So, the relationship managers who were in charge of the relationship took him for his word and considered this to be a potentially profitable customer relationship."

237.    At all relevant times described above, Defendants carried out their bank/wire fraud, money laundering and ACH Kiting Scheme in connection with the conduct of an "Enterprise," as the term is described in 18 U.S.C. § 1961(4).

238.    The Dime Bank-Kauftheil ACH Kiting Enterprise consisted of the following persons or entities: Kauftheil, Rosenberg, the Kauftheil Entities, Dime Bank, iGreen, Horowitz, Romano, Rubinov, and others yet to be determined, who constitute an "association-in-fact enterprise" within the meaning of RICO and who collectively constitute the Dime Bank-Kauftheil ACH Kiting Enterprise.

239.    The purpose of the Dime Bank-Kauftheil ACH Kiting Enterprise was to constantly effectuate check and ACH transactions from accounts with insufficient funds and then cover the insufficient amounts with credits from accounts which were funded by the initial kites. This constant moving of money gave the appearance that the Kauftheil Entities had far more cash than they actually had and ultimately allowed the theft of $21 million. Based upon statements by Horowitz and the testimony of Dime Bank, Cachet is informed and believes and thereon alleges that the Dime Bank-Kauftheil ACH Kiting Enterprise was utilized to transfer funds back and forth between Dime Bank and Bancorp to create false balances in Kauftheil Entities accounts and cause the theft of the funds. Additionally, the purpose of the Dime Bank-Kauftheil ACH Kiting Enterprise was to defraud Cachet, so that Cachet would continue to provide ACH processing services to the Dime Bank-Kauftheil ACH Kiting Enterprise, without being aware that the funds were simply being kited.

240.    The Dime Bank-Kauftheil ACH Kiting Enterprise had a discernable structure.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    42

1   Kauftheil, aided by Rothenberg, controlled the flow of checks and ACH transactions. Dime Bank,

2   primarily through Rubinov and Romano, provided substantial assistance, the infrastructure and

3   information and the necessary approvals for Kauftheil to continually effectuate ACH transactions

4   from accounts with insufficient funds while fraudulently failing to disclose the true nature of the

5   transactions to the counterparties, including Cachet. The Kauftheil Entities were the vehicles

6   through which ACH transactions from accounts with insufficient funds were accomplished.

7   Horowitz and iGreen provided the technology and the vehicle to effectuate the ACH transactions.

8          241.   The Dime Bank-Kauftheil ACH Kiting Enterprise, whose activities affected

9   interstate commerce, is an association-in-fact of individuals and corporate entities, with the meaning

10   of 18 U.S.C. § 1961(4), and consists of persons associated together for the common purpose of (a)

11   conducting banking activities; (b) fraudulently conducting a bank and wire fraud scheme designed

12   to create false balances in bank accounts; and (c) executing the fraudulent ACH Kiting Scheme

13   whereby the same funds were used in merry-go-round fashion to fraudulently create false balances

14   in bank accounts to defraud Cachet and others and ultimately steal the funds.

15          242.   The Dime Bank-Kauftheil ACH Kiting Enterprise was formed no later than June of

16   2018 and existed until October 18, 2019, when Dime Bank decided to stop the daily merry-go-round

17   in a manner such that neither Dime Bank nor the Kauftheil Entities suffered any loss, stopping the

18   same at a point in time where the Dime Bank-Kauftheil ACH Kiting Enterprise had received $21

19   million of Cachet's funds from Bancorp, and while Dime Bank could still reject and return the $21

20   million in transfers from the Kiting Entities' accounts to Cachet's settlement account, which Dime

21   Bank did causing Cachet to suffer the shortfall. As Ms. Kimball testified, Dime Bank ensured that

22   it would "end up at a zero position or not in a loss position." Instead, Dime Bank pinned the loss for

23   the Dime Bank-Kauftheil ACH Kiting Enterprise's fraudulent ACH Kiting Scheme on Cachet,

24   allowing the Dime Bank-Kauftheil ACH Kiting Enterprise to seize more than $21 million from

25   Cachet.

26          243.   The Dime Bank-Kauftheil ACH Kiting Enterprise was distinct from the predicate

27   acts of wire fraud and bank fraud, transportation of stolen funds and money laundering. Kauftheil,

28   Rothenberg and the Kauftheil Entities engaged in various lawful activities. Dime Bank executed

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    43

1  certain lawful commercial transactions. Horowitz and iGreen provided lawful payroll services.

2      244.    At certain times, the Dime Bank-Kauftheil ACH Kiting Enterprise existed for the

3  legitimate purpose of providing and utilizing bank services.

4      245.    Alternatively, the Dime Bank-Kauftheil ACH Kiting Enterprise was formed solely

5  for the purpose of carrying out the ACH Kiting Scheme and pattern of racketeering activity

6  described herein.

7      246.    Through the conduct of the Dime Bank-Kauftheil ACH Kiting Enterprise,

8  Defendants undertook a scheme to defraud Cachet and others based on bank/wire fraud and ACH

9  Kiting, as well as money laundering.

10      247.    Through this scheme, the members of the Dime Bank-Kauftheil ACH Kiting

11  Enterprise agreed to utilize false and misleading representations and omissions related to the ACH

12  Kiting Scheme and false balances scheme in a deliberate effort to cause Cachet to transfer funds to

13  the Kauftheil Entities' accounts when the Dime Bank-Kauftheil ACH Kiting Enterprise was fully

14  aware that the contemporaneous funds to be transferred from the Kauftheil Entities' accounts to

15  Cachet's settlement account were the same funds credited by Bancorp as the result of a prior kite,

16  from Cachet's settlement account to the Kauftheil Entities, due to the merry-go-round created by

17  the Dime Bank-Kauftheil ACH Kiting Enterprise.

18      248.    In furtherance of the scheme, Defendants engaged in hundreds of acts of mail fraud

19  and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, each of which constitute "racketeering

20  activity," as defined in 18 U.S.C. § 1961(1).

21      249.    In furtherance of the scheme, Defendants engaged in hundreds of acts of ACH Kiting

22  and bank fraud, in violation of 18 U.S.C. § 1344, each of which constitute "racketeering activity,"

23  as defined in 18 U.S.C. § 1961(1).

24      250.    In furtherance of the scheme, Defendants engaged in hundreds of acts of

25  Transportation of Stolen Money, in violation of 18 U.S. Code § 2314, each of which constitute

26  "racketeering activity," as defined in 18 U.S.C. § 1961(1).

27      251.    The Dime Bank-Kauftheil ACH Kiting Enterprise has engaged in, and its activities

28  affect, interstate commerce, including through Defendants' use of electronic mail, telephone and

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1    44

1    digital communications across state and country lines, and the misappropriation and subsequent use

2    of Cachet's assets from Cachet's settlement account at Bancorp through their fraudulent scheme.

3    As such, the Dime Bank-Kauftheil ACH Kiting Enterprise has engaged in wire fraud in violation of

4    18 U.S. Code § 1343 and bank fraud, kiting, in violation of 18 U.S. Code § 1344.

5         252.   The Dime Bank-Kauftheil ACH Kiting Enterprise has engaged in, transfer in

6    interstate commerce of money, of the value of $5,000 or more, knowing the same to have been

7    stolen, converted or taken by fraud. As such, the Dime Bank-Kauftheil ACH Kiting Enterprise has

8    engaged in Transportation of Stolen Money in violation of 18 U.S. Code § 2314 and money

9    laundering in violation of 18 US Code § 18 U.S. Code § 1956.

10        253.   The Dime Bank-Kauftheil ACH Kiting Enterprise has engaged in, receipt, possession

11   or disposal of money, of the value of $5,000 or more, which has crossed a State of United States

12   boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen,

13   unlawfully converted or taken in violation of 18 U.S. Code § 2314.

14        254.   Defendants were associated with the Dime Bank-Kauftheil ACH Kiting Enterprise

15   and at all times relevant were aware of the Dime Bank-Kauftheil ACH Kiting Enterprise's activities

16   as they relate to the racketeering activities described herein. Each of Defendants actively conducted

17   or participated in conducting, directly or indirectly, the affairs of the Dime Bank-Kauftheil ACH

18   Kiting Enterprise through a pattern of activity unlawful under 18 U.S.C. § 1961(1)—namely,

19   multiple, repeated, and continuous kiting of ACH transactions accompanied by bank fraud, money

20   laundering and transportation of stolen funds. Each of Defendants conducted or participated in the

21   conduct of the Dime Bank-Kauftheil ACH Kiting Enterprise's activities through a pattern of

22   racketeering activity.

23        255.   Defendants' use of interstate wire facilities to perpetrate their fraudulent scheme

24   against Cachet and others involved wire and telephonic communications on and before October 18,

25   2019, as alleged above. Some specific examples of predicate acts committed by the Dime Bank-

26   Kauftheil ACH Kiting Enterprise in violation of 18 U.S.C. § 1961(1), include, but are not limited

27   to:

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                      45

a. Dime Bank, Rubinov and Romano assisting Kauftheil to continually, on a daily basis, effectuate ACH transactions from accounts with insufficient funds from at least June 2018 through October 2019;

b. Kiting ACH transactions from at least June 2018 on a consistent, if not daily basis;

c. On and before October 18, 2019, Kauftheil and/or Rothenberg agreed with Horowitz and iGreen to upload the Fraudulent Batch Files to Cachet's server for the purpose of converting $21,459,180.97 of funds in Cachet's control to their own use;

d. Rothenberg transmitted fraudulent instructions to Horowitz via e-mail on, and before October 18, 2019, regarding the $21,459,180.97 theft;

e. Transferring the funds between the Kauftheil Entities' accounts at Dime Bank on October 18, 2019, and previous days, in an attempt to obfuscate the trail of the stolen funds; and

f. Transferring the $21,459,180.97 out of Dime Bank to an account or accounts at another banking institution to avoid having the funds recovered by Cachet.

256. Cachet is informed and believes and thereon alleges that one or more members of the Dime Bank-Kauftheil ACH Kiting Enterprise utilized the stolen funds to continue their pattern of racketeering.

257. Defendants' fraudulent scheme against Cachet is part of a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

258. The acts of racketeering by Defendants alleged herein were not isolated. Rather, these acts of racketeering are related because they had the same or similar purpose, result, participants, victims, and methods of commission. Further, Defendants' acts of racketeering were continuous, starting no later than June 2018 and continuing through at least October 18, 2019.

259. Cachet is informed and believes and based thereon alleges that Defendants' wrongful conduct set forth above represents an ongoing RICO enterprise, which projects into the future with a threat of repetition and which could be repeated.

260. As a direct result of the foregoing violations of 18 U.S.C. § 1962(c), Cachet has been injured in its business and its property in multiple ways, including, but not limited to:

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

46

1          a.     the loss of $21,459,180.97 (later reduced to perhaps $14,459,180.97);

2          b.     claims asserted against Cachet in an amount to be determined;

3          c.     attorney's fees and costs in an amount to be determined; and

4          d.     the loss of the value of Cachet's business, estimated to have been in excess

5 of $150 million prior to the RICO scheme set forth herein.

6     261.    But for the predicate acts described above – fraudulent statements sent via U.S. mail

7 and interstate wire facilities, bank fraud, ACH Kiting, Money Laundering and Transportation of

8 Stolen Funds – Cachet would not have credited the Kauftheil Entities' accounts controlled by the

9 Dime Bank-Kauftheil ACH Kiting Enterprise, which ultimately led to the destruction of Cachet's

10 business.

11     262.    As a proximate result of Defendants' violations of RICO Cachet was the victim of a

12 $21,459,180.97 theft. Defendants subsequently allegedly repaid $7 million such that the unpaid

13 amount may total $14,459,180.97.

14     263.    As a further proximate result of Defendants' violations of RICO Cachet's business

15 was destroyed. Cachet's value as a going concern was in excess of $150 million.

16     264.    As a further proximate result of Defendants' violations of RICO Cachet was forced

17 to seek protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192 proofs of claim

18 have been filed in the Bankruptcy Case. Cachet paid approximately $8 million to resolve all claims

19 in the Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in excess of $3.0

20 million in the Bankruptcy Case.

21     265.    As a further proximate result of Defendants' violations of RICO Cachet has been

22 involved in extensive litigation, in addition to the bankruptcy matter, regarding these matters for

23 which Cachet has incurred attorney's fees and costs in excess of $500,000.

24     266.    The RICO violations described herein have directly and proximately caused injuries

25 and damages to Cachet, and Cachet is entitled to bring this action for three times its actual damages,

26 as well as equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1961(3).

27     267.    Wherefore, Cachet requests judgment as set forth below.

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1               47

## TENTH CLAIM FOR RELIEF

### (Violation of 18 U.S.C. § 1962(d) (RICO Conspiracy) Against All Defendants Except

### Bancorp, but Including All Doe Defendants 1 through 10)

268. Cachet realleges and incorporates paragraphs 1 through 267 as though set forth in this paragraph in full.

269. In violation of 18 U.S.C. § 1962(d), Defendants conspired to violate 18 U.S.C. § 1962(c). The conspiracy commenced at least as early as June 2018.

270. The object of the conspiracy was to constantly effectuate check and ACH transactions from accounts with insufficient funds and then cover the insufficient amounts with credits from other accounts that likewise had insufficient funds or with funds that were credited as a result of fraudulent batch files uploaded prior thereto. This constant moving of money fraudulently gave the appearance that the Kauftheil Entities had far more cash than they actually had and allowed the Kauftheil-Dime Bank ACH Kiting Enterprise to steal the funds. Based upon statements by Horowitz and the testimony of Dime Bank, Cachet is informed and believes and thereon alleges that the Dime Bank-Kauftheil ACH Kiting Enterprise was utilized to transfer funds back and forth between Dime Bank and Bancorp to create false balances in the Kauftheil Entities accounts and steal over $21 million.

271. Defendants each knowingly, willfully, and unlawfully agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs and activities of the Dime Bank-Kauftheil ACH Kiting Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§ 1343, 1344, 2314 and 1986 in violation of 18 U.S.C. § 1962(c).

272. Each of Defendants, whether individually or through the Dime Bank-Kauftheil ACH Kiting Enterprise, objectively manifested, by words or acts, their agreement to the commission of the substantive RICO violations by at least one member of the conspiracy, and each Defendant committed at least one overt act in furtherance of the conspiracy.

273. In so conspiring with each other to commit the RICO violations alleged herein, Defendants, and each of them, are jointly and severally liable for the wrongful actions of each co-conspirator.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

48

274. As a proximate result of Defendants' conspiracy to violate RICO Cachet was the victim of a $21,459,180.97 theft. Defendants subsequently allegedly repaid $7 million such that the unpaid amount may total $14,459,180.97.

275. As a further proximate result of Defendants' conspiracy to violate RICO Cachet's business was destroyed. Cachet's value as a going concern was in excess of $150 million.

276. As a further proximate result of Defendants' conspiracy to violate RICO Cachet was forced to seek protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192 proofs of claim have been filed in the Bankruptcy Case. Cachet paid approximately $8 million to resolve all claims in the Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in excess of $3.0 million in the Bankruptcy Case.

277. As a further proximate result of Defendants' conspiracy to violate RICO Cachet has been involved in extensive litigation, in addition to the bankruptcy matters, regarding these matters for which Cachet has incurred attorney's fees and costs in excess of $500,000.

278. Defendants' conspiracy to violate RICO described herein has directly and proximately caused injuries and damages to Cachet, and Cachet is entitled to bring this action for three times its actual damages, as well as equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1961(3).

279. Wherefore, Cachet requests judgment as set forth below.

## ELEVENTH CLAIM FOR RELIEF

### (Breach of Contract Against Bancorp)

280. Cachet realleges and incorporates paragraphs 1 through 279 as though set forth in this paragraph in full.

281. On or about August 4, 2010, Cachet and Bancorp entered into the Agreement.

282. Cachet did all, or substantially all, of the significant things that the Agreement required.

283. Bancorp breached the Agreement by improperly and unilaterally terminating the Agreement without cause or notice, thus violating its express terms.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

284. In particular, Section 5.2 of the Agreement contains conditions that must occur before Bancorp can unilaterally terminate the Agreement. However, Section 5.2(i), (ii) and (iii) are inapplicable because Bancorp failed to provide the requisite thirty (30) days' notice and Cachet was not in bankruptcy at the time of the termination.

285. Pursuant to the express terms of the Agreement, Bancorp's only other potential basis for Bancorp to unilaterally terminate the Agreement is also found in Section 5.2, which provides: "Notwithstanding anything to the contrary in this Agreement, Bancorp may at its sole discretion terminate this Agreement immediately and without notice in order to ensure compliance with law and/or to assure its regulators of the safety and soundness of its operations relative to [Cachet]." Termination of the Agreement was not required for compliance with applicable law and was not necessary to assure Bancorp's regulators of the safety and soundness of Bancorp's operations relative to Cachet.

286. Bancorp's unilateral termination of the Agreement without notice was improper, did not comport with the Agreement's terms and constitutes a breach of the Agreement, was not a commercially reasonable exercise of Bancorp's alleged discretion and was done in bad faith.

287. As a proximate result of Bancorp's breach of contract Cachet's business was destroyed. Cachet's value as a going concern was in excess of $150 million.

288. As a further proximate result of Bancorp's breach of contract Cachet was forced to seek protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192 proofs of claim have been filed in the Bankruptcy Case. Cachet paid approximately $8 million to resolve all claims in the Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in excess of $3.0 million in the Bankruptcy Case.

289. As a further proximate result of Bancorp's breach of contract Cachet has been involved in extensive litigation, in addition to the bankruptcy matter, regarding these matters for which Cachet has incurred attorney's fees and costs in excess of $500,000.

290. Bancorp's breach of the Agreement was a substantial factor in causing Cachet's harm.

291. Wherefore, Cachet requests judgment as set forth below.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    50

**TWELFTH CLAIM FOR RELIEF**

**(Negligence Against Bancorp)**

292.    Cachet realleges and incorporates paragraphs 1 through 291 as though set forth in this paragraph in full.

293.    Cachet was a depositor at Bancorp and Bancorp was the ODFI in connection with Cachet's ACH processing operations. As such, Bancorp owed Cachet a duty of reasonable care.

294.    Bancorp breached its duty of care to Cachet by improperly freezing and/or sweeping Cachet's accounts without notice, without statutory or contractual authority, and without giving Cachet an opportunity to find a sponsor bank to replace Bancorp.

295.    Bancorp further breached its duty of care owed to Cachet by negligently failing to prevent the loss of Cachet's funds caused by Kauftheil's actions.

296.    Bancorp further breached its duty of care owed to Cachet by negligently failing to prevent the loss of Cachet's funds caused by Mann's actions.

297.    As the ODFI Bancorp had funding details regarding each individual payroll payment, including the employee's name, bank account number, routing number, trace number and the amount of the payment. As Cachet's ODFI Bancorp had experience regarding the amount of individual payroll payments and it knew the range of employee salaries. Bancorp also received the client list from Cachet monthly to verify the entities per Know Your Client (KYC) policy. Further, Bancorp had information that the transfers to the Kauftheil Entities' accounts were to an entities' accounts and not to individuals. Bancorp had the ability and owed a duty to Cachet to detect and prevent fraudulent transactions. Bancorp breached that duty by failing to detect and prevent the fraudulent transactions by Kauftheil and Mann. As a direct and foreseeable result of Bancorp's negligent and improper conduct, Cachet suffered damages.

298.    Upon information and belief, Bancorp failed to have any systems in place to detect and prevent fraudulent transactions concerning Cachet's business.

299.    As a direct and foreseeable result of Bancorp's negligent and improper conduct, Cachet was the victim of the Fraudulent Batch Files resulting in a loss in an amount to be proven at trial.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                          51

300. As a proximate result of Bancorp's negligence Cachet was the victim of a $25,658,623.65 theft by Mann.

301. As a proximate result of Bancorp's negligence Cachet was the victim of a $21,459,180.97 theft by Kauftheil *et al.* who subsequently allegedly repaid $7 million such that the unpaid amount may total $14,459,180.97.

302. As a further proximate result of Bancorp's negligence Cachet's business was destroyed. Cachet's value as a going concern was in excess of $150 million.

303. As a further proximate result of Bancorp's negligence Cachet was forced to seek protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192 proofs of claim have been filed in the Bankruptcy Case. Cachet paid approximately $8 million to resolve all claims in the Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in excess of $3.0 million in the Bankruptcy Case.

304. As a further proximate result of Bancorp's negligence Cachet has been involved in extensive litigation, in addition to the bankruptcy matter, regarding these matters for which Cachet has incurred attorney's fees and costs in excess of $500,000.

305. Bancorp's negligence was a substantial factor in causing Cachet's harm.

306. Wherefore, Cachet requests judgment as set forth below.

## THIRTEENTH CLAIM FOR RELIEF

**(Intentional Interference with Contract Against Bancorp and Does 9 and 10)**

307. Cachet realleges and incorporates paragraphs 1 through 306 as though set forth in this paragraph in full.

308. Defendants knew that Cachet had contracts with hundreds of remarketers and was processing ACH transactions with or for the benefit of a substantial number of people/entities by and through Remarketer Agreements.

309. Defendants knew that these Remarketer Agreements and client-relationships depended on Cachet's ability to process ACH transactions through Bancorp and specifically through Cachet's settlement account at Bancorp.

310. When Bancorp terminated the Agreement without notice, froze and swept Cachet's

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    52

1  accounts and interplead the funds in the Interpleader Action, Defendants intentionally interfered
2  with Cachet's contractual relationships with every remarketer and caused Cachet to breach each and
3  every Remarketer Agreement such that Cachet lost all its Remarketer Agreements and the ability to
4  conduct any business.

5      311.    The Remarketer Agreements were valid contracts between Cachet and numerous
6  third parties.

7      312.    Defendants were not parties to any of the Remarketer Agreements.

8      313.    Defendants improperly terminated the Agreement and froze/swept Cachet's accounts
9  at Bancorp—and in doing so, knew that Cachet would be unable to perform under the Remarketer
10 Agreements.

11     314.    Defendants knew Cachet's breach of the Remarketer Agreements would be a
12 necessary consequence of Bancorp's improper termination of the Agreement and freezing/sweeping
13 Cachet's accounts at Bancorp.

14     315.    In fact, Cachet breached the Remarketer Agreements by, *inter alia*, failing to
15 effectuate ACH transactions pursuant to the batch files uploaded to Cachet's server by remarketers.

16     316.    As a further proximate result of Bancorp's intentional interference with contract
17 Cachet's business was destroyed. Cachet's value as a going concern was in excess of $150 million.

18     317.    As a further proximate result of Bancorp's intentional interference with contract
19 Cachet was forced to seek protection pursuant to Chapter 11 of the United States Bankruptcy Code.
20 192 proofs of claim have been filed in the Bankruptcy Case. Cachet paid approximately $8 million
21 to resolve all claims in the Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs
22 in excess of $3.0 million in the Bankruptcy Case.

23     318.    As a further proximate result of Bancorp's intentional interference with contract
24 Cachet has been involved in extensive litigation, in addition to the bankruptcy matter, regarding
25 these matters for which Cachet has incurred attorney's fees and costs in excess of $500,000.

26     319.    Defendants' improper actions were a substantial factor in causing Cachet's breach of
27 the Remarketer Agreements and in causing Cachet's damages.

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    53

320.    Defendants' intentional interference with the Remarketer Agreements was committed maliciously, fraudulently and oppressively, in bad faith, and in conscious disregard of Cachet's rights. Thus, Cachet is entitled to recover punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants.

321.    Defendants' conduct constituting malice, oppression, or fraud was committed or authorized by one or more officers, directors, or managing agents of Bancorp, who acted on behalf of Bancorp, or they knew of the conduct and either adopted or approved that conduct after it occurred.

322.    Wherefore, Cachet requests judgment as set forth below.

**FOURTEENTH CLAIM FOR RELIEF**

**(Conversion Against Bancorp and Does 9 and 10)**

323.    Cachet realleges and incorporates paragraphs 1 through 322 as though set forth in this paragraph in full.

324.    Cachet had a right to possess any and all funds in its accounts at Bancorp.

325.    By taking the funds from Cachet's accounts and interpleading them in the Interpleader Action, Defendants substantially interfered with Cachet's right to possess or access its funds.

326.    By disbursing funds after Bancorp's unilateral freezing of Cachet's accounts, without Cachet's input and as Bancorp unilaterally decided was appropriate, Defendants substantially interfered with Cachet's right to the possession of or to access its funds.

327.    Defendants' interference with Cachet's right to possess the funds in its accounts at Bancorp was done knowingly and intentionally by exercising dominion over the funds, disbursing the funds, interpleading the funds, preventing Cachet's access to the funds and refusing to return the funds to Cachet.

328.    Defendants' actions in freezing and/or sweeping Cachet's accounts at Bancorp was wrongful, as the shortfall in Cachet's account was the result of actions by third parties stealing Cachet's funds as part of the unauthorized ACH Kiting Scheme described herein. Further, Defendants' actions were not authorized by the Agreement.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

54

1    329.    Defendants' actions were unilateral and unauthorized.

2    330.    In addition to the foregoing, Cachet is informed and believes and thereon alleges that

3    on or about September 26, 2019, Bancorp debited $415,973.00 from Cachet's account for the

4    purpose of crediting the account of Millennium Funding at Key Bank. However, Cachet is informed

5    and believes that Bancorp retained these funds and converted them to its own use.

6    331.    As a further proximate result of Defendants' conversion Cachet's business was

7    destroyed. Cachet's value as a going concern was in excess of $150 million.

8    332.    As a further proximate result of Defendants' conversion Cachet was forced to seek

9    protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192 proofs of claim have

10    been filed in the Bankruptcy Case. Cachet paid approximately $8 million to resolve all claims in the

11    Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in excess of $3.0 million in

12    the Bankruptcy Case.

13    333.    As a further proximate result of Defendants' conversion Cachet has been involved in

14    extensive litigation, in addition to the bankruptcy matters, regarding these matters for which Cachet

15    has incurred attorney's fees and costs in excess of $500,000.

16    334.    Defendants' improper actions were a substantial factor in causing Cachet's damages.

17    335.    Defendants' conversion of Cachet's funds was committed maliciously, fraudulently

18    and oppressively, in bad faith, and in conscious disregard of Cachet's rights. Thus, Cachet is entitled

19    to recover punitive damages against Defendants in an amount sufficient to punish and make an

20    example of Defendants.

21    336.    The conduct constituting malice, oppression, or fraud was committed or authorized

22    by one or more officers, directors, or managing agents of Bancorp, who acted on behalf of Bancorp,

23    or they knew of the conduct and either adopted or approved that conduct after it occurred.

24    337.    Wherefore, Cachet requests judgment as set forth below.

25    **FIFTEENTH CLAIM FOR RELIEF**

26    **(Express Indemnity Against Bancorp)**

27    338.    Cachet realleges and incorporates paragraphs 1 through 337 as though set forth in

28    this paragraph in full.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                55

339. The Agreement contains express indemnity provisions (described and/or quoted above) in Cachet's favor that require Bancorp to indemnify Cachet against any and all loss, liability, cost or expenses, including attorneys' fees, court costs and expenses, resulting from, related to, or connected with, among other things, Cachet's claim that Bancorp is responsible for any act or omission or any alleged act or omission of Cachet or Bancorp, Bancorp's breach of any of its representations, warranties or agreements, Bancorp's acts or omissions that violate any NACHA ACH Rule, Federal Reserve requirement or applicable law, and/or Bancorp's errors or mistakes.

340. The Agreement contains an express indemnity provision, "Bancorp shall (a) indemnify and hold Processor, its employees, officers, directors, agents and representatives harmless of and from any and all losses suffered or incurred by Processor in connection with any Client or completed, failed or misdirected Client Transaction caused by Processor."

341. The Agreement contains and express indemnity provision, "In addition other remedies available to Processor pursuant to this Agreement or available under law or in equity, Bancorp shall defend and indemnify the Processor from and against, and hold it harmless from all allegations, suits, claims, actions, legal proceedings, counterclaims, and demand of any kind or nature and all reasonable costs incurred by Processor in connection therewith (individually a 'Claim' and collectively 'Claims') which Claims arise from or result by reasons of . . . . (iv) any Claim asserted against or suffered by Processor arising out of Bancorp's misconduct or violation of any obligation herein."

342. Cachet did all, or substantially all, of the significant things that the Agreement required.

343. At all times material hereto, Cachet was not negligent.

344. Bancorp has breached its express agreement to indemnify Cachet by failing and refusing to indemnify Cachet for Cachet's losses suffered as a result of Bancorp wrongfully shutting down Cachet's accounts and seizing Cachet's funds which in turn forced Cachet to stop processing ACH transactions for employer payrolls and lose its business, thousands of Remarketer Agreements, goodwill, revenues and profits.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

56

345.    Bancorp has breached its express agreement to indemnify Cachet by failing and refusing to indemnify Cachet from Cachet's "losses suffered or incurred by [Cachet] in connection with any [Remarketer] or completed, failed or misdirected [Remarketer] Transaction caused by [Cachet]" in connection with ACH transactions involving MyPayrollHR and iGreen.

346.    Bancorp's breaches are a substantial factor in causing Cachet's losses.

347.    As a proximate result of Bancorp's breach of its express agreement to indemnify, Cachet has been damaged in the amount of $25,658,623.65 resulting from the theft by Mann.

348.    As a proximate result of Bancorp's breach of its express agreement to indemnify, Cachet has been damaged in the amount of $21,459,180.97 resulting from the theft by Kauftheil *et al.* Defendants subsequently allegedly repaid $7 million such that the unpaid amount may total $14,459,180.97.

349.    As a further proximate result of Bancorp's breach of its express agreement to indemnify Cachet's business was destroyed. Cachet's value as a going concern was in excess of $150 million.

350.    As a further proximate result of Bancorp's breach of its express agreement to indemnify Cachet was forced to seek protection pursuant to Chapter 11 of the United States Bankruptcy Code. 192 proofs of claim have been filed in the Bankruptcy Case. Cachet paid approximately $8 million to resolve all claims in the Bankruptcy Case. In addition, Cachet incurred attorney's fees and costs in excess of $3.0 million in the Bankruptcy Case.

351.    As a further proximate result of Bancorp's breach of its express agreement to indemnify Cachet has been involved in extensive litigation, in addition to the bankruptcy matter, regarding these matters for which Cachet has incurred attorney's fees and costs in excess of $500,000.

352.    Wherefore, Cachet requests judgment as set forth below.

### SIXTEENTH CLAIM FOR RELIEF

#### (Accounting Against Bancorp)

353.    Cachet realleges and incorporates paragraphs 1 through 352 as though set forth in this paragraph in full.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                      57

354.    As a former client of Bancorp and a former Bancorp deposit account holder, Cachet is entitled to an accounting of its Bancorp bank accounts, including, but not limited to, its funds, transactions, debits and credits, transfers, payments, payees, *etc.* from at least 90 days prior to the time Bancorp froze and shut down Cachet's Bancorp bank accounts to the present.

355.    An accounting is necessary to determine the amount of money Bancorp paid out of and received into Cachet's accounts after Bancorp eliminated Cachet's access to its bank accounts and to determine, *inter alia*, whether Bancorp owes Cachet any money as a result of such transactions, whether Bancorp's disbursement of funds from Cachet's accounts was appropriate and whether Bancorp employed improper self-help by converting funds from Cachet's accounts to its own use.

## SEVENTEENTH CLAIM FOR RELIEF

### (Cal. Penal Code § 496(c) Against Kauftheil, Rothenberg, The Kauftheil Entities and Does 1 through 4)

356.    Cachet realleges and incorporates paragraphs 1 through 355 as though set forth in this paragraph in full.

357.    Cachet is informed and believes and thereon alleges that Defendants engaged in theft of Cachet's money in violation of Cal. Penal Code section 496(a), which states, "Every person who buys or receives property that has been stolen or that has obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen of obtained, shall be punished by imprisonment in a county jail not exceeding one year."

358.    Each Defendant has been advised that they have received Cachet's stolen property or property that has been obtained in a manner constituting theft nevertheless each Defendant continues to withhold the stolen funds from Cachet in violation of California Penal Code section 496(a).

359.    Pursuant to Cal. Penal Code section 496(c) Cachet is entitled to recover three times the amount of its actual damages, costs of suit, and reasonable attorneys' fees.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    58

1   360.   In violation of Cal. Penal Code section 496(a) Defendants stole $21,459,180.97 from

2   Cachet. Defendants subsequently allegedly repaid $7 million such that the unpaid amount may total

3   $14,459,180.97.

4   361.   As a further proximate result of Defendants' violation of Cal. Penal Code section

5   496(a) Cachet's business was destroyed. Cachet's value as a going concern was in excess of $150

6   million.

7   362.   As a further proximate result of Defendants' violation of Cal. Penal Code section

8   496(a) Cachet was forced to seek protection pursuant to Chapter 11 of the United States Bankruptcy

9   Code. 192 proofs of claim have been filed in the Bankruptcy Case. Cachet paid approximately $8

10   million to resolve all claims in the Bankruptcy Case. In addition, Cachet incurred attorney's fees

11   and costs in excess of $3.0 million in the Bankruptcy Case.

12   363.   As a further proximate result of Defendants' violation of Cal. Penal Code section

13   496(a) Cachet has been involved in extensive litigation, in addition to the bankruptcy matter,

14   regarding these matters for which Cachet has incurred attorney's fees and costs in excess of

15   $500,000.

16   364.   Wherefore, Cachet requests judgment as set forth below.

17   **EIGHTEENTH CLAIM FOR RELIEF**

18   **(Objection to Bancorp's Proof of Claim Against Bancorp)**

19   365.   Cachet realleges and incorporates paragraphs 1 through 364 as though set forth in

20   this paragraph in full.

21   366.   Cachet is informed and believes, and thereon alleges, that Claim 170 and the original

22   Claim 174 are for the exact same amount and are identical.

23   367.   Cachet is informed and believes, and thereon alleges, that Claim 170 is a duplicate

24   of the original Claim 174.

25   368.   Cachet is informed and believes, and thereon alleges, that if Claim 170 is not

26   disallowed, Bancorp would receive a double recovery to which it is not entitled.

27   369.   Claim 174 asserts the basis for the claim as attorneys' fees incurred both pre-petition

28   and post-petition which Cachet owes to Bancorp pursuant to paragraph 8.4 of the Agreement.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                59

370. The last sentence of paragraph 8.4 of the Agreement states that Cachet "shall not be obligated to indemnify, hold harmless or reimburse Bancorp for any such losses, claims, damages, expenses or liabilities to the extent that the same are the direct result of the negligence or willful misconduct of Bancorp."

371. Any losses sustained by Bancorp are the direct result of its own negligence or willful misconduct. Cachet is informed and believes, and thereon alleges, that Cachet does not owe any indemnity to Bancorp because any damages incurred by Bancorp were the result of the improper actions of Bancorp and not Cachet.

372. Cachet is informed and believes, and thereon alleges, that Bancorp does not have any right to payment from Cachet that would entitle Bancorp to a "claim" as defined in 11 U.S.C. §101(5).

373. Cachet is informed and believes, and thereon alleges, that the Bancorp Claims are unenforceable against Cachet and/or any property of Cachet under any agreement or applicable law.

374. Cachet is informed and believes, and thereon alleges, that post-petition attorneys' fees are not allowed on unsecured proofs of claims.

375. Cachet alleges that Bancorp has not met its ultimate burden of persuasion to establish its entitlement to the Bancorp Claims.

376. To the extent the Bancorp Claims are allowed, Cachet alleges that Bancorp owes a debt to Cachet as alleged herein and that such debt and the Bancorp Claims are mutual pre-petition obligations that can and should be offset pursuant to 11 U.S.C. Section 553.

377. Wherefore, Cachet requests judgment as set forth below.

## NINETEENTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Constructive Fraudulent Transfers Against H3 Energy, H3 Advisory, Dialyze, H3 Capital, KG Kosher, ACG, Kauftheil, DD Care and DOES 9 and 10 [11 U.S.C. §§ 544, 548, 550, 551; Cal. Civ. Code §§ 3439.04, 3439.05, 3439.07, 3439.08, 3439.09])**

378. Cachet realleges and incorporates paragraphs 1 through 377 as though set forth in this paragraph in full.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                    60

379.   Cachet made transfers on October 18, 2019, in the amounts and to the persons and/or entities stated immediately below in the total amount of $21,459,180.97:

    a.   H3 Energy in the amount of $3,675,909.19;

    b.   H3 Energy in the amount of $3,192,062.04;

    c.   H3 Energy in the amount of $2,891,191.52;

    d.   H3 Advisory in the amount of $4,159,140.43;

    e.   H3 Advisory in the amount of $3,386,685.71; and

    f.   H3 Advisory in the amount of $4,154,192.08.

380.   Cachet is informed and believes and thereon alleges that subsequently on October 18, 2019, the above-described transferees and/or Kauftheil transferred the funds above described in the amounts and to the persons and/or entities stated immediately below in the total amount of $21,459,180.97:

    a.   Dialyze in the amount of $3,386,685.71;

    b.   H3 Capital in the amount of $2,891,191.52;

    c.   H3 Capital in the amount of $4,154,192.08;

    d.   KG Kosher in the amount of $3,675,909.19;

    e.   ACG in the amount of $3,192,062.04; and

    f.   ACG in the amount of $4,159,140.43.

381.   Cachet is informed and believes and thereon alleges that subsequently on October 18, 2019, the above-described transferees and/or Kauftheil transferred the respective funds they received and as described above to DD Care, Kauftheil, and/or DOES 9 and 10 in the total amount of $21,459,180.97. A similar pattern of transfers had been occurring between the Defendants prior to and up to October 18, 2019.

382.   All and each and every one of the transfers described above were made:

    a.   For less than reasonably equivalent value, or any value, in exchange for the transfers, and

    b.   At a time when Cachet was insolvent and/or was rendered insolvent by virtue of the constructive fraudulent transfers.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                           61

1     383.    Based on the foregoing, Cachet may avoid the constructive fraudulent transfers and

2  recover the value of the transfers and/or the property transferred, with an automatic preservation of

3  the constructive fraudulent transfers for the benefit of the Estate pursuant to 11 U.S.C. §§ 544, 548,

4  550 and 551, and California Civil Code §§ 3439.04, 3439.05, 3439.07 and 3439.09.

5     384.    Wherefore, Cachet requests judgment as set forth below.

6                                          **PRAYER**

7     **WHEREFORE**, Cachet seeks judgment as follows:

8                          **ON THE FIRST CLAIM FOR RELIEF**

9     1.    For general, consequential and special damages in an amount to be proven at trial but

10  in no event less than $150,000,000.00.

11     2.    For punitive damages in an amount sufficient to punish and make an example of

12  Defendants.

13                         **ON THE SECOND CLAIM FOR RELIEF**

14     1.    For general, consequential and special damages in an amount to be proven at trial but

15  in no event less than $150,000,000.00.

16     2.    For punitive damages in an amount sufficient to punish and make an example of

17  Defendants.

18                          **ON THE THIRD CLAIM FOR RELIEF**

19     1.    For general, consequential and special damages in an amount to be proven at trial but

20  in no event less than $150,000,000.00.

21     2.    For punitive damages in an amount sufficient to punish and make an example of

22  Defendants.

23                         **ON THE FOURTH CLAIM FOR RELIEF**

24     1.    For general, consequential and special damages in an amount to be proven at trial but

25  in no event less than $150,000,000.00.

26     2.    For punitive damages in an amount sufficient to punish and make an example of

27  Defendants.

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    62

**ON THE FIFTH CLAIM FOR RELIEF**

1.    For judgment in the amount of $21,459,180.97 less any amounts repaid.

**ON THE SIXTH CLAIM FOR RELIEF**

1.    For judgment in the amount of $21,459,180.97 less any amounts repaid.

**ON THE SEVENTH CLAIM FOR RELIEF**

1.    For general, consequential and special damages in an amount to be proven at trial but in no event less than $150,000,000.00.

2.    For punitive damages in an amount sufficient to punish and make an example of Defendants.

**ON THE EIGHTH CLAIM FOR RELIEF**

1.    For general, consequential and special damages in an amount to be proven at trial but in no event less than $150,000,000.00.

**ON THE NINTH AND TENTH CLAIMS FOR RELIEF**

1.    For treble damages according to proof and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**ON THE ELEVENTH CLAIM FOR RELIEF**

1.    For damages according to proof.

**ON THE TWELFTH CLAIM FOR RELIEF**

1.    For general, consequential and special damages in an amount to be proven at trial but in no event less than $150,000,000.00.

**ON THE THIRTEENTH CLAIM FOR RELIEF**

1.    For general, consequential and special damages in an amount to be proven at trial but in no event less than $150,000,000.00.

2.    For punitive damages in an amount sufficient to punish and make an example of Defendants.

**ON THE FOURTEENTH CLAIM FOR RELIEF**

1.    For general, consequential and special damages in an amount to be proven at trial but in no event less than $150,000,000.00.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                                63

1       2.     For punitive damages in an amount sufficient to punish and make an example of

2  Defendants.

### ON THE FIFTEENTH CLAIM FOR RELIEF

4       1.     For damages according to proof.

### ON THE SIXTEENTH CLAIM FOR RELIEF

6       1.     For an accounting of Cachet's Bancorp bank accounts, including, but not limited to,

7  its funds, transactions, debits and credits, transfers, payments, payees, *etc.* from at least 90 days

8  prior to the time Bancorp froze and shut down Cachet's Bancorp bank accounts to the present.

### ON THE SEVENTEENTH CLAIM FOR RELIEF

10      1.     For three times the amount of its actual damages and costs of suit and reasonable

11  attorneys' fees pursuant to Cal. Penal Code section 496(c), but in no event less than $500,000,000.

### ON THE EIGHTEENTH CLAIM FOR RELIEF

13      1.     For disallowance of the Bancorp Claims in their entirety such that Bancorp obtains

14  no distribution or recovery in the Bankruptcy Case. In the alternative, to the extent the Bancorp

15  Claims are allowed to any extent, the Bancorp Claims should be setoff against Cachet's claims

16  asserted herein to the extent Bancorp owes a mutual debt to Cachet that arose pre-petition.

### ON THE NINETEENTH CLAIM FOR RELIEF

18      1.     For avoidance of the transfers under 11 U.S.C. §§ 544, 548, and/or Cal. Civ. Code

19  §§ 3439.04, 3439.05, 3439.07, 3439.09.

20      2.     For an order that Cachet shall recover from Defendants or any immediate or mediate

21  transferee of Defendants the fraudulent transfers and any other avoided transfers discovered after

22  the date of this complaint under 11 U.S.C. §§ 550 and 551.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1

## ON ALL CLAIMS FOR RELIEF

1.      For costs of suit, including attorney's fees that may be awarded by statute, case law and/or agreement of the parties.

2.      For such other and further relief as the Court deems just and proper.

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**

DATED:  May 31, 2022          By:      _/s/ Shane M. Biornstad_

J. Ronald Ignatuk
Franklin J. Contreras, Jr.
Shane M. Biornstad
Attorneys for Cachet Financial Services

## DEMAND FOR JURY TRIAL

Cachet hereby demands trial by jury.

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**

DATED:  May 31, 2022          By:      _/s/ Shane M. Biornstad_

J. Ronald Ignatuk
Franklin J. Contreras, Jr.
Shane M. Biornstad
Attorneys for Cachet Financial Services

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6153-500\1568916.1                                    65

EXHIBIT "1"

Case 2:22-cv-08671-FLA  Document 1-3  Filed 11/30/22  Page 68 of 201  Page ID #:101
Case 2:20-bk-10654-VZ Doc 170  Filed 09/10/20  Entered 09/10/22 14:16:44  Page 4 of 3
Main Document    Page 67 of 199

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor 1   Cachet Financial Services, a California corporation

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:  **20-10654**

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

9/10/2020

**Kathleen J. Campbell, Clerk**

Official Form 410
# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
| --- | --- |

**1. Who is the current creditor?**

The Bancorp Bank

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

*Where should notices to the creditor be sent?*

The Bancorp Bank
Name

c/o Beth Moskow–Schnoll Esq
Ballard Spahr LLP
919 North Market Street 11th Fl
Wilmington, DE 19801–3034

Contact phone      302–252–4428

Contact email
summersm@ballardsphr.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

*Where should payments to the creditor be sent? (if different)*

The Bancorp Bank
Name

Attn: Erika R. Caesar
409 Silverside Road, Suite 105

Wilmington, DE 19802

Contact phone      302–385–5023

Contact email
ecaesar@thebancorp.com

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                    Proof of Claim                    page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | | |
|---|---|---|
| **7. How much is the claim?** | $ 2583023.24 | **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>See attached Schedule |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____<br>**Amount of the claim that is secured:** $ _____<br>**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) _____ %<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410         Proof of Claim         page 2

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 70 of 201   Page ID #:103
Case 2:20-bk-08547-VZ   Claim 170   Filed 09/21/20   Desc Main Document   Page 69 of 199
Main Document   Page 69 of 199

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date      9/10/2020
                      MM / DD / YYYY

/s/  Brian D. Huben

Signature

Print the name of the person who is completing and signing this claim:

| Name | Brian D. Huben |
|---|---|
| | First name     Middle name     Last name |
| Title | Attorney |
| Company | Ballard Spahr LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 2029 Century Park East, Suite 1400 |
| | Number   Street |
| | Los Angeles, CA 90067 |
| | City   State   ZIP Code |
| Contact phone | 424-204-4353     Email   hubenb@ballardspahr.com |

Case 2:22-cv-08671-FLA  Document 1-3  Filed 11/30/22  Page 71 of 201  Page ID #:104
Case 2:20-bk-10654-VZ  Claim 170  Filed 05/01/20  Entered 05/01/20 14:36  Page 5 of 28
Main Document      Page 70 of 199

<u>Schedule to Proof of Claim</u>

*In re Cachet Financial Services*
**Case No. 2:20-bk-10654-VZ (Chapter 11)**
**United States Bankruptcy Court for the Central District of California**

**Creditor: The Bancorp Bank**

**I.      Basis for the Claim**

        On January 21, 2020 (the "Petition Date"), Cachet Financial Services f/k/a Cachet Banq, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.  Prior to that time, Cachet offered direct deposit services to its customers – primarily payroll companies (which the Debtor refers to as "Remarketers") – using the Automated Clearing House ("ACH") network.  The Bancorp Bank ("Bancorp") processed ACH files for the Debtor as the Debtor's Originating Depository Financial Institution ("ODFI") pursuant to a Payroll Processing ODFI Agreement (the "Agreement") the parties originally entered into on August 4, 2010.  The Agreement is a confidential document that will be provided to the Debtor upon request. In Section 8.4 of the Agreement, the Debtor agreed to:

> (a) indemnify and hold Bancorp, its employees, officers, directors, agents and representatives harmless of and from any and all losses suffered or incurred by Bancorp in connection with any Client or completed failed or misdirected Client Transaction caused by Processor; (b) use or alleged misuse by Processor of the ACH system and/or fines assessed against Bancorp or Processor in connection therewith; (c) losses resulting out of the breach or alleged breach by a Client under its agreement with Processor, including the failure of a Client to pay any reversed or failed Transaction(s) that are returned to Client by Processor or that, pursuant to applicable NACHA ACH Rules or Federal Reserve requirements, should have been returned by Processor to a Client; (d) breach by Processor of any of its representations, warranties or agreement under this Agreement or arising from an act or omission by Processor that violates an NACHA Rule, Federal Reserve requirement or applicable law; (e) or arising out of or relating to any error mistake by Processor or any third party involved in processing Client Transactions.

Exhibit A, §8.4 (the "Indemnification Provision").

        On October 21, 2019, Debtor informed Bancorp that it had paid out monies on behalf of its customer, DD Care Management, without receiving corresponding funding.  This incident (the "DD Care Incident") occurred after a similar incident in August 2019 involving another of the Debtor's customers, MyPayrollHR ("MPHR") (the "MPHR Incident") (collectively, with the DD Care Incident, the "Fraud Incidents").  Moreover, the DD Care Incident caused a deficit in the Debtor's payroll processing accounts.  The Debtor informed Bancorp it would not be able to make up the deficit caused by the DD Care Incident.

        As a result of the DD Care Incident, Bancorp has incurred significant legal fees and expenses, has had damages claims asserted against it, and additional damages claims could be

asserted against Bancorp in the future. Bancorp had to engage legal counsel to, among other activities, advise Bancorp on handling the return of the funds remaining in the Debtor's accounts held at Bancorp to the appropriate parties once Bancorp terminated its Agreement with Debtor. On November 5, 2019, Bancorp filed an interpleader action pursuant to 28 U.S.C. § 1335 in the U.S. District Court for the District of Delaware, docketed as *The Bancorp Bank v. Advance Payroll Solutions, Inc., et al.*, C.A. No. 19-2088-MN (the "Interpleader Action"). Through the Interpleader Action, Bancorp requested the Delaware Court to equitably distribute funds held in accounts at Bancorp by the Debtor (the "Stake") for the benefit of the Debtor's customers. Interpleader Action, D.I. 1.

## II.     Calculation and Classification of Claim

Bancorp submits a proof of claim in the amount of **$2,583,023.24** plus a contingent and unliquidated claim for all additional claims, causes of action, or damages that may be asserted against Bancorp as to which Bancorp is entitled to indemnification by the Debtor under the Agreement or otherwise. The calculation of the quantified portion of the unsecured claim is comprised of three categories of liabilities covered by the Indemnification Provision: (1) attorneys' fees and legal expenses paid to Ballard Spahr LLP as a result of the Fraud Incidents; (2) attorneys' fees and legal expenses paid to Duane Morris LLP as a result of the Fraud Incidents; and (3) although Bancorp disputes any liability to the parties that have asserted counterclaims against it, a contingent claim under the indemnification provisions for counterclaims filed against Bancorp in the Interpleader Action as a result of the DD Care Incident. The amount of claims that may be asserted against Bancorp in the future as to which it is entitled to indemnification is unknown.

As of the Petition Date, Ballard Spahr LLP had billed Bancorp **$287,481.44** in legal fees and expenses for legal work related to the Fraud Incidents. These legal fees and expenses relate primarily to the Interpleader Action. Excerpts of the invoices for the professional services rendered by Ballard Spahr LLP prior to the Petition Date, for which the Debtor has not paid, are attached hereto as **Exhibit A**. Detailed redacted copies of the invoices will be provided to the Debtor upon request.

In addition, Duane Morris LLP had billed Bancorp **$51,882.50** in legal fees and expenses for analyzing and seeking insurance coverage for the Fraud Incidents. Excerpts of the invoices for the professional services rendered by Duane Morris LLP prior to the Petition Date, for which the Debtor has not paid, are attached hereto as **Exhibit B**. Detailed redacted copies of the invoices will be provided to the Debtor upon request.

Bancorp faces contingent liability as a result of the Fraud Incidents. As of the Petition Date, twenty-nine defendants in the Interpleader Action, almost exclusively clients of the Debtor, have filed counterclaims against Bancorp seeking to recover losses each incurred as a result of the DD Care Incident.[1] Interpleader Action, D.I. 25, 136, 145, 146, 148-51, 153-59, 161-64, 172, 174,

---

[1]     As of January 24, 2020, the date the Interpleader Action was stayed due to Debtor's filing, 78 of the 254 defendants had filed answers to the complaint in interpleader. Bancorp believes approximately 30 defendants were still eligible to file a timely response at the time of the court

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 73 of 201   Page ID #:106
Case 2:20-bk-10547-VZ   Claim 170   Filed 05/10/20   Desc Main Document   Page 72 of 199
Main Document      Page 72 of 199

175, 183, 191, 204 215, 217, 218, 221.  These counterclaims seek actual damages for funds each defendant held in reserve accounts with the Debtor or provided to the Debtor for ACH transfer, pre- and post-judgment interest, reasonable attorneys' fees, and other consequential damages. While an exact calculation of the exposure is not possible and Bancorp vigorously disputes any liability to the parties that have asserted counterclaims against it, the amounts asserted in the counterclaims total at least **$2,243,659.30**.  A chart summarizing the quantified amounts asserted in the counterclaims is attached hereto as **<u>Exhibit C</u>**.

### III.    Notices

Notices or pleadings related to this Proof of Claim should be sent to the following parties at the listed address:

> The Bancorp Bank
> Attn:  Erika Caesar
> Assistant General Counsel
> 409 Silverside Road, Suite 105
> Wilmington, DE 19809
> ecaesar@thebancorp.com

with a copy to counsel at:

> Beth Moskow-Schnoll, Esquire
> Matthew G. Summers, Esquire
> Jessica C. Watt, Esquire
> Ballard Spahr LLP
> 919 N. Market Street, 11th Floor
> Wilmington, DE  19801
> Email: moskowb@ballardspahr.com
>            summersm@ballardspahr.com
>            wattj@ballardspahr.com

### IV.    Reservation of Rights

Bancorp reserves all of its rights and remedies, including, without limitation, the right to amend this proof of claim from time to time to include additional amounts, damages, charges, judgment, settlements, claims for indemnification, adjustments and the like, known, liquidated, or non-contingent.

This Proof of Claim is asserted without prejudice to any other claim or interest that is, has been, or might in the future be asserted by Bancorp against the Debtor in its bankruptcy case or any procedural or substantive defense Bancorp has to the counterclaims that have been asserted against it in connection with the DD Care Incident and any other claims, damages, or causes of

---

ordered stay. Bancorp does not know whether any of the defendants who have not yet responded also will file counterclaims against Bancorp once the stay is lifted.

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 74 of 201   Page ID #:107
Case 2:20-bk-10548-VZ   Doc 170   Filed 05/31/20   Entered 05/31/20 14:36:40   Page 4 of 28
Main Document    Page 73 of 199

action that may be asserted against it in connection with the Fraud Incidents or its relationship with the Debtor.

By filing this Proof of Claim, Bancorp does not (i) submit to the jurisdiction of the Bankruptcy Court for any purpose; (ii) waive (and, instead, expressly reserves) all of its procedural and substantive defenses to any claim that has been or may be asserted against Bancorp by the Debtor, any person or entity that has or may in the future assert a claim or counterclaim against Bancorp in the Interpleader Action or resulting from or arising in connection with the Fraud Incidents, any trustee of the Debtor's estate, or any other person, including, without limitation, any defense based upon the lack of jurisdiction of the Bankruptcy Court to entertain any such claim or cause of action; or (iii) waive (and, instead, expressly reserves) any claim, interest, right, or right of action or indemnification that Bancorp has or might have against any the Debtor, whether such claim, interest, right, or right of action arises prior to, upon, or after the Petition Date. Bancorp does not waive its right to assert any administrative claims that may exist or arise from the Debtor's breaches of the Agreement or that may arise or exist under the indemnification provisions of the Agreement or otherwise.

Bancorp reserves the right to amend this Proof of Claim (and any other Proof of Claim that it files, has filed or may file in the Debtor's bankruptcy case) to make such claim a secured claim by virtue of any right to setoff, offset or recoup the amount thereof under 11 U.S.C. § 553 or otherwise, or to otherwise assert a defense of setoff, offset and/or recoupment against any claims, defenses or offsets that the Debtor or any other party may assert against Debtor.

Bancorp further reserves the right to (i) amend, update or supplement this Proof of Claim and any other Proof of Claim filed in the Debtor's bankruptcy case, including the right to reclassify any claim set forth herein or in any Proof of Claim to be filed with respect to such claim's status as (a) secured, priority or unsecured, (b) contingent or noncontingent, and/or (c) liquidated and unliquidated; (ii) file additional Proofs of Claim; (iii) file requests for payment of an administrative expense in accordance with 11 U.S.C. § 503 and 507; and (iv) seek relief under 11 U.S.C. § 502(c) or (j).

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 75 of 201   Page ID #:108
Case 2:21-bk-10547-VZ   Claim 110   Filed 05/10/20   Desc Attachment 13 Page 1 of 28
Main Document     Page 74 of 199

# EXHIBIT A

# Ballard Spahr
**LLP**

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: November 18, 2019
Invoice No.: 20191106788

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:     The Bancorp Bank  (038212.01)
Matter:     Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through October 31, 2019

### INVOICE SUMMARY

FEES

| | |
|---|---:|
| Bancorp/Cachet (00324892) | $18,881.00 |

DISBURSEMENTS

| | | |
|---|---:|---:|
| eData Hosting | $8.36 | |
| eData Processing | $36.00 | |
| Total Disbursements | | $44.36 |
| Total Current Charges | | $18,925.36 |
| **TOTAL AMOUNT DUE** | | **$18,925.36** |

# Ballard Spahr
**LLP**

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: December 6, 2019
Invoice No.: 20191201914

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:    The Bancorp Bank  (038212.01)
Matter:    Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through November 30, 2019

## INVOICE SUMMARY

FEES

| | |
|---|---|
| Bancorp/DD Care Management (00328131) | $124,302.50 |

DISBURSEMENTS

| | | |
|---|---|---|
| Delivery Service | $7.50 | |
| Lexis Research | $147.50 | |
| Total Disbursements | | $155.00 |
| Total Current Charges | | $124,457.50 |
| **TOTAL AMOUNT DUE** | | **$124,457.50** |

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: December 6, 2019
Invoice No.: 20191201915

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:     The Bancorp Bank  (038212.01)
Matter:    Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through November 30, 2019

## INVOICE SUMMARY

FEES

| | |
|---|---|
| Bancorp/Cachet (00324892) | $559.50 |

DISBURSEMENTS

| | | |
|---|---|---|
| eData Hosting | $8.36 | |
| Total Disbursements | | $8.36 |
| Total Current Charges | | $567.86 |
| **TOTAL AMOUNT DUE** | | **$567.86** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 79 of 201   Page ID #:112
Case 22-bk-10547-VZ   Claim 170   Filed 05/10/20   Desc Main Document   14:36:48   Page 9 of 28
Main Document     Page 78 of 199

# Ballard Spahr
LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: January 17, 2020
Invoice No.: 20200103471

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:   The Bancorp Bank  (038212.01)
Matter:   Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through December 31, 2019

## INVOICE SUMMARY

FEES

| | |
|---|---|
| Bancorp/DD Care Management (00328131) | $72,495.00 |

DISBURSEMENTS

| | | |
|---|---|---|
| Court Documents | $10.26 | |
| Delivery Service | $217.50 | |
| Filing Fees | $400.00 | |
| Other Research Services | $591.00 | |
| Professional Services | $31.25 | |
| Total Disbursements | | $1,250.01 |
| Total Current Charges | | $73,745.01 |
| **TOTAL AMOUNT DUE** | | **$73,745.01** |

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: January 17, 2020
Invoice No.: 20200103472

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:    The Bancorp Bank  (038212.01)
Matter:    Bancorp/Cachet  (00324892)


FOR PROFESSIONAL SERVICES RENDERED through December 31, 2019

### INVOICE SUMMARY

FEES

| | | |
|---|---|---|
| Bancorp/Cachet (00324892) | | $145.00 |

DISBURSEMENTS

| | | |
|---|---|---|
| eData Hosting | $8.36 | |
| Total Disbursements | | $8.36 |
| Total Current Charges | | $153.36 |
| **TOTAL AMOUNT DUE** | | **$153.36** |

Case 2:22-cv-08671-ELA   Document 1-3   Filed 11/30/22   Page 81 of 201   Page ID #:114
Case 2:22-bk-06548V2/Z Claim 170   Filed 05/10/20   Desc Main Document 14:36 Page 11 of 28
Main Document    Page 80 of 199

# Ballard Spahr
LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: February 18, 2020
Invoice No.: 20200202850

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:   The Bancorp Bank  (038212.01)
Matter:   Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through January 31, 2020

### INVOICE SUMMARY

FEES

| | | |
|---|---|---|
| Bancorp/DD Care Management (00328131) | | $102,705.50 |

DISBURSEMENTS

| | | |
|---|---|---|
| Court Documents | $6.00 | |
| Delivery Service | $105.00 | |
| Filing Fees | $68.75 | |
| Other Research Services | $110.60 | |
| Total Disbursements | | $290.35 |
| Total Current Charges | | $102,995.85 |
| **TOTAL AMOUNT DUE** | | **$102,995.85** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 82 of 201   Page ID #:115
Case 2:22-bk-06548 VZ Doc 110 Filed 05/31/22 Entered 05/31/22 11:36:49 Page 12 of 28
Main Document     Page 81 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: February 18, 2020
Invoice No.: 20200202851

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:     The Bancorp Bank  (038212.01)
Matter:    Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through January 31, 2020

**INVOICE SUMMARY**

FEES

| | | |
|---|---|---|
| Bancorp/Cachet (00324892) | | $342.00 |

DISBURSEMENTS

| | | |
|---|---|---|
| eData Hosting | $8.36 | |
| Total Disbursements | | $8.36 |
| Total Current Charges | | $350.36 |
| **TOTAL AMOUNT DUE** | | **$350.36** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 83 of 201   Page ID #:116
Case 2:22-bk-06548-VZ Claim 1-1   Filed 09/30/20   Desc Attachment 14:36:49   Page 136 of 28
Main Document      Page 82 of 199

# EXHIBIT B

## DuaneMorris

FIRM and AFFILIATE OFFICES

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

November 06, 2019

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

FILE# F1378-00032        INVOICE# 2597391        IRS# 23-1392502

CURRENT INVOICE                                        $27,266.50

| Fed Wire Payments: | ACH Payments: | |
|---|---|---|
| Wells Fargo Bank NA | Acct#: 2000650585614 | Please reference the File Number |
| Swift Code: WFBIUS6S | ABA#: 031000503 | and Invoice Number in the |
| Acct#: 2000650585614 | | REMARK section. |
| ABA#: 121000248 | | |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 85 of 201   Page ID #:118
Case 2:21-bk-10513-VZ   Claim 110   Filed 05/31/22   Desc Main Document   Page 84 of 199
Main Document      Page 84 of 199

# Duane Morris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

November 06, 2019


THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808



CACHET/MYPAYROLLHR

File# F1378-00032          Invoice# 2597391          IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 10/31/2019 IN CONNECTION                                          $27,266.50
WITH THE ABOVE-CAPTIONED MATTER.


TOTAL BALANCE DUE                                                         $27,266.50

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 86 of 201   Page ID #:119
Case 2:20-bk-06548-FMZ/Z Claim 110   Filed 05/31/22   Desc Att 05/31/22 14:36:49 Page 19 of 28
Main Document      Page 85 of 199

Duane Morris
November 06, 2019
Page 6

File # F1378-00032                                          INVOICE# 2597391
       CACHET/MYPAYROLLHR

| TIMEKEEPER NO. | NAME | CLASS | HOURS | RATE | VALUE |
|---|---|---|---|---|---|
| 61106 | PM MATUSKY | PARTNER | 25.30 | 910.00 | $23,023.00 |
| 01523 | WA MACK | PARTNER | 2.60 | 900.00 | $2,340.00 |
| 61896 | BJ SLIPAKOFF | SPECIAL COUNSEL | 2.70 | 705.00 | $1,903.50 |
| | | | 30.60 | | $27,266.50 |

Case 2:22-cv-08671-FLA Document 1-3 Filed 11/30/22 Page 87 of 201 Page ID #:120
Case 2:20-bk-10554-VZ Claim 170 Filed 05/31/22 Desc 05/31/22 14:36:28 Page 12 of 28
Main Document Page 86 of 199

## DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

December 05, 2019

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

FILE# F1378-00032     INVOICE# 2607529     IRS# 23-1392502

CURRENT INVOICE                                          $14,151.00

| BILL DATE | BILL REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|-----------|--------------|-------------|---------|-------------|
| 11/6/19 | 2597591 | $27,266.50 | $0.00 | $27,266.50 |
| | | | | $27,266.50 |

TOTAL BALANCE DUE                                        $41,417.50

| Fed Wire Payments: | ACH Payments: | |
|---|---|---|
| Wells Fargo Bank NA | Acct#: 2000650585614 | Please reference the File Number |
| Swift Code: WFBIUS6S | ABA#: 031000503 | and Invoice Number in the |
| Acct#: 2000650585614 | | REMARK section. |
| ABA#: 121000248 | | |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE
END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS
INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS
WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH
LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

DUANE MORRIS LLP

30 SOUTH 17TH STREET   PHILADELPHIA, PA 19103-4196                    PHONE: 215.979.1000   FAX: 215.979.1020

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 88 of 201   Page ID #:121
Case 2:20-bk-10654-VZ   Claim 110   Filed 05/30/22   Desc Atch1 at 14:36   Page 19 of 28
Main Document      Page 87 of 199

## DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

December 05, 2019

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

File# F1378-00032        Invoice# 2607529        IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 11/30/2019 IN CONNECTION
WITH THE ABOVE-CAPTIONED MATTER.                    $14,151.00


PREVIOUS BALANCE                                     $27,266.50

TOTAL BALANCE DUE                                    $41,417.50

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|---|---|---|---|---|
| 11/6/19 | 2597391 | $27,266.50 | $0.00 | $27,266.50 |
| | | | | $27,266.50 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 89 of 201   Page ID #:122
Case 2:20-bk-06548-FMD   Doc 170   Filed 05/11/20   Page 105 of 108   Page 128
Main Document      Page 88 of 199

Duane Morris
December 05, 2019
Page 6

File # F1378-00032                                        INVOICE# 2607529
        CACHET/MYPAYROLLHR

**TIMEKEEPER**

| NO. | NAME | CLASS | | HOURS | RATE | VALUE |
|-----|------|-------|---|-------|------|-------|
| 61106 | PM MATUSKY | PARTNER | | 10.80 | 910.00 | $9,828.00 |
| 64054 | E MEDINA | PARALEGAL | | 13.10 | 330.00 | $4,323.00 |
| | | | | 23.90 | | $14,151.00 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 90 of 201   Page ID #:123
Case 2:22-bk-06548-VZ   Doc 110   Filed 05/31/22   Entered 05/31/22 14:36:16   Page 20 of 28
Main Document      Page 89 of 199

# Duane Morris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

January 11, 2020

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

FILE# F1378-00032          INVOICE# 2618491          IRS# 23-1392502

CURRENT INVOICE                                                    $364.00

| Fed Wire Payments: | ACH Payments: | |
|---|---|---|
| Wells Fargo Bank NA | Acct#: 2000650585614 | Please reference the File Number |
| Swift Code: WFBIUS6S | ABA#: 031000503 | and Invoice Number in the |
| Acct#: 2000650585614 | | REMARK section. |
| ABA#: 121000248 | | |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE
END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS
INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS
WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH
LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 91 of 201   Page ID #:124
Case 2:20-bk-06574V2/Z Claim 110   Filed 05/31/02/20   Entered 05/31/20 11:36:39   Page 20 of 28
Main Document      Page 90 of 199

## DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

January 11, 2020


THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808



CACHET/MYPAYROLLHR

File# F1378-00032          Invoice# 2618491          IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 12/31/2019 IN CONNECTION
WITH THE ABOVE-CAPTIONED MATTER.                                     $364.00


TOTAL BALANCE DUE                                                    $364.00


DUANE MORRIS LLP

Duane Morris
January 11, 2020
Page 3

File # F1378-00032                                          INVOICE# 2618491
    CACHET/MYPAYROLLHR

| TIMEKEEPER NO. | NAME | CLASS | HOURS | RATE | VALUE |
|---|---|---|---|---|---|
| 61106 | PM MATUSKY | PARTNER | 0.40 | 910.00 | $364.00 |
| | | | 0.40 | | $364.00 |

Case 2:22-cv-08671-FLA    Document 1-3    Filed 11/30/22    Page 93 of 201    Page ID #:126
Case 2:20-bk-06548VZVZ  Claim 170  Filed 05/31/20  Desc Main Document 14:36  Page 23 of 28
Main Document      Page 92 of 199

## Duane Morris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196


February 25, 2020

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808


CACHET/MYPAYROLLHR

FILE# F1378-00032      INVOICE# 2632846      IRS# 23-1392502

CURRENT INVOICE                                    $11,739.00

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|-----------|--------------|-------------|---------|-------------|
| 1/11/20 | 2618491 | $364.00 | $0.00 | $364.00 |
| | | | | $364.00 |

TOTAL BALANCE DUE                                  $12,103.00

| Fed Wire Payments:<br>Wells Fargo Bank NA<br>Swift Code: WFBIUS6S<br>Acct#: 2000650585614<br>ABA#: 121000248 | ACH Payments:<br>Acct#: 2000650585614<br>ABA#: 031000503 | Please reference the File Number and Invoice Number in the REMARK section. |
|---|---|---|

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

---

DUANE MORRIS LLP

30 SOUTH 17TH STREET  PHILADELPHIA, PA 19103-4196          PHONE: 215.979.1000  FAX: 215.979.1020

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 94 of 201   Page ID #:127
Case 2:20-bk-00548-VZ Claim 170   Filed 05/31/22   Desc Atch 14-1 Page 29 of 28
Main Document     Page 93 of 199

# Duane Morris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN -
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

February 25, 2020

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

File# F1378-00032      Invoice# 2632846           IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 01/31/2020 IN CONNECTION
WITH THE ABOVE-CAPTIONED MATTER.                                    $11,739.00


PREVIOUS BALANCE                                                    $364.00

TOTAL BALANCE DUE                                                  $12,103.00

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|---|---|---|---|---|
| 1/11/20 | 2618491 | $364.00 | $0.00 | $364.00 |
| | | | | $364.00 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 95 of 201   Page ID #:128
Case 2:20-bk-06548-VZ   Claim 110   Filed 05/31/20   Desc Attachment 1   Page 29 of 28
Main Document      Page 94 of 199

Duane Morris
February 25, 2020
Page 4

File # F1378-00032                                    INVOICE# 2632846
    CACHET/MYPAYROLLHR

| TIMEKEEPER NO. | NAME | CLASS | HOURS | RATE | VALUE |
|---|---|---|---|---|---|
| 61106 | PM MATUSKY | PARTNER | 12.90 | 910.00 | $11,739.00 |
| | | | 12.90 | | $11,739.00 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 96 of 201   Page ID #:129
Case 2:20-bk-06548-FLA   Doc 110   Filed 05/31/22   Desc Att 05/31/22 14:36   Page 26 of 28
Main Document      Page 95 of 199

# EXHIBIT C

Case 2:22-cv-08671-ELA   Document 1-3   Filed 11/30/22   Page 97 of 201   Page ID #:130
Case 2:20-bk-06548VZ/Z Claim 170   Filed 09/20/20   Desc 03/20/21 14:36:29   Page 20 of 28
Main Document      Page 96 of 199

| *The Bancorp Bank v. Advance Payroll Solutions, Inc., et al.*, C.A. No. 19-2088-MN (D. Del.) | | |
|:---:|:---:|:---:|
| **COUNTERCLAIMS AGAINST BANCORP** | | |
| **DEFENDANT** | **D.I.** | **MINIMUM AMOUNT ALLEGED** |
| The Ahola Corporation | 25 | $721,547.69 |
| Traverse City Products Inc. | 136 | $26,460.10 |
| Advanced Payroll Solutions, LLC | 145 | $20,988.90 |
| Alliance Business Solutions, LLC | 146 | $16,948.28 |
| Approved Payroll, Inc.<br>Approved Staffing | 148 | $10,000.00 |
| Astra Payroll Co. | 149 | $10,000.00 |
| CEOS Corporation | 150 | $15,129.00 |
| Charleston Payroll Plus, LLC | 151 | $242,586.45 |
| Eazepay, LLC | 153 | $5,621.40 |
| Ignite PEO Services, LLC | 154 | $2,000.00 |
| Nealis Engineering, Inc. | 155 | $20,016.11 |
| Partners in Payroll, LLC | 156 | $2,000.00 |
| Pizza Ranch Inc.<br>PR Financial Services, LLC | 157 | $6,325.65 |
| Quanta HCM<br>Quanta LLC | 158 | $5,000.00 |
| Sammons & Head LLC | 159 | $14,500.00 |
| Solid Business Solutions, LLC | 161 | $76,000.00 |
| W.A. Bragg & Co. | 162 | $35,237.77 |
| Workforce Benefit Solution, LLC | 163 | $40,388.20 |
| Zuma Payroll Solutions, LLC | 164 | $73,479.25 |
| BeyondPay, Inc. | 172 | $25,092.88 |
| Exponent Technologies, Inc. | 174 | $648,000.00 |
| Tripco, Inc | 175 | $56,786.49 |

| The Bancorp Bank v. Advance Payroll Solutions, Inc., et al., C.A. No. 19-2088-MN (D. Del.) | | |
|---|---|---|
| **COUNTERCLAIMS AGAINST BANCORP** | | |
| **DEFENDANT** | **D.I.** | **MINIMUM AMOUNT ALLEGED** |
| Spectrum Employee Services, Inc. | 183 | $46,593.00 |
| Comp U.S. Payroll Inc. | 191 | $15,000.00 |
| Access1Source-NC, LLC | 204 | $40,217.98 |
| Choicepay Payroll & HR Services, Inc. | 215 | $6,461.13 |
| Axiom Human Resources Solutions, Inc. | 217 | $16,400.95 |
| Inflection HR LLC | 218 | $28,052.20 |
| Payroll Experts LLC | 221 | $16,825.87 |
| | | **TOTAL:       $2,243,659.30**<br><br>**The Total is an estimate based on the sum certain of actual damages asserted by Defendants.  This does not include any calculation of the demands for pre and post-judgment interest, attorneys' fees, or consequential damages.** |

# EXHIBIT "2"

| Fill in this information to identify the case: |
|---|

Debtor 1    **Cachet Financial Services f/k/a Cachet Banq, Inc.**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central   District of California

Case number   **2:20-bk-10654-VZ**

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | The Bancorp Bank | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes.  From whom? | |
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Ballard Spahr LLP, Attn: Matthew G. Summers<br>Name<br>919 N Market Street, 11th Floor<br>Number   Street<br>Wilmington       DE<br>City       State      ZIP Code<br>Contact phone (302) 252-4428<br>Contact email summersm@ballardspahr.com | **Where should payments to the creditor be sent? (if different)**<br><br>The Bancorp Bank, Attn: Erika R. Caesar<br>Name<br>409 Silverside Road, Suite 105<br>Number   Street<br>Wilmington       DE<br>City       State      ZIP Code<br>Contact phone (302)385-5023<br>Contact email ecaesar@thebancorp.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____<br>MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

---

**7. How much is the claim?**

$ at least $ _____2,583,023,.24_____ . **Does this amount include interest or other charges?**

plus contingent, unliquidated, and unknown additional amounts as described in the attached Schedule.

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

___See Attached Schedule_____

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                      $_____

Amount of the claim that is secured:      $_____

Amount of the claim that is unsecured:    $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:      $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.      $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

EXHIBIT "2" Page 3

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  09/16/2020
                  MM / DD / YYYY

_Signature_

Print the name of the person who is completing and signing this claim:

| Name | Matt | | Carberry |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Executive Vice President, Head of Payment Acceptance | | |
| Company | The Bancorp Bank | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 409 Silverside Road, Suite 105 | | |
| | Number     Street | | |
| | Wilmington | DE | 19809 |
| | City | State | ZIP Code |
| Contact phone | | Email | mcarberry@thebancorp.com |

### Schedule to Proof of Claim

***In re Cachet Financial Services***
**Case No. 2:20-bk-10654-VZ (Chapter 11)**
**United States Bankruptcy Court for the Central District of California**

**Creditor: The Bancorp Bank**

**I.**    <u>**Basis for the Claim**</u>

      On January 21, 2020 (the "Petition Date"), Cachet Financial Services f/k/a Cachet Banq, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. Prior to that time, Cachet offered direct deposit services to its customers – primarily payroll companies (which the Debtor refers to as "Remarketers") – using the Automated Clearing House ("ACH") network. The Bancorp Bank ("Bancorp") processed ACH files for the Debtor as the Debtor's Originating Depository Financial Institution ("ODFI") pursuant to a Payroll Processing ODFI Agreement (the "Agreement") the parties originally entered into on August 4, 2010. The Agreement is a confidential document that will be provided to the Debtor upon request. In Section 8.4 of the Agreement, the Debtor agreed to:

> (a) indemnify and hold Bancorp, its employees, officers, directors, agents and representatives harmless of and from any and all losses suffered or incurred by Bancorp in connection with any Client or completed failed or misdirected Client Transaction caused by Processor; (b) use or alleged misuse by Processor of the ACH system and/or fines assessed against Bancorp or Processor in connection therewith; (c) losses resulting out of the breach or alleged breach by a Client under its agreement with Processor, including the failure of a Client to pay any reversed or failed Transaction(s) that are returned to Client by Processor or that, pursuant to applicable NACHA ACH Rules or Federal Reserve requirements, should have been returned by Processor to a Client; (d) breach by Processor of any of its representations, warranties or agreement under this Agreement or arising from an act or omission by Processor that violates an NACHA Rule, Federal Reserve requirement or applicable law; (e) or arising out of or relating to any error mistake by Processor or any third party involved in processing Client Transactions.

Exhibit A, §8.4 (the "Indemnification Provision").

      On October 21, 2019, Debtor informed Bancorp that it had paid out monies on behalf of its customer, DD Care Management, without receiving corresponding funding. This incident (the "DD Care Incident") occurred after a similar incident in August 2019 involving another of the Debtor's customers, MyPayrollHR ("MPHR") (the "MPHR Incident") (collectively, with the DD Care Incident, the "Fraud Incidents"). Moreover, the DD Care Incident caused a deficit in the Debtor's payroll processing accounts. The Debtor informed Bancorp it would not be able to make up the deficit caused by the DD Care Incident.

      As a result of the DD Care Incident, Bancorp has incurred significant legal fees and expenses, has had damages claims asserted against it, and additional damages claims could be

asserted against Bancorp in the future.  Bancorp had to engage legal counsel to, among other activities, advise Bancorp on handling the return of the funds remaining in the Debtor's accounts held at Bancorp to the appropriate parties once Bancorp terminated its Agreement with Debtor. On November 5, 2019, Bancorp filed an interpleader action pursuant to 28 U.S.C. § 1335 in the U.S. District Court for the District of Delaware, docketed as *The Bancorp Bank v. Advance Payroll Solutions, Inc., et al.*, C.A. No. 19-2088-MN (the "Interpleader Action").  Through the Interpleader Action, Bancorp requested the Delaware Court to equitably distribute funds held in accounts at Bancorp by the Debtor (the "Stake") for the benefit of the Debtor's customers.  Interpleader Action, D.I. 1.

## II.    Calculation and Classification of Claim

Bancorp submits a proof of claim in the amount of **$2,583,023.24** plus a contingent and unliquidated claim for all additional claims, causes of action, or damages that may be asserted against Bancorp as to which Bancorp is entitled to indemnification by the Debtor under the Agreement or otherwise.  The calculation of the quantified portion of the unsecured claim is comprised of three categories of liabilities covered by the Indemnification Provision:   (1) attorneys' fees and legal expenses paid to Ballard Spahr LLP as a result of the Fraud Incidents; (2) attorneys' fees and legal expenses paid to Duane Morris LLP as a result of the Fraud Incidents; and (3) although Bancorp disputes any liability to the parties that have asserted counterclaims against it, a contingent claim under the indemnification provisions for counterclaims filed against Bancorp in the Interpleader Action as a result of the DD Care Incident.  The amount of claims that may be asserted against Bancorp in the future as to which it is entitled to indemnification is unknown.

As of the Petition Date, Ballard Spahr LLP had billed Bancorp **$287,481.44** in legal fees and expenses for legal work related to the Fraud Incidents.  These legal fees and expenses relate primarily to the Interpleader Action.  Excerpts of the invoices for the professional services rendered by Ballard Spahr LLP prior to the Petition Date, for which the Debtor has not paid, are attached hereto as **Exhibit A**.  Detailed redacted copies of the invoices will be provided to the Debtor upon request.

In addition, Duane Morris LLP had billed Bancorp **$51,882.50** in legal fees and expenses for analyzing and seeking insurance coverage for the Fraud Incidents.  Excerpts of the invoices for the professional services rendered by Duane Morris LLP prior to the Petition Date, for which the Debtor has not paid, are attached hereto as **Exhibit B**.  Detailed redacted copies of the invoices will be provided to the Debtor upon request.

Bancorp faces contingent liability as a result of the Fraud Incidents.  As of the Petition Date, twenty-nine defendants in the Interpleader Action, almost exclusively clients of the Debtor, have filed counterclaims against Bancorp seeking to recover losses each incurred as a result of the DD Care Incident.[1]  Interpleader Action, D.I. 25, 136, 145, 146, 148-51, 153-59, 161-64, 172, 174,

---

[1]    As of January 24, 2020, the date the Interpleader Action was stayed due to Debtor's filing, 78 of the 254 defendants had filed answers to the complaint in interpleader.  Bancorp believes approximately 30 defendants were still eligible to file a timely response at the time of the court

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 105 of 201   Page ID #:138
Case 2:20-bk-10534-WZ   Claim 1174   Filed 05/31/22   Desc Schedule 44   Page 6
Main Document   of 28 Page 104 of 199

175, 183, 191, 204 215, 217, 218, 221. These counterclaims seek actual damages for funds each defendant held in reserve accounts with the Debtor or provided to the Debtor for ACH transfer, pre- and post-judgment interest, reasonable attorneys' fees, and other consequential damages. While an exact calculation of the exposure is not possible and Bancorp vigorously disputes any liability to the parties that have asserted counterclaims against it, the amounts asserted in the counterclaims total at least **$2,243,659.30**. A chart summarizing the quantified amounts asserted in the counterclaims is attached hereto as **Exhibit C**.

### III.    Notices

Notices or pleadings related to this Proof of Claim should be sent to the following parties at the listed address:

> The Bancorp Bank
> Attn:  Erika Caesar
> Assistant General Counsel
> 409 Silverside Road, Suite 105
> Wilmington, DE 19809
> ecaesar@thebancorp.com

with a copy to counsel at:

> Beth Moskow-Schnoll, Esquire
> Matthew G. Summers, Esquire
> Jessica C. Watt, Esquire
> Ballard Spahr LLP
> 919 N. Market Street, 11th Floor
> Wilmington, DE  19801
> Email: moskowb@ballardspahr.com
>          summersm@ballardspahr.com
>          wattj@ballardspahr.com

### IV.    Reservation of Rights

Bancorp reserves all of its rights and remedies, including, without limitation, the right to amend this proof of claim from time to time to include additional amounts, damages, charges, judgment, settlements, claims for indemnification, adjustments and the like, known, liquidated, or non-contingent.

This Proof of Claim is asserted without prejudice to any other claim or interest that is, has been, or might in the future be asserted by Bancorp against the Debtor in its bankruptcy case or any procedural or substantive defense Bancorp has to the counterclaims that have been asserted against it in connection with the DD Care Incident and any other claims, damages, or causes of

---

ordered stay. Bancorp does not know whether any of the defendants who have not yet responded also will file counterclaims against Bancorp once the stay is lifted.

action that may be asserted against it in connection with the Fraud Incidents or its relationship with the Debtor.

By filing this Proof of Claim, Bancorp does not (i) submit to the jurisdiction of the Bankruptcy Court for any purpose; (ii) waive (and, instead, expressly reserves) all of its procedural and substantive defenses to any claim that has been or may be asserted against Bancorp by the Debtor, any person or entity that has or may in the future assert a claim or counterclaim against Bancorp in the Interpleader Action or resulting from or arising in connection with the Fraud Incidents, any trustee of the Debtor's estate, or any other person, including, without limitation, any defense based upon the lack of jurisdiction of the Bankruptcy Court to entertain any such claim or cause of action; or (iii) waive (and, instead, expressly reserves) any claim, interest, right, or right of action or indemnification that Bancorp has or might have against any the Debtor, whether such claim, interest, right, or right of action arises prior to, upon, or after the Petition Date. Bancorp does not waive its right to assert any administrative claims that may exist or arise from the Debtor's breaches of the Agreement or that may arise or exist under the indemnification provisions of the Agreement or otherwise.

Bancorp reserves the right to amend this Proof of Claim (and any other Proof of Claim that it files, has filed or may file in the Debtor's bankruptcy case) to make such claim a secured claim by virtue of any right to setoff, offset or recoup the amount thereof under 11 U.S.C. § 553 or otherwise, or to otherwise assert a defense of setoff, offset and/or recoupment against any claims, defenses or offsets that the Debtor or any other party may assert against Debtor.

Bancorp further reserves the right to (i) amend, update or supplement this Proof of Claim and any other Proof of Claim filed in the Debtor's bankruptcy case, including the right to reclassify any claim set forth herein or in any Proof of Claim to be filed with respect to such claim's status as (a) secured, priority or unsecured, (b) contingent or noncontingent, and/or (c) liquidated and unliquidated; (ii) file additional Proofs of Claim; (iii) file requests for payment of an administrative expense in accordance with 11 U.S.C. § 503 and 507; and (iv) seek relief under 11 U.S.C. § 502(c) or (j).

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 107 of 201   Page ID #:140
Case 2:20-ap-01037-WZ   Claim 174   Filed 05/31/22   Page 106 of 199   Desc Schedule 44   Page 5
Main Document   of 28   Page 106 of 199

# EXHIBIT A

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 108 of 201   Page ID #:141
Case 2:20-bk-10654-VZ   Claim 174 Filed 05/31/22   Pg 108 of 143/21/20   Desc   Schedule 44   Pages 6
Main Document of 28 Page 107 of 199

# Ballard Spahr
**LLP**

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: November 18, 2019
Invoice No.: 20191106788

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:     The Bancorp Bank  (038212.01)
Matter:    Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through October 31, 2019

### INVOICE SUMMARY

FEES

| | |
|---|---:|
| Bancorp/Cachet (00324892) | $18,881.00 |

DISBURSEMENTS

| | | |
|---|---:|---:|
| eData Hosting | $8.36 | |
| eData Processing | $36.00 | |
| Total Disbursements | | $44.36 |
| Total Current Charges | | $18,925.36 |
| **TOTAL AMOUNT DUE** | | **$18,925.36** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 109 of 201   Page ID #:142
Case 2:20-bp-10654-VZ   Claim 1174 Filed 05/31/22   Desc Schedule Page 7
Main Document of 28 Page 108 of 199

# Ballard Spahr
#### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: December 6, 2019
Invoice No.: 20191201914

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:   The Bancorp Bank  (038212.01)
Matter:   Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through November 30, 2019

### INVOICE SUMMARY

FEES

| | |
|---|---|
| Bancorp/DD Care Management (00328131) | $124,302.50 |

DISBURSEMENTS

| | | |
|---|---|---|
| Delivery Service | $7.50 | |
| Lexis Research | $147.50 | |
| Total Disbursements | | $155.00 |
| Total Current Charges | | $124,457.50 |
| **TOTAL AMOUNT DUE** | | **$124,457.50** |

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: December 6, 2019
Invoice No.: 20191201915

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:   The Bancorp Bank  (038212.01)
Matter:   Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through November 30, 2019

## INVOICE SUMMARY

FEES

| | | |
|---|---|---|
| Bancorp/Cachet (00324892) | | $559.50 |

DISBURSEMENTS
eData Hosting                                         $8.36

| | |
|---|---|
| Total Disbursements | $8.36 |
| Total Current Charges | $567.86 |
| **TOTAL AMOUNT DUE** | $567.86 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 111 of 201   Page ID #:144
Case 2:20-ap-01054-WZ   Claim 1174 Filed 05/31/22   Filed 09/16/20   Desc Claims Schedule 44   Pages 0
Main Document of 29 Page 110 of 199

# Ballard Spahr
LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: January 17, 2020
Invoice No.: 20200103471

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:    The Bancorp Bank  (038212.01)
Matter:    Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through December 31, 2019

### INVOICE SUMMARY

FEES

| | |
|---|---|
| Bancorp/DD Care Management (00328131) | $72,495.00 |

DISBURSEMENTS

| | | |
|---|---|---|
| Court Documents | $10.26 | |
| Delivery Service | $217.50 | |
| Filing Fees | $400.00 | |
| Other Research Services | $591.00 | |
| Professional Services | $31.25 | |
| Total Disbursements | | $1,250.01 |
| Total Current Charges | | $73,745.01 |
| **TOTAL AMOUNT DUE** | | **$73,745.01** |

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: January 17, 2020
Invoice No.: 20200103472

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:    The Bancorp Bank  (038212.01)
Matter:    Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through December 31, 2019

### INVOICE SUMMARY

FEES

| | | |
|---|---|---|
| Bancorp/Cachet (00324892) | | $145.00 |

DISBURSEMENTS

| | | |
|---|---|---|
| eData Hosting | $8.36 | |
| Total Disbursements | | $8.36 |
| Total Current Charges | | $153.36 |
| **TOTAL AMOUNT DUE** | | **$153.36** |

# Ballard Spahr
**LLP**

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: February 18, 2020
Invoice No.: 20200202850

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

| | |
|---|---|
| Client: | The Bancorp Bank  (038212.01) |
| Matter: | Bancorp/DD Care Management  (00328131) |

FOR PROFESSIONAL SERVICES RENDERED through January 31, 2020

## INVOICE SUMMARY

FEES

| | |
|---|---|
| Bancorp/DD Care Management (00328131) | $102,705.50 |

DISBURSEMENTS

| | | |
|---|---|---|
| Court Documents | $6.00 | |
| Delivery Service | $105.00 | |
| Filing Fees | $68.75 | |
| Other Research Services | $110.60 | |
| Total Disbursements | | $290.35 |
| Total Current Charges | | $102,995.85 |
| **TOTAL AMOUNT DUE** | | **$102,995.85** |

# Ballard Spahr
**LLP**

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: February 18, 2020
Invoice No.: 20200202851

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:   The Bancorp Bank  (038212.01)
Matter:   Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through January 31, 2020

**INVOICE SUMMARY**

FEES

    Bancorp/Cachet                                          $342.00
    (00324892)

DISBURSEMENTS
    eData Hosting                                $8.36

       Total Disbursements                              $8.36

       Total Current Charges                           $350.36

       **TOTAL AMOUNT DUE**                          **$350.36**

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 115 of 201   Page ID #:148
Case 2:21-bk-10587-VZ   Doc 1174 Filed 05/12/22 Entered 05/12/22 10:44 Page 3
Main Document of 28 Page 114 of 199

# EXHIBIT B

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 116 of 201   Page ID #:149
Case 2:22-bk-10587-VZ   Claim 117-4 Part 2   05/Filed 11/20/20 Dec 05/31/22 14:36:44 Desc
Main Document of 28 Page 115 of 199

## DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196


November 06, 2019

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808


CACHET/MYPAYROLLHR

FILE# F1378-00032       INVOICE# 2597391       IRS# 23-1392502

CURRENT INVOICE                                          $27,266.50

| Fed Wire Payments: | ACH Payments: | |
|---|---|---|
| Wells Fargo Bank NA | Acct#: 2000650585614 | Please reference the File Number |
| Swift Code: WFBIUS6S | ABA#: 031000503 | and Invoice Number in the |
| Acct#: 2000650585614 | | REMARK section. |
| ABA#: 121000248 | | |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE
END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS
INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS
WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH
LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

# DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

November 06, 2019


THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808



CACHET/MYPAYROLLHR

File# F1378-00032        Invoice# 2597391        IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 10/31/2019 IN CONNECTION
WITH THE ABOVE-CAPTIONED MATTER.                              $27,266.50


TOTAL BALANCE DUE                                            $27,266.50

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 118 of 201   Page ID #:151
Case 2:21-bk-10547-VZ   Claim 1174 Part 2 Filed 05/20/20 Desc Exhibit 26 Page 6
Main Document of 28 Page 117 of 199

Duane Morris
November 06, 2019
Page 6

File # F1378-00032                                      INVOICE# 2597391
    CACHET/MYPAYROLLHR

**TIMEKEEPER**

| NO. | NAME | CLASS | HOURS | RATE | VALUE |
|-----|------|-------|-------|------|-------|
| 61106 | PM MATUSKY | PARTNER | 25.30 | 910.00 | $23,023.00 |
| 01523 | WA MACK | PARTNER | 2.60 | 900.00 | $2,340.00 |
| 61896 | BJ SLIPAKOFF | SPECIAL COUNSEL | 2.70 | 705.00 | $1,903.50 |
| | | | 30.60 | | $27,266.50 |

DUANE MORRIS LLP

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 119 of 201   Page ID #:152
Case 2:21-bk-10559-VZ   Claim 174 Part 2   Filed 06/30/21   Desc Schedule-4 Page 7
Main Document of 28 Page 118 of 199

## Duane Morris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

December 05, 2019

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

FILE# F1378-00032    INVOICE# 2607529    IRS# 23-1392502

CURRENT INVOICE                                              $14,151.00

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|---|---|---|---|---|
| 11/6/19 | 2597891 | $27,266.50 | $0.00 | $27,266.50 |
| | | | | $27,266.50 |

TOTAL BALANCE DUE                                            $41,417.50

| Fed Wire Payments: | ACH Payments: | |
|---|---|---|
| Wells Fargo Bank NA | Acct#: 2000650585614 | Please reference the File Number and Invoice Number in the REMARK section. |
| Swift Code: WFBIUS6S | ABA#: 031000503 | |
| Acct#: 2000650585614 | | |
| ABA#: 121000248 | | |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE
END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS
INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS
WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH
LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

# DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

December 05, 2019

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

File# F1378-00032        Invoice# 2607529        IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 11/30/2019 IN CONNECTION
WITH THE ABOVE-CAPTIONED MATTER.                          $14,151.00


PREVIOUS BALANCE                                          $27,266.50

TOTAL BALANCE DUE                                        $41,417.50

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|-----------|--------------|-------------|---------|-------------|
| 11/6/19 | 2597391 | $27,266.50 | $0.00 | $27,266.50 |
|  |  |  |  | $27,266.50 |

Duane Morris
December 05, 2019
Page 6

File # F1378-00032                                            INVOICE# 2607529
     CACHET/MYPAYROLLHR

| TIMEKEEPER NO. | NAME | CLASS | HOURS | RATE | VALUE |
|---|---|---|---|---|---|
| 61106 | PM MATUSKY | PARTNER | 10.80 | 910.00 | $9,828.00 |
| 64054 | E MEDINA | PARALEGAL | 13.10 | 330.00 | $4,323.00 |
| | | | 23.90 | | $14,151.00 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 122 of 201   Page ID #:155
Case 2:22-bk-10658-WZ   Claim 1174 Part 2-5 Billed 209 Entered 05/30/22 14:36:44 Pages 20
Main Document of 28 Page 121 of 199

# DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

January 11, 2020

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

FILE# F1378-00032      INVOICE# 2618491      IRS# 23-1392502

CURRENT INVOICE                                           $364.00

| Fed Wire Payments:<br>Wells Fargo Bank NA<br>Swift Code: WFBIUS6S<br>Acct#: 2000650585614<br>ABA#: 121000248 | ACH Payments:<br>Acct#: 2000650585614<br>ABA#: 031000503 | Please reference the File Number and Invoice Number in the REMARK section. |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

Case 2:22-cv-08671-FLA Document 1-3 Filed 11/30/22 Page 123 of 201 Page ID #:156
Case 2:22-bk-10658-VZ Claim 11-4 Part 2 05/31/2022 Doc 65 Schedule 44 Page 21
Main Document of 28 Page 122 of 199

# Duane Morris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

January 11, 2020


THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808



CACHET/MYPAYROLLHR

File# F1378-00032          Invoice# 2618491          IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 12/31/2019 IN CONNECTION
WITH THE ABOVE-CAPTIONED MATTER.                                $364.00


TOTAL BALANCE DUE                                              $364.00


DUANE MORRIS LLP

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 124 of 201   Page ID #:157
Case 2:20-bk-10654-VZ   Claim 1174 Part 2 Filed 05/22/20 Entered 05/01/22 14:30:44 Page 22
Main Document of 28 Page 123 of 199

Duane Morris
January 11, 2020
Page 3

File # F1378-00032                                                   INVOICE# 2618491
    CACHET/MYPAYROLLHR

| TIMEKEEPER NO. | NAME | CLASS | HOURS | RATE | VALUE |
|---|---|---|---|---|---|
| 61106 | PM MATUSKY | PARTNER | 0.40 | 910.00 | $364.00 |
| | | | 0.40 | | $364.00 |

Case 2:22-cv-08671-FLA Document 1-3 Filed 11/30/22 Page 125 of 201 Page ID #:158
Case 2:20-bk-10553-VZ Doc 1174 Filed 05/31/23 Entered 06/31/23 16:16:44 Page 23
Main Document of 28 Page 124 of 199

## DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

February 25, 2020

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

FILE# F1378-00032     INVOICE# 2632846     IRS# 23-1392502

CURRENT INVOICE                                            $11,739.00

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|-----------|--------------|-------------|---------|-------------|
| 1/11/20 | 2618491 | $364.00 | $0.00 | $364.00 |
| | | | | $364.00 |

TOTAL BALANCE DUE                                          $12,103.00

| Fed Wire Payments: | ACH Payments: | |
|---|---|---|
| Wells Fargo Bank NA | Acct#: 2000650585614 | Please reference the File Number and Invoice Number in the REMARK section. |
| Swift Code: WFBIUS6S | ABA#: 031000503 | |
| Acct#: 2000650585614 | | |
| ABA#: 121000248 | | |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE
END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS
INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS
WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH
LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

DUANE MORRIS LLP

30 SOUTH 17TH STREET  PHILADELPHIA, PA 19103-4196                PHONE: 215.979.1000   FAX: 215.979.1020

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 126 of 201   Page ID #:159
Case 2:20-bk-10654-VZ   Claim 11-4   Part 2   Filed 05/20/20   Desc   06/31/20 14:36:44   Page 24
Main Document   of 28   Page 125 of 199

## DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

February 25, 2020

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

File# F1378-00032          Invoice# 2632846          IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 01/31/2020 IN CONNECTION
WITH THE ABOVE-CAPTIONED MATTER.                                    $11,739.00

PREVIOUS BALANCE                                                       $364.00

TOTAL BALANCE DUE                                                   $12,103.00

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|---|---|---|---|---|
| 1/11/20 | 2618491 | $364.00 | $0.00 | $364.00 |
| | | | | $364.00 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 127 of 201   Page ID #:160
Case 2:21-bk-10587-VZ   Claim 11-4 Part 2   Filed 05/31/22   Entered 06/31/22 14:30:44   Page 25
Main Document   of 28   Page 126 of 199

Duane Morris
February 25, 2020
Page 4

File # F1378-00032                                    INVOICE# 2632846
    CACHET/MYPAYROLLHR

| TIMEKEEPER NO. | NAME | CLASS | HOURS | RATE | VALUE |
|---|---|---|---|---|---|
| 61106 | PM MATUSKY | PARTNER | 12.90 | 910.00 | $11,739.00 |
| | | | 12.90 | | $11,739.00 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 128 of 201   Page ID #:161
Case 2:21-bk-10658-VZ   Doc 174   Filed 05/11/22/09/20   Entered 05/31/22 14:36:44   Page 26
Main Document of 28 Page 127 of 199

# EXHIBIT C

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 129 of 201   Page ID #:162
Case 2:19-ap-10587-VZ   Claim 11-74 Part 2   Filed 05/31/22   Desc Exhibit 2: Schedule 44   Page 27
Main Document   of 28   Page 128 of 199

*The Bancorp Bank v. Advance Payroll Solutions, Inc., et al.*, C.A. No. 19-2088-MN (D. Del.)

### COUNTERCLAIMS AGAINST BANCORP

| DEFENDANT | D.I. | MINIMUM AMOUNT ALLEGED |
|---|---|---|
| The Ahola Corporation | 25 | $721,547.69 |
| Traverse City Products Inc. | 136 | $26,460.10 |
| Advanced Payroll Solutions, LLC | 145 | $20,988.90 |
| Alliance Business Solutions, LLC | 146 | $16,948.28 |
| Approved Payroll, Inc.<br>Approved Staffing | 148 | $10,000.00 |
| Astra Payroll Co. | 149 | $10,000.00 |
| CEOS Corporation | 150 | $15,129.00 |
| Charleston Payroll Plus, LLC | 151 | $242,586.45 |
| Eazepay, LLC | 153 | $5,621.40 |
| Ignite PEO Services, LLC | 154 | $2,000.00 |
| Nealis Engineering, Inc. | 155 | $20,016.11 |
| Partners in Payroll, LLC | 156 | $2,000.00 |
| Pizza Ranch Inc.<br>PR Financial Services, LLC | 157 | $6,325.65 |
| Quanta HCM<br>Quanta LLC | 158 | $5,000.00 |
| Sammons & Head LLC | 159 | $14,500.00 |
| Solid Business Solutions, LLC | 161 | $76,000.00 |
| W.A. Bragg & Co. | 162 | $35,237.77 |
| Workforce Benefit Solution, LLC | 163 | $40,388.20 |
| Zuma Payroll Solutions, LLC | 164 | $73,479.25 |
| BeyondPay, Inc. | 172 | $25,092.88 |
| Exponent Technologies, Inc. | 174 | $648,000.00 |
| Tripco, Inc | 175 | $56,786.49 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 130 of 201   Page ID #:163

Case 2:22-bk-10587-VZ   Claim 117-4   Part 2   Filed 05/12/20   Entered 05/12/20 14:30:44   Page 28   Main Document   of 28   Page 129 of 199

| *The Bancorp Bank v. Advance Payroll Solutions, Inc., et al.*, C.A. No. 19-2088-MN (D. Del.) | | |
|---|---|---|
| **COUNTERCLAIMS AGAINST BANCORP** | | |
| **DEFENDANT** | **D.I.** | **MINIMUM AMOUNT ALLEGED** |
| Spectrum Employee Services, Inc. | 183 | $46,593.00 |
| Comp U.S. Payroll Inc. | 191 | $15,000.00 |
| Access1Source-NC, LLC | 204 | $40,217.98 |
| Choicepay Payroll & HR Services, Inc. | 215 | $6,461.13 |
| Axiom Human Resources Solutions, Inc. | 217 | $16,400.95 |
| Inflection HR LLC | 218 | $28,052.20 |
| Payroll Experts LLC | 221 | $16,825.87 |
| | | **TOTAL:      $2,243,659.30**<br><br>**The Total is an estimate based on the sum certain of actual damages asserted by Defendants.  This does not include any calculation of the demands for pre and post-judgment interest, attorneys' fees, or consequential damages.** |

2

# EXHIBIT "3"

Case 2:22-cv-08671-FLA  Document 1-3  Filed 11/30/22  Page 132 of 201  Page ID #:165
Case 2:20-bk-06548-VZ  Doc 174  Filed 05/31/21  Entered 05/31/22 14:36:44  Desc of 3
Main Document  Page 131 of 199

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1  Cachet Financial Services, a California corporation | |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court  Central District of California | |
| Case number:  20-10654 | |

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

8/2/2021

Kathleen J. Campbell, Clerk

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** | | |
|---|---|---|---|
| **1. Who is the current creditor?** | The Bancorp Bank | | |
| | Name of the current creditor (the person or entity to be paid for this claim) | | |
| | Other names the creditor used with the debtor | | |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? | | |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? | | Where should payments to the creditor be sent? (if different) |
| | The Bancorp Bank | | The Bancorp Bank |
| | Name | | Name |
| | Attn: Matthew G. Summers<br>Ballard Spahr LLP<br>919 N Market Street, 11th Floor<br>Wilmington, DE 19801 | | Attn: Erika R. Caesar<br>409 Silverside Road, Suite 105<br><br>Wilmington, DE 19809 |
| | Contact phone  302-252-4428 | | Contact phone  302-385-5023 |
| | Contact email  summersm@ballardspahr.com | | Contact email  ecaesar@thebancorp.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | | |
| **4. Does this claim amend one already filed?** | ☐ No<br>☑ Yes. Claim number on court claims registry (if known)  174 | Filed on  09/10/2020<br>MM / DD / YYYY | |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? | | |

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| 6. | Do you have any number you use to identify the debtor? | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
|---|---|---|

| 7. | How much is the claim? | $ 927806.82 | **Does this amount include interest or other charges?**<br>☒ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|---|

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

See Attached Schedule

**9. Is all or part of the claim secured?**

☒ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

| 10. | Is this claim based on a lease? | ☒ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
|---|---|---|

| 11. | Is this claim subject to a right of setoff? | ☒ No<br>☐ Yes. Identify the property: _____ |
|---|---|---|

Official Form 410            Proof of Claim            page 2

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 134 of 201   Page ID #:167
Case 2:20-bk-06648-VZ Claim 114 Filed 05/31/22 Desc Main 05/31/22 14:36:47 Page 3 of 3
Main Document    Page 133 of 199

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | | |
| --- | --- | --- | --- | --- | --- |
| | | ☐ Yes. *Check all that apply:* | | | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | | $ _____ |
| | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | | | $ _____ |
| | | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | | | |

## Part 3: Sign Below

| **The person completing this proof of claim must sign and date it.** FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**<br>18 U.S.C. §§ 152, 157 and 3571. | Check the appropriate box:<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |
| --- | --- |

Executed on date     8/2/2021

               MM / DD / YYYY

/s/ Matt Carberry
_____

Signature

Print the name of the person who is completing and signing this claim:

| Name | Matt Carberry |
| --- | --- |
| | First name     Middle name     Last name |
| Title | Managing Director, Head of Partner Strategy |
| Company | The Bancorp Bank |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 409 Silverside Road, Suite 105 |
| | Number   Street |
| | Wilmington, DE 19809 |
| | City    State    ZIP Code |
| Contact phone | Email    mcarberry@thebancorp.com |

**Fill in this information to identify the case:**

Debtor 1    Cachet Financial Services f/k/a Cachet Banq, Inc.

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: Central District of California

Case number   2:20-bk-10654-VZ

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

The Bancorp Bank

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Ballard Spahr LLP, Attn: Matthew G. Summers
Name

919 N Market Street, 11th Floor
Number   Street

Wilmington    DE    19801
City    State    ZIP Code

Contact phone (302) 252-4428

Contact email summersm@ballardspahr.com

**Where should payments to the creditor be sent? (if different)**

The Bancorp Bank, Attn: Erika R. Caesar
Name

409 Silverside Road, Suite 105
Number   Street

Wilmington    DE    19809
City    State    ZIP Code

Contact phone (302)385-5023

Contact email ecaesar@thebancorp.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☐ No
☒ Yes. Claim number on court claims registry (if known) 174    Filed on 09/10/2020
   MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

---

**7. How much is the claim?**

$ at least $_____927,806.82_____. Does this amount include interest or other charges?

plus contingent, unliquidated, and ☑ No
unknown additional amounts as ☐ Yes. Attach statement itemizing interest, fees, expenses, or other
described in the attached Schedule.     charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See Attached Schedule☐ _____

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____
**Amount of the claim that is secured:** $_____
**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate (when case was filed)_____%**
☐ Fixed
☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 137 of 201   Page ID #:170
Case 2:21-bk-10054-VZ   Claim 174   Filed 08/02/21   Desc Main Document   Page 3 of 64
Main Document      Page 136 of 199

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.  $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | *Check the appropriate box:* |
|---|---|

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  08/02/2021
　　　　　　　　　　MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Matt | | Carberry |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Managing Director, Head of Partner Strategy |
|---|---|

| Company | The Bancorp Bank |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 409 Silverside Road, Suite 105 | | |
|---|---|---|---|
| | Number       Street | | |
| | Wilmington | DE | 19809 |
| | City | State | ZIP Code |

| Contact phone | _____ | Email | mcarberry@thebancorp.com |
|---|---|---|---|

### Schedule to Amended Proof of Claim

*In re Cachet Financial Services*
**Case No. 2:20-bk-10654-VZ (Chapter 11)**
**United States Bankruptcy Court for the Central District of California**

### Creditor: The Bancorp Bank

I.    <u>Basis for the Claim</u>

On January 21, 2020 (the "Petition Date"), Cachet Financial Services f/k/a Cachet Banq, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. Prior to that time, Cachet offered direct deposit services to its customers – primarily payroll companies (which the Debtor refers to as "Remarketers") – using the Automated Clearing House ("ACH") network. The Bancorp Bank ("Bancorp") processed ACH files for the Debtor as the Debtor's Originating Depository Financial Institution ("ODFI") pursuant to a Payroll Processing ODFI Agreement (the "Agreement") the parties originally entered into on August 4, 2010. The Agreement is a confidential document that will be provided to the Debtor upon request. In Section 8.4 of the Agreement, the Debtor agreed to:

(a) indemnify and hold Bancorp, its employees, officers, directors, agents and representatives harmless of and from any and all losses suffered or incurred by Bancorp in connection with any Client or completed failed or misdirected Client Transaction caused by Processor; (b) use or alleged misuse by Processor of the ACH system and/or fines assessed against Bancorp or Processor in connection therewith; (c) losses resulting out of the breach or alleged breach by a Client under its agreement with Processor, including the failure of a Client to pay any reversed or failed Transaction(s) that are returned to Client by Processor or that, pursuant to applicable NACHA ACH Rules or Federal Reserve requirements, should have been returned by Processor to a Client; (d) breach by Processor of any of its representations, warranties or agreement under this Agreement or arising from an act or omission by Processor that violates an NACHA Rule, Federal Reserve requirement or applicable law; (e) or arising out of or relating to any error mistake by Processor or any third party involved in processing Client Transactions.

Exhibit A, §8.4 (the "Indemnification Provision").

On October 21, 2019, Debtor informed Bancorp that it had paid out monies on behalf of its customer, DD Care Management, without receiving corresponding funding. This incident (the "DD Care Incident") occurred after a similar incident in August 2019 involving another of the Debtor's customers, MyPayrollHR ("MPHR") (the "MPHR Incident") (collectively, with the DD Care Incident, the "Fraud Incidents"). Moreover, the DD Care Incident caused a deficit in the Debtor's payroll processing accounts. The Debtor informed Bancorp it would not be able to make up the deficit caused by the DD Care Incident.

As a result of the DD Care Incident, Bancorp has incurred significant legal fees and expenses, has had damages claims asserted against it, and additional damages claims could be

asserted against Bancorp in the future. Bancorp had to engage legal counsel to, among other activities, advise Bancorp on handling the return of the funds remaining in the Debtor's accounts held at Bancorp to the appropriate parties once Bancorp terminated its Agreement with Debtor. On November 5, 2019, Bancorp filed an interpleader action pursuant to 28 U.S.C. § 1335 in the U.S. District Court for the District of Delaware, docketed as *The Bancorp Bank v. Advance Payroll Solutions, Inc., et al.,* C.A. No. 19-2088-MN (the "Interpleader Action"). Through the Interpleader Action, Bancorp requested the Delaware Court to equitably distribute funds held in accounts at Bancorp by the Debtor (the "Stake") for the benefit of the Debtor's customers. Interpleader Action, D.I. 1.

## II.  Calculation and Classification of Claim

Bancorp submits a proof of claim in the amount of **$927,806.82** plus a contingent and unliquidated claim for all additional claims, causes of action, or damages that may be asserted against Bancorp as to which Bancorp is entitled to indemnification by the Debtor under the Agreement or otherwise. The calculation of the quantified portion of the unsecured claim is comprised of three categories of liabilities covered by the Indemnification Provision: (1) attorneys' fees and legal expenses paid to Ballard Spahr LLP as a result of the Fraud Incidents and(2) attorneys' fees and legal expenses paid to Duane Morris LLP as a result of the Fraud Incidents. The amount of claims that may be asserted against Bancorp in the future as to which it is entitled to indemnification is unknown.

As of the Petition Date, Ballard Spahr LLP had billed Bancorp **$287,481.44** in legal fees and expenses for legal work related to the Fraud Incidents. These legal fees and expenses relate primarily to the Interpleader Action. Excerpts of the invoices for the professional services rendered by Ballard Spahr LLP prior to the Petition Date, for which the Debtor has not paid, are attached hereto as **Exhibit A**. Detailed redacted copies of the invoices will be provided to the Debtor upon request.

In addition, Duane Morris LLP had billed Bancorp **$51,882.50** in legal fees and expenses for analyzing and seeking insurance coverage for the Fraud Incidents. Excerpts of the invoices for the professional services rendered by Duane Morris LLP prior to the Petition Date, for which the Debtor has not paid, are attached hereto as **Exhibit B**. Detailed redacted copies of the invoices will be provided to the Debtor upon request.

As of June 21, 2021, Ballard Spahr LLP incurred additional **$588,442.88** legal fees and expenses for legal work related to the DD Care Incident, including fees incurred in connection with this Bankruptcy Proceeding. Excerpts of the invoices for the professional services rendered by Ballard Spahr LLP after to the Petition Date, for which the Debtor has not paid, are attached hereto as **Exhibit C**. Detailed redacted copies of the invoices will be provided to the Debtor upon request.

## III.  Notices

Notices or pleadings related to this Proof of Claim should be sent to the following parties at the listed address:

The Bancorp Bank
Attn: Erika Caesar
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809
ecaesar@thebancorp.com

with a copy to counsel at:

Beth Moskow-Schnoll, Esquire
Matthew G. Summers, Esquire
Jessica C. Watt, Esquire
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE  19801
Email: moskowb@ballardspahr.com
        summersm@ballardspahr.com
        wattj@ballardspahr.com

## IV.    Reservation of Rights

Bancorp reserves all of its rights and remedies, including, without limitation, the right to amend this proof of claim from time to time to include additional amounts, damages, charges, judgment, settlements, claims for indemnification, adjustments and the like, known, liquidated, or non-contingent.

This Proof of Claim is asserted without prejudice to any other claim or interest that is, has been, or might in the future be asserted by Bancorp against the Debtor in its bankruptcy case or any procedural or substantive defense Bancorp has to the counterclaims that have been asserted against it in connection with the DD Care Incident and any other claims, damages, or causes of action that may be asserted against it in connection with the Fraud Incidents or its relationship with the Debtor.

By filing this Proof of Claim, Bancorp does not (i) submit to the jurisdiction of the Bankruptcy Court for any purpose; (ii) waive (and, instead, expressly reserves) all of its procedural and substantive defenses to any claim that has been or may be asserted against Bancorp by the Debtor, any person or entity that has or may in the future assert a claim or counterclaim against Bancorp in the Interpleader Action or resulting from or arising in connection with the Fraud Incidents, any trustee of the Debtor's estate, or any other person, including, without limitation, any defense based upon the lack of jurisdiction of the Bankruptcy Court to entertain any such claim or cause of action; or (iii) waive (and, instead, expressly reserves) any claim, interest, right, or right of action or indemnification that Bancorp has or might have against any the Debtor, whether such claim, interest, right, or right of action arises prior to, upon, or after the Petition Date. Bancorp does not waive its right to assert any administrative claims that may exist or arise from the Debtor's breaches of the Agreement or that may arise or exist under the indemnification provisions of the Agreement or otherwise.

Bancorp reserves the right to amend this Proof of Claim (and any other Proof of Claim that it files, has filed or may file in the Debtor's bankruptcy case) to make such claim a secured claim by virtue of any right to setoff, offset or recoup the amount thereof under 11 U.S.C. § 553 or otherwise, or to otherwise assert a defense of setoff, offset and/or recoupment against any claims, defenses or offsets that the Debtor or any other party may assert against Debtor.

Bancorp further reserves the right to (i) amend, update or supplement this Proof of Claim and any other Proof of Claim filed in the Debtor's bankruptcy case, including the right to reclassify any claim set forth herein or in any Proof of Claim to be filed with respect to such claim's status as (a) secured, priority or unsecured, (b) contingent or noncontingent, and/or (c) liquidated and unliquidated; (ii) file additional Proofs of Claim; (iii) file requests for payment of an administrative expense in accordance with 11 U.S.C. § 503 and 507; and (iv) seek relief under 11 U.S.C. § 502(c) or (j).

| Month | | TOTAL |
|---|---|---|
| | 2/22/21 | $25,898.99 |
| | 3/13/20 | $83,384.28 |
| | 4/23/20 | $53,584.50 |
| | 4/23/21 | $92,573.78 |
| | 5/18/21 | $18,587.74 |
| | 5/27/20 | $102,140.10 |
| | 6/21/21 | $12,696.24 |
| | 6/22/20 | $33,942.80 |
| | 7/21/20 | $16,186.10 |
| | 7/21/20 | $9,885.24 |
| | 8/18/20 | $16,853.10 |
| | 9/16/20 | $5,701.34 |
| | 10/20/20 | $27,835.10 |
| | 11/11/20 | $6,044.24 |
| | 12/7/20 | $39,004.84 |
| | 1/28/21 | $44,124.49 |

| Total | $588,442.88 |
|---|---|
| Pre petition | $287,481.44 |
| Total for Ballard | $875,924.32 |
| Duane | $51,882.50 |
| Total Bancorp Claim | $927,806.82 |

# EXHIBIT A

# Ballard Spahr
**LLP**

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: November 18, 2019
Invoice No.: 20191106788

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:     The Bancorp Bank  (038212.01)
Matter:     Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through October 31, 2019

## INVOICE SUMMARY

FEES

| | |
|---|---:|
| Bancorp/Cachet (00324892) | $18,881.00 |

DISBURSEMENTS

| | | |
|---|---:|---:|
| eData Hosting | $8.36 | |
| eData Processing | $36.00 | |
| Total Disbursements | | $44.36 |
| Total Current Charges | | $18,925.36 |
| **TOTAL AMOUNT DUE** | | **$18,925.36** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 145 of 201   Page ID #:178
Case 2:21-bk-10054-VZ   Claim 114   Filed 05/30/21   Desc Main Document   Page 144 of 199
Main Document    Page 144 of 199

**PROFESSIONAL SERVICES**

| Date | Name | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 10/25/19 | Yip,Y.M. | Production: identify documents available for production, identify coding discrepancies for legal team review, rectify discrepancies, identify final set of documents for production | 0.40 | 120.00 |
| 10/28/19 | Moskow-Schnoll,B.E. | Review updated docket from Cachet v. MyPayrollHR | 0.10 | 72.50 |
| | | **Total Fees** | **32.30** | **$18,881.00** |

**PROFESSIONAL SERVICES SUMMARY**

| Name | Rate | Hours | Amount |
|------|------|-------|--------|
| Culhane, Jr.,J.L. | 875.00 | 0.50 | 437.50 |
| Furletti,M.J. | 585.00 | 0.80 | 468.00 |
| Moskow-Schnoll,B.E. | 725.00 | 18.20 | 13,195.00 |
| Burton,W. | 390.00 | 7.50 | 2,925.00 |
| Cover,J.M. | 490.00 | 1.50 | 735.00 |
| Yip,Y.M. | 300.00 | 3.50 | 1,050.00 |
| Ross,A.E. | 235.00 | 0.30 | 70.50 |
| **Total Fees** | | **32.30** | **$18,881.00** |

**DISBURSEMENT DETAILS**

| Date | Description | Amount |
|------|-------------|--------|
| 10/02/19 | eData Processing 20191002_Client Data | 34.00 |
| 10/21/19 | eData Processing 20191021_Client Data | 2.00 |
| 10/31/19 | eData Hosting | 8.36 |
| | **Total Disbursements** | **$44.36** |

**DISBURSEMENT SUMMARY**

| Description | Amount |
|-------------|--------|
| eData Hosting | 8.36 |
| eData Processing | 36.00 |
| **Total Disbursements** | **$44.36** |

038212.01 - 00324892
Beth E. Moskow-Schnoll

5

20191106788
November 18, 2019

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 146 of 201   Page ID #:179
Case 2:20-bk-06548-VZ Claim 114   Filed 05/31/21   Desc Attachment 1   Page 12 of 64
Main Document      Page 145 of 199

|                         |  |              |
|-------------------------|--|--------------|
| **Total Current Charges:** |  | $18,925.36 |

Case 2:22-cv-08671-FLA Document 1-3 Filed 11/30/22 Page 147 of 201 Page ID #:180
Case 2:20-bk-06548-VZ Claim 114 Filed 05/30/21 Desc Main Document Page 146 of 199
Main Document Page 146 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

## REMITTANCE ADVICE

| | | |
|---|---|---|
| Client: | 038212.01 | The Bancorp Bank |
| Matter: | 00324892 | Bancorp/Cachet |
| Invoice No.: | 20191106788 | |
| Date: | November 18, 2019 | |

| | |
|---|---|
| Fee Amount | $18,881.00 |
| Disbursement Amount | $44.36 |
| Total Current Charges | $18,925.36 |
| | |
| **TOTAL AMOUNT DUE** | **$18,925.36** |

**Please return this page with your remittance to the above address.**
**Payment may also be made by wire transfer to our account.**

| | |
|---|---|
| Bank: | PNC Bank, NA |
| ABA No.: | 031 0000 53 |
| Account No.: | 85-3131-7345 |
| Account Name: | Ballard Spahr LLP |

**Please indicate on wire transfer the invoice number stated above.**

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 148 of 201   Page ID #:181
Case 2:20-bk-06548-FLA   Doc 114   Filed 05/31/22   Entered 05/31/22 14:36:12   Page 12 of 64
Main Document    Page 147 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: December 6, 2019
Invoice No.: 20191201914

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:     The Bancorp Bank  (038212.01)
Matter:    Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through November 30, 2019

### INVOICE SUMMARY

FEES

| | |
|---|---|
| Bancorp/DD Care Management (00328131) | $124,302.50 |

DISBURSEMENTS

| | | |
|---|---|---|
| Delivery Service | $7.50 | |
| Lexis Research | $147.50 | |
| Total Disbursements | | $155.00 |
| Total Current Charges | | $124,457.50 |
| **TOTAL AMOUNT DUE** | | **$124,457.50** |

**PROFESSIONAL SERVICES**

| Date | Name | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 11/27/19 | Burton,W. | Correspondence re ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ | 0.10 | 39.00 |
| 11/27/19 | Harmon,W. | Continue preparing summonses and coordinating service of amended complaint | 2.20 | 572.00 |
| 11/27/19 | Moskow-Schnoll,B.E. | review ▮▮▮▮▮▮▮▮▮▮▮ and communications with W. Harmon re same; communications with remarketers re interpleader | 0.40 | 290.00 |
| 11/29/19 | Harmon,W. | Continue preparing summonses and coordinating service of amended complaint | 4.00 | 1,040.00 |
| | | **Total Fees** | **232.00** | **$124,302.50** |

**PROFESSIONAL SERVICES SUMMARY**

| Name | Rate | Hours | Amount |
|------|------|-------|--------|
| Coleman,S. | 745.00 | 7.90 | 5,885.50 |
| Culhane, Jr.,J.L. | 875.00 | 0.40 | 350.00 |
| Furletti,M.J. | 585.00 | 2.70 | 1,579.50 |
| Goldberger, M.N. | 915.00 | 1.40 | 1,281.00 |
| Moskow-Schnoll,B.E. | 725.00 | 105.70 | 76,632.50 |
| Vaske,R. | 725.00 | 6.70 | 4,857.50 |
| Burton,W. | 390.00 | 32.00 | 12,480.00 |
| Cover,J.M. | 490.00 | 0.90 | 441.00 |
| Gess, T. R. | 335.00 | 23.10 | 7,738.50 |
| Giusini,B.M. | 415.00 | 1.60 | 664.00 |
| Moe,P. | 225.00 | 4.50 | 1,012.50 |
| Price,S.C. | 225.00 | 7.80 | 1,755.00 |
| Ross,A.E. | 235.00 | 2.90 | 681.50 |
| Harmon,W. | 260.00 | 34.40 | 8,944.00 |
| **Total Fees** | | **232.00** | **$124,302.50** |

**DISBURSEMENT DETAILS**

| Date | Description | Amount |
|------|-------------|--------|
| 10/28/19 | Lexis Research | 24.75 |
| 11/01/19 | Lexis Research | 23.75 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 150 of 201   Page ID #:183
Case 2:22-bk-06548-VZ   Doc 114   Filed 05/31/22   Entered 05/31/22 11:36:45   Page 18 of 64
Main Document     Page 149 of 199

| Date | Description | Amount |
|------|-------------|--------|
| 11/01/19 | Lexis Research | 49.50 |
| 11/04/19 | Lexis Research | 49.50 |
| 11/12/19 | Delivery Service Parcels, Inc - Inv #848477 - Delivery Service | 7.50 |
| | **Total Disbursements** | $155.00 |

**DISBURSEMENT SUMMARY**

| Description | Amount |
|-------------|--------|
| Delivery Service | 7.50 |
| Lexis Research | 147.50 |
| **Total Disbursements** | $155.00 |

| | |
|---|---|
| **Total Current Charges:** | $124,457.50 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 151 of 201   Page ID #:184
Case 2:20-bk-00548-VZ   Claim 174   Filed 05/02/21   Desc Main Document   Page 12 of 64
Main Document     Page 150 of 199

# Ballard Spahr
LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

### REMITTANCE ADVICE

| | | |
|---|---|---|
| Client: | 038212.01 | The Bancorp Bank |
| Matter: | 00328131 | Bancorp/DD Care Management |
| Invoice No.: | 20191201914 | |
| Date: | December 6, 2019 | |

| | |
|---|---|
| Fee Amount | $124,302.50 |
| Disbursement Amount | $155.00 |
| Total Current Charges | $124,457.50 |
| | |
| **TOTAL AMOUNT DUE** | **$124,457.50** |

**Please return this page with your remittance to the above address.**
**Payment may also be made by wire transfer to our account.**

| | |
|---|---|
| **Bank:** | **PNC Bank, NA** |
| **ABA No.:** | **031 0000 53** |
| **Account No.:** | **85-3131-7345** |
| **Account Name:** | **Ballard Spahr LLP** |

**Please indicate on wire transfer the invoice number stated above.**

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 152 of 201   Page ID #:185
Case 2:20-bk-06548-VZ   Doc 114   Filed 05/31/22   Entered 05/31/22 14:36:49   Page 1 of 64
Main Document    Page 151 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: December 6, 2019
Invoice No.: 20191201915

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:    The Bancorp Bank  (038212.01)
Matter:    Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through November 30, 2019

## INVOICE SUMMARY

FEES

| | | |
|---|---|---|
| Bancorp/Cachet (00324892) | | $559.50 |

DISBURSEMENTS
| | | |
|---|---|---|
| eData Hosting | $8.36 | |
| Total Disbursements | | $8.36 |
| Total Current Charges | | $567.86 |
| **TOTAL AMOUNT DUE** | | $567.86 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 153 of 201   Page ID #:186
Case 2:20-bk-05497-VZ   Claim 114   filed 05/30/21   Desc Main   Document   Page 153 of 64
Main Document      Page 152 of 199

**PROFESSIONAL SERVICES**

| Date | Name | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 11/04/19 | Moskow-Schnoll,B.E. | Review ███████████ | 0.20 | 145.00 |
| 11/05/19 | Harmon,W. | Review docket; Pull requested filings; E-mails with B. Moskow-Schnoll | 0.20 | 52.00 |
| 11/05/19 | Moskow-Schnoll,B.E. | Review latest filing in Cachet v. MyPayrollHR and emails with W. Burton re: ████ | 0.30 | 217.50 |
| 11/06/19 | Moskow-Schnoll,B.E. | Review ████████████ | 0.10 | 72.50 |
| 11/13/19 | Moskow-Schnoll,B.E. | Review ███████████ | 0.10 | 72.50 |
| | | **Total Fees** | **0.90** | **$559.50** |

**PROFESSIONAL SERVICES SUMMARY**

| Name | Rate | Hours | Amount |
|------|------|-------|--------|
| Moskow-Schnoll,B.E. | 725.00 | 0.70 | 507.50 |
| Harmon,W. | 260.00 | 0.20 | 52.00 |
| **Total Fees** | | **0.90** | **$559.50** |

**DISBURSEMENT DETAILS**

| Date | Description | Amount |
|------|-------------|--------|
| 11/30/19 | eData Hosting | 8.36 |
| | **Total Disbursements** | **$8.36** |

**DISBURSEMENT SUMMARY**

| Description | Amount |
|-------------|--------|
| eData Hosting | 8.36 |
| **Total Disbursements** | **$8.36** |

| | |
|---|---|
| **Total Current Charges:** | **$567.86** |

038212.01 - 00324892                                                      20191201915
Beth E. Moskow-Schnoll                          2                         December 6, 2019

EXHIBIT "3" - Page 23

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 154 of 201   Page ID #:187
Case 2:20-bk-06548-VZ   Claim 174   Filed 05/30/21   Desc Attachment 4   Page 20 of 64
Main Document      Page 153 of 199

# Ballard Spahr
LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

## REMITTANCE ADVICE

| | | |
|---|---|---|
| Client: | 038212.01 | The Bancorp Bank |
| Matter: | 00324892 | Bancorp/Cachet |
| Invoice No.: | 20191201915 | |
| Date: | December 6, 2019 | |

| | |
|---|---|
| Fee Amount | $559.50 |
| Disbursement Amount | $8.36 |
| Total Current Charges | $567.86 |
| **TOTAL AMOUNT DUE** | **$567.86** |

**Please return this page with your remittance to the above address.**
**Payment may also be made by wire transfer to our account.**

| | |
|---|---|
| **Bank:** | **PNC Bank, NA** |
| **ABA No.:** | **031 0000 53** |
| **Account No.:** | **85-3131-7345** |
| **Account Name:** | **Ballard Spahr LLP** |

**Please indicate on wire transfer the invoice number stated above.**

038212.01 - 00324892                                    20191201915
Beth E. Moskow-Schnoll                    3                December 6, 2019

Case 2:22-cv-08671-FLA Document 1-3 Filed 11/30/22 Page 155 of 201 Page ID #:188
Case 2:20-bk-06548 V2 Claim 124 Filed 05/20/21 Entered 05/20/21 14:36 age 2 of 64
Main Document    Page 154 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: January 17, 2020
Invoice No.: 20200103471

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:    The Bancorp Bank  (038212.01)
Matter:    Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through December 31, 2019

### INVOICE SUMMARY

FEES

| | |
|---|---|
| Bancorp/DD Care Management (00328131) | $72,495.00 |

DISBURSEMENTS

| | | |
|---|---|---|
| Court Documents | $10.26 | |
| Delivery Service | $217.50 | |
| Filing Fees | $400.00 | |
| Other Research Services | $591.00 | |
| Professional Services | $31.25 | |
| Total Disbursements | | $1,250.01 |
| Total Current Charges | | $73,745.01 |
| **TOTAL AMOUNT DUE** | | **$73,745.01** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 156 of 201   Page ID #:189
Case 2:20-bk-06548-VZ   Doc 114   Filed 05/31/22   Entered 05/31/22 14:36:42   Page 22 of 64
Main Document   Page 155 of 199

**PROFESSIONAL SERVICES**

| Date | Name | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 12/31/19 | Burton,W. | Correspondence with claimants re extensions to respond to amended complaint; conferring with B. Moskow-Schnoll re ███ ; conducting preliminary research re ███ ; drafting ███ | 2.10 | 819.00 |
| 12/31/19 | Moskow-Schnoll,B.E. | Calls with counsel for multiple remarketers re extensions of time, factual background; review/revise stipulations for extensions of time; analyze ███, ███, and discussion with W. Burton re ███, draft ███; review ███; review ███; review ███ | 4.50 | 3,262.50 |

|  |  | **Total Fees** | 143.70 | $72,495.00 |

**PROFESSIONAL SERVICES SUMMARY**

| Name | Rate | Hours | Amount |
|------|------|-------|--------|
| Moskow-Schnoll,B.E. | 725.00 | 68.50 | 49,662.50 |
| Burton,W. | 390.00 | 26.40 | 10,296.00 |
| Cox,C.E. | 230.00 | 3.30 | 759.00 |
| Ross,A.E. | 235.00 | 2.10 | 493.50 |
| Harmon,W. | 260.00 | 43.40 | 11,284.00 |
| **Total Fees** | | 143.70 | $72,495.00 |

**DISBURSEMENT DETAILS**

| Date | Description | Amount |
|------|-------------|--------|
| 11/05/19 | Court Documents VISA_1219_7122_19 - TEXAS SECRETARY OF STATE: Document retrieval : MoneyWise and MM-KMA Investments | 2.05 |
| 11/05/19 | Court Documents VISA_1219_7122_19 - TEXAS SECRETARY OF STATE: Document retrieval : Payroll Success and Solid Business Solutions | 2.05 |
| 11/05/19 | Filing Fees VISA_1219_9166_13 - COURTS/USDC-DE: Filing | 400.00 |
| 11/06/19 | Professional Services VISA_1219_7122_14 - NJ BUSINES SERVICES: Registered agent addresses for NJ defendants | 6.25 |
| 11/06/19 | Professional Services VISA_1219_7122_14 - NJ BUSINES SERVICES: Registered agent addresses for NJ defendants | 6.25 |

Case 2:22-cv-08671-FLA Document 1-3 Filed 11/30/22 Page 157 of 201 Page ID #:190
Case 2:20-bk-06548-VZ Claim 114 Filed 05/01/21 Desc Main Document Page 23 of 64
Main Document    Page 156 of 199

| Date | Description | Amount |
|------|-------------|-------:|
| 11/06/19 | Professional Services VISA_1219_7122_14 - NJ BUSINES SERVICES: Registered agent addresses for NJ defendants | 6.25 |
| 11/06/19 | Professional Services VISA_1219_7122_14 - NJ BUSINES SERVICES: Registered agent addresses for NJ defendants | 6.25 |
| 11/07/19 | Professional Services VISA_1219_7122_14 - NJ BUSINES SERVICES: Registered agent addresses for NJ defendants | 6.25 |
| 11/07/19 | Court Documents VISA_1219_7122_19 - TEXAS SECRETARY OF STATE: Document retrieval : Employer Tools and Solutions | 1.03 |
| 11/07/19 | Court Documents VISA_1219_7122_19 - TEXAS SECRETARY OF STATE: Document retrieval : MM-KMA Investements | 2.05 |
| 11/07/19 | Court Documents VISA_1219_7122_19 - TEXAS SECRETARY OF STATE: Document retrieval : Payroll Success | 1.03 |
| 11/07/19 | Court Documents VISA_1219_7122_19 - TEXAS SECRETARY OF STATE: Document retrieval : Simplified Business Solutions and Solid Business Solutions | 2.05 |
| 11/17/19 | Delivery Service DLS Discovery, LLC - Inv #138019 - Courier Service | 10.00 |
| 11/30/19 | Delivery Service DLS Discovery, LLC - Invoice # 138428 - Courier Service | 15.00 |
| 12/02/19 | Delivery Service Parcels, Inc - Inv #851541 - Courier Service | 15.00 |
| 12/02/19 | Delivery Service Parcels, Inc - Inv #851548 - Courier Service | 15.00 |
| 12/04/19 | Other Research Services VISA_1219_7122_20 - TLO TRANSUNION: TLO Charges | 591.00 |
| 12/08/19 | Delivery Service DLS Discovery, LLC - Inv #138741 - Delivery Services | 117.50 |
| 12/10/19 | Delivery Service Parcels, Inc - Inv #853062 - Courier | 15.00 |
| 12/22/19 | Delivery Service DLS Discovery, LLC - Inv #139272 - Delivery Services | 30.00 |
| | **Total Disbursements** | **$1,250.01** |

**DISBURSEMENT SUMMARY**

| Description | Amount |
|-------------|-------:|
| Court Documents | 10.26 |
| Delivery Service | 217.50 |
| Filing Fees | 400.00 |
| Other Research Services | 591.00 |
| Professional Services | 31.25 |
| **Total Disbursements** | **$1,250.01** |

| | |
|---|---:|
| **Total Current Charges:** | **$73,745.01** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 158 of 201   Page ID #:191
Case 2:20-bk-06548-VZ Doc 174  Filed 05/30/22   Entered 05/31/22 14:36:48   Page 29 of 64
Main Document      Page 157 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

## REMITTANCE ADVICE

| | | |
|---|---|---|
| Client: | 038212.01 | The Bancorp Bank |
| Matter: | 00328131 | Bancorp/DD Care Management |
| Invoice No.: | 20200103471 | |
| Date: | January 17, 2020 | |

| | |
|---|---|
| Fee Amount | $72,495.00 |
| Disbursement Amount | $1,250.01 |
| Total Current Charges | $73,745.01 |
| **TOTAL AMOUNT DUE** | **$73,745.01** |

**Please return this page with your remittance to the above address.**
**Payment may also be made by wire transfer to our account.**

| | |
|---|---|
| **Bank:** | **PNC Bank, NA** |
| **ABA No.:** | **031 0000 53** |
| **Account No.:** | **85-3131-7345** |
| **Account Name:** | **Ballard Spahr LLP** |

**Please indicate on wire transfer the invoice number stated above.**

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 159 of 201   Page ID #:192
Case 2:20-bk-06548-VZ  Claim 114   Filed 05/30/21   Desc Main Document   Page 158 of 199
Main Document      Page 158 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: January 17, 2020
Invoice No.: 20200103472

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:    The Bancorp Bank  (038212.01)
Matter:    Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through December 31, 2019

## INVOICE SUMMARY

FEES

Bancorp/Cachet                                                    $145.00
(00324892)

DISBURSEMENTS
eData Hosting                              $8.36

Total Disbursements                                              $8.36

Total Current Charges                                           $153.36

**TOTAL AMOUNT DUE**                                           **$153.36**

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 160 of 201   Page ID #:193
Case 2:20-bk-06549-VZ   Doc 174   Filed 05/30/22   Entered 05/31/22 14:36:42   Page 28 of 64
Main Document      Page 159 of 199

**PROFESSIONAL SERVICES**

| Date | Name | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 12/02/19 | Moskow-Schnoll,B.E. | Review updated docket in MyPayrollHR litigation | 0.10 | 72.50 |
| 12/09/19 | Moskow-Schnoll,B.E. | Review docket in Cachet v. MyPayrollHR | 0.10 | 72.50 |
| | | **Total Fees** | **0.20** | **$145.00** |

**PROFESSIONAL SERVICES SUMMARY**

| Name | Rate | Hours | Amount |
|------|------|-------|--------|
| Moskow-Schnoll,B.E. | 725.00 | 0.20 | 145.00 |
| **Total Fees** | | **0.20** | **$145.00** |

**DISBURSEMENT DETAILS**

| Date | Description | Amount |
|------|-------------|--------|
| 12/31/19 | eData Hosting | 8.36 |
| | **Total Disbursements** | **$8.36** |

**DISBURSEMENT SUMMARY**

| Description | Amount |
|-------------|--------|
| eData Hosting | 8.36 |
| **Total Disbursements** | **$8.36** |

| | Amount |
|---|--------|
| **Total Current Charges:** | **$153.36** |

038212.01 - 00324892
Beth E. Moskow-Schnoll

2

20200103472
January 17, 2020

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 161 of 201   Page ID #:194
Case 2:20-bk-00548-VZ   Claim 174   Filed 09/01/21   Desc Main Document   Page 270 of 54
Main Document     Page 160 of 199

# Ballard Spahr
**LLP**

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

## REMITTANCE ADVICE

| | | |
|---|---|---|
| Client: | 038212.01 | The Bancorp Bank |
| Matter: | 00324892 | Bancorp/Cachet |
| Invoice No.: | 20200103472 | |
| Date: | January 17, 2020 | |

| | |
|---|---|
| Fee Amount | $145.00 |
| Disbursement Amount | $8.36 |
| Total Current Charges | $153.36 |
| **TOTAL AMOUNT DUE** | **$153.36** |

**Please return this page with your remittance to the above address.**
**Payment may also be made by wire transfer to our account.**

| | |
|---|---|
| Bank: | PNC Bank, NA |
| ABA No.: | 031 0000 53 |
| Account No.: | 85-3131-7345 |
| Account Name: | Ballard Spahr LLP |

**Please indicate on wire transfer the invoice number stated above.**

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 162 of 201   Page ID #:195
Case 2:20-bk-00548V-Z/Z   Doc 174   Filed 05/30/22   Entered 05/30/22 11:36:49   Page 2 of 64
Main Document      Page 161 of 199

# Ballard Spahr
LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: February 18, 2020
Invoice No.: 20200202850

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:   The Bancorp Bank  (038212.01)
Matter:   Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through January 31, 2020

## INVOICE SUMMARY

FEES

| | |
|---|---|
| Bancorp/DD Care Management (00328131) | $102,705.50 |

DISBURSEMENTS

| | | |
|---|---|---|
| Court Documents | $6.00 | |
| Delivery Service | $105.00 | |
| Filing Fees | $68.75 | |
| Other Research Services | $110.60 | |
| Total Disbursements | | $290.35 |
| Total Current Charges | | $102,995.85 |
| **TOTAL AMOUNT DUE** | | **$102,995.85** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 163 of 201   Page ID #:196
Case 2:20-bk-05427-ZZ   Claim 174   Filed 05/30/21   Desc Attachmentpage 29 of 64
Main Document      Page 162 of 199

**PROFESSIONAL SERVICES**

| Date | Name | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 01/30/20 | Watt,J.C. | ██████████████ | ██ | ██ |
| 01/30/20 | Watt,J.C. | ██████████████ | ██ | ██ |
| 01/30/20 | Watt,J.C. | ██████████████ | ██ | ██ |
| 01/31/20 | Burton,W. | ██████████████ | ██ | ██ |
| 01/31/20 | Huben,B. | ██████████████ | ██ | ██ |
| 01/31/20 | Moskow-Schnoll,B.E. | ██████████████ | ██ | ██ |
| 01/31/20 | Watt,J.C. | ██████████████ | ██ | ██ |

|  |  | **Total Fees** | **200.10** | **$102,705.50** |

**PROFESSIONAL SERVICES SUMMARY**

| Name | Rate | Hours | Amount |
|------|------|-------|--------|
| Huben,B. | 865.00 | 1.50 | 1,297.50 |
| Moskow-Schnoll,B.E. | 780.00 | 55.70 | 43,446.00 |
| Pinheiro,B.M. | 760.00 | 0.40 | 304.00 |
| Summers,M.G. | 760.00 | 2.20 | 1,672.00 |
| Burton,W. | 440.00 | 41.20 | 18,128.00 |
| McClamb,C.D. | 495.00 | 1.90 | 940.50 |

038212.01 - 00328131                                          20200202850
Beth E. Moskow-Schnoll                    16                  February 18, 2020

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 164 of 201   Page ID #:197
Case 2:20-bk-06548-VZ   Doc 114   Filed 05/31/22   Desc Att 05/31/22 11:36:43   Page 30 of 64
Main Document     Page 163 of 199

| Name | Rate | Hours | Amount |
|------|------|-------|--------|
| Watt,J.C. | 495.00 | 47.50 | 23,512.50 |
| Ross,A.E. | 235.00 | 0.40 | 94.00 |
| Harmon,W. | 270.00 | 49.30 | 13,311.00 |
| **Total Fees** | | **200.10** | **$102,705.50** |

## DISBURSEMENT DETAILS

| Date | Description | Amount |
|------|-------------|--------|
| 12/13/19 | Filing Fees VISA_0120_9166_09 - COURTS/USDC-DE: Filing Fee | 25.00 |
| 12/13/19 | Filing Fees VISA_0120_9166_22 - NJ BUSINES SERVICES: Records Service | 37.50 |
| 12/15/19 | Delivery Service DLS Discovery, LLC - Inv #138977 - Courier | 85.00 |
| 12/17/19 | Court Documents VISA_0120_7122_08 - PA BCCO CORP FEE-DOS: Document retrieval : Bureau of Corporations and Charitable Organizations | 6.00 |
| 12/17/19 | Filing Fees VISA_0120_9166_22 - NJ BUSINES SERVICES: Filing | 6.25 |
| 01/03/20 | Other Research Services VISA_0120_7122_10 - TLO TRANSUNION: TLO CHARGES | 110.60 |
| 01/12/20 | Delivery Service DLS Discovery, LLC - Inv #139863 - Courier between Ballard Spahr and Post Office | 20.00 |
| **Total Disbursements** | | **$290.35** |

## DISBURSEMENT SUMMARY

| Description | Amount |
|-------------|--------|
| Court Documents | 6.00 |
| Delivery Service | 105.00 |
| Filing Fees | 68.75 |
| Other Research Services | 110.60 |
| **Total Disbursements** | **$290.35** |

| | |
|---|---|
| **Total Current Charges:** | **$102,995.85** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 165 of 201   Page ID #:198
Case 2:20-bk-06548-VZ   Claim 114   Filed 05/20/21   Desc Main Document   Page 30 of 64
Main Document      Page 164 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

### REMITTANCE ADVICE

| | | |
|---|---|---|
| Client: | 038212.01 | The Bancorp Bank |
| Matter: | 00328131 | Bancorp/DD Care Management |
| Invoice No.: | 20200202850 | |
| Date: | February 18, 2020 | |

| | |
|---|---|
| Fee Amount | $102,705.50 |
| Disbursement Amount | $290.35 |
| Total Current Charges | $102,995.85 |
| | |
| **TOTAL AMOUNT DUE** | **$102,995.85** |

**Please return this page with your remittance to the above address.**
**Payment may also be made by wire transfer to our account.**

| | |
|---|---|
| Bank: | PNC Bank, NA |
| ABA No.: | 031 0000 53 |
| Account No.: | 85-3131-7345 |
| Account Name: | Ballard Spahr LLP |

**Please indicate on wire transfer the invoice number stated above.**

038212.01 - 00328131                                          20200202850
Beth E. Moskow-Schnoll                       18                February 18, 2020

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 166 of 201   Page ID #:199
Case 2:20-bk-06518-VZ   Doc 114   Filed 05/31/22   Entered 05/31/22 11:36:42   Page 32 of 64
Main Document    Page 165 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: February 18, 2020
Invoice No.: 20200202851

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:    The Bancorp Bank  (038212.01)
Matter:    Bancorp/Cachet  (00324892)

FOR PROFESSIONAL SERVICES RENDERED through January 31, 2020

### INVOICE SUMMARY

FEES

| | | |
|---|---|---|
| Bancorp/Cachet (00324892) | | $342.00 |

DISBURSEMENTS

| | | |
|---|---|---|
| eData Hosting | $8.36 | |
| Total Disbursements | | $8.36 |
| Total Current Charges | | $350.36 |
| **TOTAL AMOUNT DUE** | | **$350.36** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 167 of 201   Page ID #:200
Case 2:20-bk-05547-VZ   Claim 174   Filed 05/30/22   Desc Main Document   Page 3 of 34
Main Document     Page 166 of 199

## PROFESSIONAL SERVICES

| Date | Name | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 01/09/20 | Moskow-Schnoll,B.E. | Check docket of Cachet action against MyPayrollHR | 0.10 | 78.00 |
| 01/10/20 | Harmon,W. | Review docket and pull filings re: ██████████ ██████████████; E-mails with B. Moskow-Schnoll re: ██ | 0.40 | 108.00 |
| 01/10/20 | Moskow-Schnoll,B.E. | Review ████████████ ██████████████████████ ██████ | 0.20 | 156.00 |
| | | **Total Fees** | **0.70** | **$342.00** |

## PROFESSIONAL SERVICES SUMMARY

| Name | Rate | Hours | Amount |
|------|------|-------|--------|
| Moskow-Schnoll,B.E. | 780.00 | 0.30 | 234.00 |
| Harmon,W. | 270.00 | 0.40 | 108.00 |
| **Total Fees** | | **0.70** | **$342.00** |

## DISBURSEMENT DETAILS

| Date | Description | Amount |
|------|-------------|--------|
| 01/31/20 | eData Hosting | 8.36 |
| | **Total Disbursements** | **$8.36** |

## DISBURSEMENT SUMMARY

| Description | Amount |
|-------------|--------|
| eData Hosting | 8.36 |
| **Total Disbursements** | **$8.36** |

| | |
|---|---|
| **Total Current Charges:** | **$350.36** |

038212.01 - 00324892                                                    20200202851
Beth E. Moskow-Schnoll                          2                       February 18, 2020

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 168 of 201   Page ID #:201
Case 2:20-bk-06548-VZ   Doc 114   Filed 05/30/22   Entered 05/31/22 11:36:42   Page 39 of 64
Main Document    Page 167 of 199

# Ballard Spahr
LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

## REMITTANCE ADVICE

Client:          038212.01          The Bancorp Bank
Matter:          00324892           Bancorp/Cachet
Invoice No.:     20200202851
Date:            February 18, 2020

| | |
|---|---:|
| Fee Amount | $342.00 |
| Disbursement Amount | $8.36 |
| Total Current Charges | $350.36 |
| **TOTAL AMOUNT DUE** | **$350.36** |

**Please return this page with your remittance to the above address.**
**Payment may also be made by wire transfer to our account.**

| | |
|---|---|
| **Bank:** | **PNC Bank, NA** |
| **ABA No.:** | **031 0000 53** |
| **Account No.:** | **85-3131-7345** |
| **Account Name:** | **Ballard Spahr LLP** |

**Please indicate on wire transfer the invoice number stated above.**

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 169 of 201   Page ID #:202
Case 2:20-bk-00548-VZ   Claim 114   Filed 05/02/21   Desc Attachment 14:36   Page 35 of 64
Main Document      Page 168 of 199

# EXHIBIT B

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 170 of 201   Page ID #:203
Case 2:20-bk-06548-VZ   Doc 114   Filed 05/30/22   Entered 05/31/22 11:36:31   Page 3 of 64
Main Document      Page 169 of 199

# DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

November 06, 2019

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

FILE# F1378-00032      INVOICE# 2597391      IRS# 23-1392502

CURRENT INVOICE                                    $27,266.50

| Fed Wire Payments: | ACH Payments: | |
|---|---|---|
| Wells Fargo Bank NA | Acct#: 2000650585614 | Please reference the File Number |
| Swift Code: WFBIUS6S | ABA#: 031000503 | and Invoice Number in the |
| Acct#: 2000650585614 | | REMARK section. |
| ABA#: 121000248 | | |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE
END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS
INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS
WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH
LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

---

DUANE MORRIS LLP
30 SOUTH 17TH STREET   PHILADELPHIA, PA 19103-4196                  PHONE: 215.979.1000 · FAX: 215.979.1020

Case 2:22-cv-08671-FLA Document 1-3 Filed 11/30/22 Page 171 of 201 Page ID #:204
Case 2:20-bk-06458-VZ Claim 114 Filed 03/02/21 Entered 03/02/21 14:36 Page 30 of 64
Main Document      Page 170 of 199

# Duane Morris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

November 06, 2019

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

File# F1378-00032          Invoice# 2597391          IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 10/31/2019 IN CONNECTION
WITH THE ABOVE-CAPTIONED MATTER.                                    $27,266.50

TOTAL BALANCE DUE                                                   $27,266.50

DUANE MORRIS LLP

EXHIBIT "3" - Page 41

Duane Morris
November 06, 2019
Page 6

File # F1378-00032                                    INVOICE# 2597391
    CACHET/MYPAYROLLHR

| TIMEKEEPER NO. | NAME | CLASS | HOURS | RATE | VALUE |
|---|---|---|---|---|---|
| 61106 | PM MATUSKY | PARTNER | 25.30 | 910.00 | $23,023.00 |
| 01523 | WA MACK | PARTNER | 2.60 | 900.00 | $2,340.00 |
| 61896 | BJ SLIPAKOFF | SPECIAL COUNSEL | 2.70 | 705.00 | $1,903.50 |
| | | | 30.60 | | $27,266.50 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 173 of 201   Page ID #:206
Case: 20-bankruptcy 2/2 Claim 174   Filed 05/30/2221   Entered 05/30/2221 14:36:23   Page 39 of 64
Main Document     Page 172 of 199

# Duane Morris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

December 05, 2019

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

FILE# F1378-00032     INVOICE# 2607529     IRS# 23-1392502

CURRENT INVOICE                                          $14,151.00

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|-----------|--------------|-------------|---------|-------------|
| 11/6/19   | 2597391      | $27,266.50  | $0.00   | $27,266.50  |
|           |              |             |         | $27,266.50  |

TOTAL BALANCE DUE                                        $41,417.50

| Fed Wire Payments: | ACH Payments: | |
|---|---|---|
| Wells Fargo Bank NA<br>Swift Code: WFBIUS6S<br>Acct#: 2000650585614<br>ABA#: 121000248 | Acct#: 2000650585614<br>ABA#: 031000503 | Please reference the File Number and Invoice Number in the REMARK section. |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

---

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 174 of 201   Page ID #:207
Case 2:22-bk-06548-VZ   Claim 114   Filed 05/30/22   Desc Attachment 1   Page 4 of 64
Main Document   Page 173 of 199

## DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

December 05, 2019

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

File# F1378-00032          Invoice# 2607529          IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 11/30/2019 IN CONNECTION
WITH THE ABOVE-CAPTIONED MATTER.                           $14,151.00


PREVIOUS BALANCE                                           $27,266.50

TOTAL BALANCE DUE                                         $41,417.50

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|---|---|---|---|---|
| 11/6/19 | 2597391 | $27,266.50 | $0.00 | $27,266.50 |
| | | | | $27,266.50 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 175 of 201   Page ID #:208
Case 2:20-bk-06548-VZ Claim 174  Filed 05/20/21  Desc Main Document  Page 174 of 199
Main Document       Page 174 of 199

Duane Morris
December 05, 2019
Page 6

File # F1378-00032                                    INVOICE# 2607529
        CACHET/MYPAYROLLHR

| TIMEKEEPER NO. | NAME | CLASS | | HOURS | RATE | VALUE |
|---|---|---|---|---|---|---|
| 61106 | PM MATUSKY | PARTNER | | 10.80 | 910.00 | $9,828.00 |
| 64054 | E MEDINA | PARALEGAL | ' | 13.10 | 330.00 | $4,323.00 |
| | | | | 23.90 | | $14,151.00 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 176 of 201   Page ID #:209
Case 2:22-bk-06548-VZ Claim 114   Filed 05/31/22   Desc Main Document   Page 42 of 64
Main Document     Page 175 of 199

## DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

PLEASE REMIT PAYMENT TO:
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

January 11, 2020

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

FILE# F1378-00032     INVOICE# 2618491     IRS# 23-1392502

CURRENT INVOICE                                              $364.00

| Fed Wire Payments: | ACH Payments: | |
| --- | --- | --- |
| Wells Fargo Bank NA | Acct#: 2000650585614 | Please reference the File Number |
| Swift Code: WFBIUS6S | ABA#: 031000503 | and Invoice Number in the |
| Acct#: 2000650585614 | | REMARK section. |
| ABA#: 121000248 | | |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE
END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS
INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS
WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH
LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

Case 2:22-cv-08671-FLA  Document 1-3  Filed 11/30/22  Page 177 of 201  Page ID #:210
Case 2:20-bk-06548-VZ  Claim 114  Filed 05/30/22  Desc Main Document  Page 176 of 199
Main Document      Page 176 of 199

## DuaneMorris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

January 11, 2020


THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808



CACHET/MYPAYROLLHR

File# F1378-00032          Invoice# 2618491          IRS# 23-1392502

| | |
|---|---:|
| FOR PROFESSIONAL SERVICES RECORDED THROUGH 12/31/2019 IN CONNECTION WITH THE ABOVE-CAPTIONED MATTER. | $364.00 |
| TOTAL BALANCE DUE | $364.00 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 178 of 201   Page ID #:211
Case 2:20-bk-06574-FMD   Doc 114   Filed 05/31/21   Entered 05/31/21 14:36:42   Page 42 of 64
Main Document   Page 177 of 199

Duane Morris
January 11, 2020
Page 3

File # F1378-00032                                          INVOICE# 2618491
    CACHET/MYPAYROLLHR

| TIMEKEEPER NO. | NAME | CLASS | HOURS | RATE | VALUE |
|---|---|---|---|---|---|
| 61106 | PM MATUSKY | PARTNER | 0.40 | 910.00 | $364.00 |
| | | | 0.40 | | $364.00 |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 179 of 201   Page ID #:212
Case 2:20-ap-05487-VZ Claim 174   Filed 05/20/21   Desc Att 8/12/21 14:36:43   Page 4 of 64
Main Document    Page 178 of 199

## Duane Morris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

**PLEASE REMIT PAYMENT TO:**
DUANE MORRIS LLP
ATTN: PAYMENT PROCESSING
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

February 25, 2020

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

FILE# F1378-00032      INVOICE# 2632846      IRS# 23-1392502

CURRENT INVOICE                                    $11,739.00

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|-----------|--------------|-------------|---------|-------------|
| 1/11/20 | 2618491 | $364.00 | $0.00 | $364.00 |
| | | | | $364.00 |

TOTAL BALANCE DUE                                  $12,103.00

| Fed Wire Payments: | ACH Payments: | |
|---|---|---|
| Wells Fargo Bank NA | Acct#: 2000650585614 | Please reference the File Number and Invoice Number in the REMARK section. |
| Swift Code: WFBIUS6S | ABA#: 031000503 | |
| Acct#: 2000650585614 | | |
| ABA#: 121000248 | | |

AMOUNTS INCLUDED FOR DISBURSEMENTS INCLUDE EXPENSES RECEIVED AND RECORDED THROUGH THE
END OF THE INVOICE PERIOD. THERE MAY BE ADDITIONAL EXPENSES RECEIVED AND DISBURSEMENTS
INVOICED IN THE FUTURE. AS PER THE TERMS OF OUR ENGAGEMENT, PAYMENT IS DUE IN U.S. DOLLARS
WITHIN 30 DAYS OF THE DATE OF THIS INVOICE. AFTER 30 DAYS A LATE FEE OF 1% PER MONTH (OR SUCH
LOWER RATE AS REQUIRED BY APPLICABLE LAW) MAY BE CHARGED.

# Duane Morris

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
AUSTIN
LOS ANGELES
TAIWAN
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN

February 25, 2020

THE BANCORP, INC.
ATTN: TOM PAREIGAT, GENERAL COUNSEL
409 SILVERSIDE ROAD
SUITE 105
WILMINGTON, DE 19808

CACHET/MYPAYROLLHR

File# F1378-00032        Invoice# 2632846            IRS# 23-1392502

FOR PROFESSIONAL SERVICES RECORDED
THROUGH 01/31/2020 IN CONNECTION
WITH THE ABOVE-CAPTIONED MATTER.                              $11,739.00

PREVIOUS BALANCE                                               $364.00

TOTAL BALANCE DUE                                           $12,103.00

| BILL DATE | BILL/REF NO. | BILL AMOUNT | CREDITS | A/R BALANCE |
|-----------|--------------|-------------|---------|-------------|
| 1/11/20   | 2618491      | $364.00     | $0.00   | $364.00     |
|           |              |             |         | $364.00     |

DUANE MORRIS LLP

EXHIBIT "3" - Page 50

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 181 of 201   Page ID #:214
Case 2:20-bk-06548-VZ   Claim 174   Filed 05/30/22   Desc Main 05/30/22 14:36:32   Page 40 of 64
Main Document      Page 180 of 199

Duane Morris
February 25, 2020
Page 4

File # F1378-00032                                    INVOICE# 2632846
        CACHET/MYPAYROLLHR

| TIMEKEEPER NO. | NAME | CLASS | HOURS | RATE | VALUE |
|---|---|---|---|---|---|
| 61106 | PM MATUSKY | PARTNER | 12.90 | 910.00 | $11,739.00 |
| | | | 12.90 | | $11,739.00 |

DUANE MORRIS LLP

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 182 of 201   Page ID #:215
Case 2:20-bk-00548-FZ   Claim 114   Filed 05/30/21   Desc Main Document   Page 4 of 64
Main Document      Page 181 of 199

# EXHIBIT C

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 183 of 201   Page ID #:216
Case 2:20-bk-06548-VZ Claim 114   Filed 05/30/22   Desc Main Document   Page 49 of 64
Main Document     Page 182 of 199

# Ballard Spahr
**LLP**

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: March 13, 2020
Invoice No.: 20200303006

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:     The Bancorp Bank  (038212.01)
Matter:    Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through February 29, 2020

### INVOICE SUMMARY

FEES

| | | |
|---|---|---|
| Bancorp/DD Care Management (00328131) | | $82,864.50 |

DISBURSEMENTS

| | | |
|---|---|---|
| eData Hosting | $15.03 | |
| eData Processing | $8.00 | |
| Lexis Research | $496.75 | |
| Total Disbursements | | $519.78 |
| Total Current Charges | | $83,384.28 |
| **TOTAL AMOUNT DUE** | | **$83,384.28** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 184 of 201   Page ID #:217
Case 2:20-bk-06548-VZ   Doc 114   Filed 05/30/22   Entered 05/31/22 14:36:44   Page 50 of 64
Main Document   Page 183 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: April 23, 2020
Invoice No.: 20200405751

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:    The Bancorp Bank  (038212.01)
Matter:    Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through March 31, 2020

## INVOICE SUMMARY

FEES

    Bancorp/DD Care Management                              $52,584.50
    (00328131)

DISBURSEMENTS

| | |
|---|---:|
| Delivery Service | $67.00 |
| eData Hosting | $15.10 |
| eData Processing | $2.00 |
| Filing Fees | $973.25 |
| Lexis Research | $124.00 |
| Travel Expenses | $49.95 |
| Total Disbursements | $1,231.30 |

# Ballard Spahr
#### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: May 27, 2020
Invoice No.: 20200506354

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:    The Bancorp Bank  (038212.01)
Matter:    Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through April 30, 2020

## INVOICE SUMMARY

FEES

Bancorp/DD Care Management                                             $102,031.00
(00328131)

DISBURSEMENTS
Court Documents                              $15.00
eData Hosting                                $15.10
Lexis Research                               $24.75
Professional Services                        $54.25

Total Disbursements                                                       $109.10

Total Current Charges                                                 $102,140.10

**TOTAL AMOUNT DUE**                                                 **$102,140.10**

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 186 of 201   Page ID #:219
Case 2:22-bk-00548-FLA   Doc 114   Filed 05/31/22   Entered 05/31/22 14:36:44   Page 52 of 64
Main Document    Page 185 of 199

# Ballard Spahr
### LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: June 22, 2020
Invoice No.: 20200604586

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:     The Bancorp Bank  (038212.01)
Matter:    Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through May 31, 2020

## INVOICE SUMMARY

FEES

Bancorp/DD Care Management                                                    $33,811.50
(00328131)

DISBURSEMENTS
eData Hosting                                        $15.10
Professional Services                                $116.20

Total Disbursements                                                 $131.30

Total Current Charges                                            $33,942.80

**TOTAL AMOUNT DUE**                                          **$33,942.80**

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 187 of 201   Page ID #:220
Case 2:20-bk-06548-VZ Z Claim 174   Filed 05/30/22   Desc main 14:36 age 5 of 64
Main Document      Page 186 of 199

# Ballard Spahr
LLP

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Tel 302.252.4465
Fax 302.252.4466
www.ballardspahr.com

TAX IDENTIFICATION NO. 23-0382195

Invoice Date: July 21, 2020
Invoice No.: 20200704847

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE  19809

Client:     The Bancorp Bank  (038212.01)
Matter:    Bancorp/DD Care Management  (00328131)

FOR PROFESSIONAL SERVICES RENDERED through June 30, 2020

### INVOICE SUMMARY

FEES

    Bancorp/DD Care Management                                    $16,171.00
    (00328131)

DISBURSEMENTS
    eData Hosting                                  $15.10

        Total Disbursements                                    $15.10

        Total Current Charges                                  $16,186.10

        **TOTAL AMOUNT DUE**                              **$16,186.10**

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 188 of 201   Page ID #:221
Case 2:20-bk-06548-VZ Claim 114   Filed 05/30/22   Desc Atch 8/18/21 14:36 Page 59 of 64
Main Document      Page 187 of 199

# Ballard Spahr
#### LLP

TAX IDENTIFICATION NO: 23-0382195

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

August 18, 2020
Invoice No. 20200803700

Client:     The Bancorp Bank (038212.01)
Matter:     Bancorp/DD Care Management (00328131)

FOR PROFESSIONAL SERVICES RENDERED through July 31, 2020

### INVOICE SUMMARY

| | |
|---|---:|
| Professional Fees | $16,838.00 |
| Disbursements | $15.10 |
| **Total Invoice Amount** | **$16,853.10** |

# Ballard Spahr
### LLP

TAX IDENTIFICATION NO: 23-0382195

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

The Bancorp Bank                                    September 16, 2020
c/o Ms. Erika R. Caesar, Esq.                        Invoice No. 20200903253
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

---

Client:        The Bancorp Bank (038212.01)

Matter:        Bancorp/DD Care Management (00328131)


FOR PROFESSIONAL SERVICES RENDERED through August 31, 2020


## INVOICE SUMMARY

| | |
|---|---:|
| Professional Fees | $4,927.50 |
| Disbursements | $773.84 |
| **Total Invoice Amount** | **$5,701.34** |

# Ballard Spahr
**LLP**

TAX IDENTIFICATION NO: 23-0382195

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

The Bancorp Bank                                    October 20, 2020
c/o Ms. Erika R. Caesar, Esq.                       Invoice No. 20201005828
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

---

Client:        The Bancorp Bank (038212.01)

Matter:        Bancorp/DD Care Management (00328131)

FOR PROFESSIONAL SERVICES RENDERED through September 30, 2020

## INVOICE SUMMARY

| | |
|---|---:|
| Professional Fees | $27,820.00 |
| Disbursements | $15.10 |
| **Total Invoice Amount** | **$27,835.10** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 191 of 201   Page ID #:224
Case 2:20-bk-06549-VZ   Claim 114   Filed 05/30/22   Desc Main   Page 50 of 64
Main Document      Page 190 of 199

# Ballard Spahr
###### LLP

TAX IDENTIFICATION NO: 23-0382195

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

November 11, 2020
Invoice No. 20201102923

Client:       The Bancorp Bank (038212.01)

Matter:       Bancorp/DD Care Management (00328131)

FOR PROFESSIONAL SERVICES RENDERED through October 31, 2020

### INVOICE SUMMARY

| | |
|---|---:|
| Professional Fees | $6,037.50 |
| Disbursements | $6.74 |
| **Total Invoice Amount** | **$6,044.24** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 192 of 201   Page ID #:225
Case 2:20-bk-06548-VZ   Doc 114   Filed 05/31/22   Entered 05/31/22 11:36   Page 5 of 64
Main Document      Page 191 of 199

# Ballard Spahr
LLP

TAX IDENTIFICATION NO: 23-0382195

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

The Bancorp Bank                                    December 7, 2020
c/o Ms. Erika R. Caesar, Esq.                       Invoice No. 20201202312
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

Client:      The Bancorp Bank (038212.01)

Matter:      Bancorp/DD Care Management (00328131)

FOR PROFESSIONAL SERVICES RENDERED through November 30, 2020

## INVOICE SUMMARY

| | |
|---|---:|
| Professional Fees | $38,368.00 |
| Disbursements | $636.84 |
| **Total Invoice Amount** | **$39,004.84** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 193 of 201   Page ID #:226
Case 2:20-bk-06548-VZ   Claim 114   Filed 05/30/21   Desc Main Document   Page 192 of 199
Main Document     Page 192 of 199

# Ballard Spahr
### LLP

TAX IDENTIFICATION NO: 23-0382195

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

January 28, 2021
Invoice No. 20210106632

---

Client:       The Bancorp Bank (038212.01)

Matter:      Bancorp/DD Care Management (00328131)

FOR PROFESSIONAL SERVICES RENDERED through December 31, 2020

### INVOICE SUMMARY

| | |
|---|---:|
| Professional Fees | $44,093.00 |
| Disbursements | $31.49 |
| **Total Invoice Amount** | **$44,124.49** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 194 of 201   Page ID #:227
Case 2:20-bk-06548-VZ   Claim 114   Filed 05/28/21   Desc Attachment 1   Page 60 of 64
Main Document       Page 193 of 199

# Ballard Spahr
**LLP**

TAX IDENTIFICATION NO: 23-0382195

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

The Bancorp Bank                                    February 22, 2021
c/o Ms. Erika R. Caesar, Esq.                       Invoice No. 20210204537
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

Client:       The Bancorp Bank (038212.01)

Matter:       Bancorp/DD Care Management (00328131)

FOR PROFESSIONAL SERVICES RENDERED through January 31, 2021

## INVOICE SUMMARY

| | |
|---|---:|
| Professional Fees | $25,890.50 |
| Disbursements | $8.49 |
| **Total Invoice Amount** | **$25,898.99** |

# Ballard Spahr
**LLP**

TAX IDENTIFICATION NO: 23-0382195

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

April 23, 2021
Invoice No. 20210406027

---

Client:        The Bancorp Bank (038212.01)

Matter:        Bancorp/DD Care Management (00328131)

<u>FOR PROFESSIONAL SERVICES RENDERED through March 31, 2021</u>

## INVOICE SUMMARY

| | |
|---|---|
| Professional Fees | $92,470.00 |
| Disbursements | $103.78 |
| **Total Invoice Amount** | **$92,573.78** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 196 of 201   Page ID #:229
Case 2:22-bk-06548-VZ   Doc 114   Filed 05/31/22   Entered 05/31/22 11:36:42   Page 62 of 64
Main Document    Page 195 of 199

# Ballard Spahr
**LLP**

TAX IDENTIFICATION NO: 23-0382195

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

May 18, 2021
Invoice No. 20210503731

---

Client:     The Bancorp Bank (038212.01)

Matter:     Bancorp/DD Care Management (00328131)

FOR PROFESSIONAL SERVICES RENDERED through April 30, 2021

### INVOICE SUMMARY

| | |
|---|---:|
| Professional Fees | $18,581.00 |
| Disbursements | $6.74 |
| **Total Invoice Amount** | **$18,587.74** |

# Ballard Spahr
**LLP**

TAX IDENTIFICATION NO: 23-0382195

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

June 21, 2021
Invoice No. 20210603957

---

Client:        The Bancorp Bank (038212.01)

Matter:        Bancorp/DD Care Management (00328131)

FOR PROFESSIONAL SERVICES RENDERED through May 31, 2021

### INVOICE SUMMARY

| | |
|---|---|
| Professional Fees | $12,689.50 |
| Disbursements | $6.74 |
| **Total Invoice Amount** | **$12,696.24** |

Case 2:22-cv-08671-FLA   Document 1-3   Filed 11/30/22   Page 198 of 201   Page ID #:231
Case 2:20-bk-09654-VZ   Doc 114   Filed 05/31/22   Entered 05/31/22 14:36:49   Page 69 of 64
Main Document   Page 197 of 199

# Ballard Spahr
### LLP

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel 302.252.4465
Fax 302.252.4466

TAX IDENTIFICATION NO: 23-0382195

The Bancorp Bank
c/o Ms. Erika R. Caesar, Esq.
Assistant General Counsel
409 Silverside Road, Suite 105
Wilmington, DE 19809

July 21, 2021
Invoice No. 20210704198

---

Client:     The Bancorp Bank (038212.01)

Matter:     Bancorp/DD Care Management (00328131)

FOR PROFESSIONAL SERVICES RENDERED through June 30, 2021

### INVOICE SUMMARY

| | |
|---|---|
| Professional Fees | $9,878.50 |
| Disbursements | $6.74 |
| **Total Invoice Amount** | **$9,885.24** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled (*specify*): **FIRST AMENDED COMPLAINT FOR (1) FRAUD; (2) FRAUD; (3) CONVERSION; (4) AIDING AND ABETTING FRAUD AND CONVERSION (5) MONEY HAD AND RECEIVED; (6) UNJUST ENRICHMENT; (7) AIDING AND ABETTING FRAUD AND CONVERSION; (8) BREACH OF CONTRACT; (9) CIVIL RICO (18 U.S.C. 1962(c)); (10) CIVIL RICO CONSPIRACY (18 U.S.C. 1962(d)); (11) BREACH OF CONTRACT; (12) NEGLIGENCE; (13) INTENTIONAL INTERFERENCE WITH CONTRACT; (14) CONVERSION; (15) EXPRESS INDEMNITY; (16) ACCOUNTING; (17) VIOLATION OF CAL. PENAL CODE § 496(a); (18) OBJECTION TO PROOFS OF CLAIM; (19) AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFER** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 31, 2022 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| May 31, 2022 | Lori Gauthier | *Lori Gauthier* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- James C Bastian    jbastian@shulmanbastian.com
- Shane M Biornstad    SBiornstad@shulmanbastian.com, aragone@shulmanbastian.com
- Brian D Huben    hubenb@ballardspahr.com, carolod@ballardspahr.com
- Joseph R Ignatuk    rignatuk@shulmanbastian.com, aragone@shulmanbastian.com
- Melissa Davis Lowe    mlowe@shulmanbastian.com, avernon@shulmanbastian.com
- Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    F 9013-3.1.PROOF.SERVICE